## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-1763-KLM

ESTATE OF KELROY NEWMAN, by and through
putative personal representative, Bryanne Watts-Lucero;
JASMIN WILSON, a minor child, by and through next
friend and mother, Elisa Wilson;

 Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF MONTEZUMA, COLORADO;
SHERIFF STEVEN NOWLIN, individually and in his official capacity;
ZACHARY SUMMERS, individually;
ANDREW DAULTON, individually;
SOUTHWEST HEALTH SYSTEM, INC, d/b/a Southwest Memorial Hospital;
RANDY GENE DAVIDSON, MD, individually,

 Defendants.

---

## SCHEDULING ORDER

---

### 1.   DATE OF CONFERENCE AND APPEARANCES OF COUNSEL

The Scheduling/Planning Conference pursuant to Fed.R.Civ.P. 16(b) is scheduled for

**December 2, 2022**, at 9:30 a.m., in Courtroom A-401, Fourth Floor, Alfred A. Arraj United States

Courthouse, 901 19th Street, Denver, Colorado, before United States Magistrate Judge Kristen L.

Mix. Appearing for the parties are:

| | |
|---|---|
| Anna Holland Edwards | Mark Collier |
| Erica T. Grossman | Matthew W. George |
| John Holland | MESSNER REEVES LLP |
| Dan Weiss | 1430 Wynkoop Street, Suite 300 |
| HOLLAND, HOLLAND EDWARDS & GROSSMAN, LLC | Denver, CO  80202 |
| 1437 High Street | mcollier@messner.com |
| Denver, CO  80218 | mgeorge@messner.com |

anna@hheglaw.com
erica@hheglaw.com
john@hheglaw.com
dan@hheglaw.com

and

Kevin D. Homiak
HOMIAK LAW LLC
1001 Bannock Street, Suite 238
Denver, CO 80204
kevin@homiaklaw.com
*Attorneys for Plaintiffs*

*Attorneys for Defendant Randy
Davidson, M.D.*

Ann B. Smith
VAUGHAN & DEMURO
111 South Tejon Street, Suite 545
Colorado Springs, CO 80903
asmith@vaughandemuro.com
*Attorneys for Defendants Montezuma
County, Sheriff Nowlin, Zachary
Summers, & Andrew Daulton*

Amy E. Cook-Olson
Angela Lund Klein
KLEIN COOK OLSON, LLC
2130 Resort Drive, Unit E
Steamboat Springs, CO 80487
acookolson@kco-law.com
aklein@kco-law.com
*Attorneys for Defendant Southwest
Health System, Inc, d/b/a Southwest
Memorial Hospital*

## 2.   STATEMENT OF JURISDICTION

This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and 42 U.S.C. § 1983 and 42 U.S.C. § 1988. The Jurisdiction of this Court is further invoked by Plaintiffs pursuant to 28 U.S.C. §§ 1331, 1343, 2201 and 2202.

Supplemental pendent jurisdiction is based on 28 U.S.C. § 1367 because the alleged violations of federal law alleged are substantial as contended by Plaintiffs and the pendent state law causes of action derives from a common nucleus of operative facts.

### 3.   STATEMENT OF CLAIMS AND DEFENSES

**a.**     **Plaintiffs:** Kelroy Newman was a 30-year-old pre-trial detainee at the Montezuma County Detention Center ("MCDC") who was abandoned by Defendants for more than 24 hours while suffering the symptoms of severe alcohol withdrawal that ultimately culminated in his death. Mr. Newman was arrested on the morning of July 17, 2021, by the Cortez Police Department and taken to MCDC, where he was found to have a dangerously high blood-alcohol concentration ("BAC") of .421% and visible serious injuries to his head and face. He was taken to Defendant Southwest Memorial Hospital ("SMH") to be "medically cleared" to go to MCDC, but no blood tests, imaging studies, or meaningful examination were conducted, and he was at the hospital for less than thirty minutes. Neither the ER physician (Defendant Dr. Davidson) nor any of the SMH staff appear to have even noticed Mr. Newman's obvious acute intoxication or asked him about it, as no such observations or inquiries were documented. After being negligently discharged from the hospital, Mr. Newman was booked at MCDC and kept in a holding cell for more than 24 hours, despite his repeated requests to go back to the hospital, persistent vomiting, and other symptoms of severe alcohol withdrawal.

MCDC recklessly had no medical staff on the weekend, no alcohol withdrawal protocols, no deputies properly trained in monitoring detainees experiencing alcohol withdrawal, and no deputies trained in how to properly administer CPR. As a result, Mr. Newman was not medically assessed or observed at any point over more than 24 hours at MCDC—*i.e.*, from approximately 11:28 a.m. on July 17, 2021, to approximately 11:43 a.m. on July 18, 2021.

At approximately 11:43 a.m. on July 18, 2021, MCDC staff found Mr. Newman unresponsive in his cell, but still alive. Deputies tried to revive him but were reckless and

negligent in the performance of CPR. MCDC did not have the correct equipment available, the deputies were insufficiently trained (or not trained at all) with respect to alcohol withdrawal and CPR provision did not call a code (and were not trained on how to do so), refused to perform mouth-to-mouth resuscitation on him, and—once they finally found the correct equipment after several crucial minutes passed—performed little to no resuscitation on him before paramedics arrived. Mr. Newman was pronounced dead at 12:20 p.m.

Mr. Newman's in-custody death was not an isolated incident; rather, his untimely death at MCDC was the most recent in a string of alcohol withdrawal- or drug overdose-related in-custody deaths under strikingly similar circumstances since 2013. These deaths were the result of constitutionally deficient training, staffing policies, and supervision at MCDC that Defendant Nowlin and the Montezuma County have failed to remediate or correct since at least October 2015, when the family of a deceased inmate sued Montezuma County and Defendant Nowlin's predecessor in Colorado federal court.

Plaintiff Estate has brought claims against the County Defendants for *Monell* liability under § 1983 because they (i) did not have alcohol and drug withdrawal policies in the jail and had a constitutionally deficient intake medical screening, assessment, treatment, and referral process; (ii) had a deliberately indifferent staffing plan that failed to have a medical clinic or even a medical provider at the jail at all times to assess and treat detainees for alcohol and drug withdrawal and overdose; and (iii) had a widespread custom and practice of failing with deliberate indifference to provide any treatment to detainees experiencing symptoms of alcohol or drug withdrawal or overdose.

Plaintiff Wilson has brought a Colorado state law claim against the County Defendants for

negligence in the operation of a jail under Colorado state law for their own negligent policies and practices and are vicariously liable for the negligent acts and omissions by their agents and/or employees, including, but not limited to Zachary Summers, Daniel Ruiz, Andrew Daulton, Daylan Guttridge, Bryce Durbin, Vici Pierce, and Garet Talley, all of whom at all relevant times were acting within the scope of their employment.

Plaintiff Wilson also brings state claims against Defendants Southwest Health System Inc. and Randy Davidson, M.D. for wrongful death based on a failure to reasonably assess, diagnose, treat or admit Mr. Newman during his "medical clearance" examination on July 17, 2021. And Plaintiff Estate brings a claim against Deputy Summers and Deputy Daulton in their individual capacities for cruel and unusual punishment and deprivation of due process in violation of Sections 20 & 25 of Article 2 of the Colorado Constitution.

**b.     County Defendants:** County Defendants generally deny the allegations and claims asserted against them by Plaintiffs. County Defendants otherwise adopt all denials, assertions, defenses, and affirmative defenses set forth in their Answer as though fully set forth herein.

County Defendants assert that, at the time he arrived at the Montezuma County Detention Center, Mr. Newman was appropriately screened, taken for medical clearance, housed, and monitored pursuant to policies and practices. County Defendants assert that Mr. Newman was not going through visible or other apparent or obvious symptoms of alcohol withdrawal and did not present in such a manner as to require as to require a different level of care. County Defendants deny that Mr. Newman or his cellmate(s) made repeated requests for medical treatment as asserted in the First Amended Complaint and Jury Demand. County Defendants assert that they responded appropriately to Mr. Newman including life-saving efforts after he was found unresponsive and

further assert that Defendant Daulton was not on duty at that time. County Defendants further assert that Mr. Newman's cause of death following autopsy was noted to be liver cirrhosis and severe fatty metamorphosis.

County Defendants assert that any actions or omissions by County Defendants do not rise to the level of a constitutional violation under either the United States Constitution or the Colorado Constitution. County Defendants further assert that they were not negligent with respect to the operation of the Montezuma County Detention Center or with respect to Mr. Newman.

County Defendants deny that there was unconstitutional or otherwise deficient training, customs, practices, or policies in place at the Montezuma County Detention Center. County Defendants deny that Mr. Newman's death or the deaths of other inmates were a result of any training, customs, practices, or policies or otherwise caused or contributed to in any manner by County Defendants.

County Defendants dispute the causation, nature, and extent of Plaintiffs' claimed injuries and damages

**c.     Defendant Randy Davidson, M.D.:** Dr. Davidson is a Colorado licensed physician, practicing emergency medicine. Dr. Davidson admits that he performed a medical screening examination and clearance for incarceration at the request of law enforcement on July 17, 2021, as is generally reflected in the medical records. Dr. Davidson asserts that his medical screening examination and clearance for incarceration of Mr. Newman was, in all respects and at all times, reasonable and appropriate, and within accepted standards of practice for an emergency medicine physician in the same or similar circumstances. Dr. Davidson denies that his medical screening examination and clearance for incarceration of Mr. Newman at any time fell below

applicable standards of practice and denies that any negligent act or omission by him was a proximate cause of Plaintiffs' claimed injuries, damages, or losses. Dr. Davidson therefore denies he is liable as alleged in the Amended Complaint. Dr. Davidson also asserts the denials and defenses set forth in his Answer or Amended Answers (if applicable) and reserves the right to amend his defenses as appropriate.

      **d.**     **Southwest Health System, Inc. d/b/a Southwest Memorial Hospital:** Defendant SWMH admits that Kelroy Newman presented in custody to the hospital on July 17, 2020 for medical clearance for incarceration and was evaluated by Board Certified Emergency Medicine Physician Randy Gene Davidson, MD.  Kelroy Newman presented with contusions and abrasions to his face which he described as several days to a week old. He described himself as "fine" and with "no complaints" and was assessed by Dr. Davidson as alert and oriented to person, place, time and situation and was in no acute distress.  Kelroy Newman later presented to the hospital in cardiac arrest and an autopsy was performed concluding that the cause of death was liver cirrhosis and severe fatty metamorphosis and not acute alcohol intoxication/withdrawal as alleged by the Plaintiffs. SWMC asserts that at all times relevant that the related care as rendered by its employees was reasonable and appropriate in all respects. SWMC denies all allegations of negligence, causation, injuries and damages related to the care rendered by its employees.

## 4.  UNDISPUTED FACTS

None.

## 5.  COMPUTATION OF DAMAGES

      **a.**  **Plaintiffs:**

Plaintiff Estate has suffered injuries and losses, including the death of Mr. Newman, entitling it to recover his compensatory and special damages, including, but not limited to, for loss of constitutional rights, loss of the pleasure and enjoyment of life, loss of relationships and consortium and his herein described pain and suffering during and leading up this fatal event, all in amounts to be proven at trial.  Plaintiff Estate is also entitled to claim lost income and lost future earnings and related economic losses.  Counsel for Plaintiff Estate has requested earnings history documents to ascertain prior work history and will also employ an expert to opine on future lost earnings both based on prior earnings and based on a vocational rehab assessment of employability given age, criminal history, education and work history.  Plaintiff Estate will disclose that earnings history upon receipt and any applicable analysis by experts at the time of expert disclosures.

Plaintiff Wilson has suffered damages, losses, and injuries in an amount to be determined by the jury at trial. These damages include, but are not limited to, pain and suffering, upset, grief, loss of society and companionship, impairment in the quality of life, inconvenience, anger, depression, and all other purely non-economic damages as allowed under the Colorado Wrongful Death statute. Plaintiff Wilson's damages are not of the type that can be tallied here and are not quantifiable other than by a jury. Undersigned counsel will provide Defendants in this matter with whatever quantifiable evidence is obtained to show measurement of damages, but civil rights violations and wrongful deaths like this are not given to easy description of losses and instead require that the jury announce their value.

Plaintiff Estate brings two claims – a §1983 claim against County Defendants and a claim against individual deputy defendants based on the Colorado Constitution.  Under those claims the Estate will ask the jury to value the loss of Mr. Newman's life, his relationships, his enjoyment,

lost income, and similar, as allowed under *Berry v. Muskogee.* Plaintiff Estate will also seek punitive damages. In addition to compensatory, economic, consequential and special damages, Plaintiff Estate seeks punitive damages against individual Defendants, in that their actions were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Mr. Newman.

Plaintiff Wilson brings multiple claims.  She brings a claim against the County Defendants for negligence in the operation of a jail causing the wrongful death of her father, and against the hospital and individual doctor for wrongful death. Those claims seek damages for Plaintiff's emotional losses as a result of the death of her father and associated economic loss. Plaintiff Wilson does not currently seek punitive damages, but will assess what punitive damages claims are appropriate against the health care related Defendants upon completion of substantial discovery.

Plaintiffs are also entitled to attorneys' fees and costs, and prejudgment and post-judgment interest and costs.

  b.  **County Defendants:** County Defendants do not seek damages but reserve the right to seek costs and fees as allowed by law.

  c.  **Randy Davidson, M.D.**: As started above, Dr. Davidson denies liability of Plaintiffs' proposed damages and does not have sufficient information at this time to further dispute Plaintiffs' statement of alleged damages. To the extent that Plaintiffs are seeking any damages against Dr. Davidson, he requests a computation of damages for each category of damages being claimed as required by Rule 26(a)(1)(A)(iii) with supporting documentation as applicable. Dr. Davidson is not making any claim for damages other than allowable and recoverable fees and costs.

    **d. Southwest Health System, Inc. d/b/a Southwest Memorial Hospital:** SWMH is not making any claim for damages other than allowable and recoverable fees and costs.

## 6. REPORT OF PRE-CONFERENCE DISCOVERY & MEETING UNDER FED. R. CIV. P. 26(f)

    a. The Fed. R. Civ. P. 26(f) meeting was conducted between counsel on November 2, 2022 by telephone conference call.

    b. Participants in the meeting were as follows:

        i. Anna Holland Edwards and Dan Weiss from Holland, Holland Edwards & Grossman, LLC;
        ii. Kevin Homiak from Homiak Law LLC;
        iii. Mark Collier from Messner Reeves;
        iv. Ann Smith from Vaughan & DeMuro; and
        v. Amy Cook Olson from Klein Cook Olson, LLC.

    c. The deadline for serving Rule 26(a)(1) Initial Disclosures is November 18, 2022. Plaintiffs' Rule 26(a)(1) disclosures were made on September 21, 2022. Defendants' Rule 26(a)(1) disclosures will be made by November 18, 2022

    d. The parties do not propose any changes in the timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1) other than that referenced in 5.c. above.

    e. The parties have not agreed to conduct informal discovery.

**Defendants' Position:** Defendants request that this Court Order that all parties have equal *ex parte* access to the physician who performed the June 10, 2021 Medical Clearance for Incarceration Exam of Kelroy Newman: Emergency Department Physician Todd Fowler, MD. Defendants request *ex parte* access to the physician who assessed and provided treatment to Kelroy Newman for cardiac arrest on July 18, 2021: John Mathers, DO.  The physician-patient privilege is waived due to the claimed injuries by filing this lawsuit. *Bailey v. Hermacinski,* 413P.3d 157 (Colo. 2018). Defendants assert that there is low to no possibility of residually privileged information as the evaluations by the providers described above are focused on medical clearance for jail admission

along with cardiac arrest-the latter of which would involve no privilege as Mr. Newman was not communicative. There is no risk of undue influence as defense counsel are experienced litigators. Therefore, the Defendants request an order that each party have equal access to the medical providers.

Plaintiffs object to this procedure and asks for briefing or a hearing on the topic. Plaintiffs have just learned of this request and need more time to review the related medical records (which were also just received) and respond to it. Plaintiffs need to learn more about what these treaters know to evaluate residual privileges, and ask the Court to allow time for conferral between parties and then motions or a hearing as necessary. Defendants asked an initial response in this proposed scheduling order and so Plaintiffs have identified the issues they can quickly identify with this request here. The *Samms v. District Court*, 908 P.2d 520 (Colo. 1995), *Reutter v. Webber*, 179 P.3d 977 (Colo. 2007), and *Bailey v. Hermacinski*, 413 P.3d 157 (Colo. 2018) cases make clear that *ex parte* meetings are only permitted with doctors who worked "in consultation" with defendants or where plaintiffs have impliedly waived the physician-patient privilege.

To be "in consultation" requires significantly more than providing treatment for conditions arising out of the original alleged acts of negligence. *Bailey* at 162. Rather, a non-party medical provider is only "in consultation with the defendant medical provider for the purposes of Colo. Rev. Stat. § 13-90-107(1)(d)(II) (2017) if the party and non-party providers collectively and collaboratively assess and act for a patient by providing a unified course of medical treatment." *Id.* at 161.

Even where a patient impliedly waives the physician-patient privilege, Courts should assess not only whether an *ex parte* interview with a non-party treating physician would

"inadvertently reveal residually privileged information," but also whether "Defendants would exert undue influence" on the physicians they seek to question alone. *Bailey*, 413 P.3d at 159.

Likewise, the Supreme Court of Colorado held in *Samms* that the "legitimate concern" of undue influence "does not warrant adoption of a rule prohibiting a defense attorney from informally communicating with a plaintiff's treating physician on matters not subject to a physician-patient privilege so long as the plaintiff is afforded reasonable notice of any proposed interview to permit the plaintiff or the plaintiff's attorney to attend or to seek appropriate protective orders." *Samms*, 908 P.2d at 528 (emphasis supplied).

Here the treaters that Defendants seek *ex parte* meetings with work at the Defendant hospital and with the Defendant doctor (or at least presumably did at the time of treatment).  It is exceedingly inefficient, and a disproportionate waste of resources, for Defendants to have *ex parte* meetings – absent Plaintiffs' counsel – with prior and subsequent caregivers who did not "collectively and collaboratively assess and act for a patient by providing a unified course of medical treatment." *Bailey* at 161. There is also a very real risk that treating doctors would be unduly influenced by Defendants, even inadvertently because of the close relationship, during *ex parte* meetings because of the doctors' perceived need to assist the hospital at which they work.

    f.    The parties agree to take all reasonable steps to reduce discovery and reduce costs and to use a unified system of numbering for Exhibits. Documents that are disclosed will be bates labeled. The parties will continue to work together to produce records in the most efficient manner possible.

    g.    The parties anticipate that their claims or defenses will involve the discovery of some electronically stored information. To the extent that discovery or disclosures involve information or records in electronic form, the Parties will take steps to preserve that information. The Parties agree that, to the extent feasible, the Parties will exchange information (whether in paper or electronic form) in PDF format.

h.  The parties have discussed the possibilities for a prompt settlement or resolution of the case by alternate dispute resolution, but at this juncture settlement appears premature given the parties' respective positions. To the extent there is a settlement meeting, the parties will report the result of any such meeting, and any similar future meeting, to the magistrate judge within 14 days of the meeting.

## 7.  CONSENT

The Parties do not consent to the exercise of jurisdiction of Magistrate Judge Mix.

## 8.  DISCOVERY LIMITATIONS

a.  Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules:

With respect to interrogatories, requests for production, and requests for admission:

Plaintiffs (*i.e.,* the Estate and the minor collectively) may serve 25 interrogatories, 25 requests for production, and 25 requests for admission on the "County Defendants" (*i.e.*, Defendants BOCC, Sheriff Nowlin, Deputy Summers, and Deputy Daulton); and 25 interrogatories, 25 requests for production, and 25 requests for admission on the "Hospital Defendants" (*i.e.*, Defendants Dr. Davidson and SMH).

County Defendants may serve 25 interrogatories, 25 requests for production, and 25 requests for admission on Plaintiffs.

Hospital Defendants may serve 25 interrogatories, 25 requests for production, and 25 requests for admission on Plaintiffs.

With respect to depositions:

Plaintiffs and County Defendants' proposal:

Plaintiffs collectively shall be entitled to 15 depositions, excluding retained experts and named parties.

Defendants collectively shall be entitled to 15 depositions, excluding retained experts and

named parties.

> <u>Hospital and Doctor</u> <u>Defendants' Proposal:</u> Plaintiffs and Defendants shall each be entitled to 15 depositions, excluding the parties, treating physicians, and retained experts.

b.   Limitations which any party proposes on the length of depositions:

The Parties do not propose any modifications to the limitations on the length of depositions provided under the federal rules.

County Defendants and Plaintiffs agree to presumptive limitation of 7 hours on party depositions and four other depositions, with the remainder of the depositions being limited to 4 hours of testimony time.

Hospital and doctor Defendant object to that proposal and propose no modifications on limitations of the length of depositions provided under the federal rules.

c.   Deadline for service of written discovery: July 31, 2023

e.   Other Planning or Discovery Orders:

1.      No opposed discovery motions are to be filed with the Court until the parties comply with D.C.COLO.LCivR. 7.1(a). The parties will comply with The Honorable Magistrate Mix's Practice Standards, dated May 11, 2022, as to discovery disputes.

2.      The production of privileged or work-product protected documents, electronically stored information ("ESI") or information, whether inadvertently or otherwise, is not a waiver of the privilege or production from discovery in this case or in any other federal or state proceeding. This section shall be interpreted to provide the maximum protection allowed by Federal Rules of Evidence 502(d).

3.      Nothing contained herein is intended to or shall serve to limit a party's right to request a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

### 9.  CASE PLAN AND SCHEDULE

a.   Deadline for Joinder of Parties and Amendment to Pleadings:

January 15, 2023, or in accordance with F.R.C.P. 15.

Motions to amend the pleadings to seek punitive damages against the health care providers shall be governed by the Health Care Availability Act.

Defendants propose a 120-day extension to the motion to identify non parties at fault, or through February 10, 2023.

Plaintiffs object to any further extension of the deadline to identify alleged non parties at fault. On certain state law claims that allow for such designation, there is a statutory deadline of 90 days. C.R.S. § 13-21-111.5.  It is not clear to Plaintiffs that there are any claims against County Defendants where non-parties at fault can properly be designated, however, the HCAA claim against the hospital and doctor are claims where non-parties could theoretically be designated.

This 90-day deadline is just like the statute of limitations for the plaintiff, this is the deadline by which defendants must identify others at fault.  Defendants have all been aware of this litigation since notice of claims was giving in January 2022.  Pre-suit, county Defendants would not agree to a tolling agreement to collectively investigate any other parties that should be in the litigation. Even so, the day before the deadline to identify non-parties at fault, Defendants conferred on a 120-day extension.  Plaintiffs did not object to 60 days but did object to longer than that. Waiting longer to learn who else Defendants believe to be related to these claims creates

additional delay and expense for Plaintiffs in adding additional parties and conducting discovery. The requested extension would put Defendants' non-party at fault deadline *after* Plaintiffs deadline to add parties.

Further the parties spent significant time trying to find dates for depositions that work for all counsel and were only able to find two blocks of times, January 18, 19, and 20, and February 13-17. If Plaintiffs won't know what non-parties might be allegedly at fault until February, it will unduly affect those depositions as Plaintiffs won't have time to investigate those additional parties to ask questions about them in the depositions or be able to add those parties to the litigation such that they can participate in the depositions.

Discovery cut-off: September 4, 2023

b. Dispositive Motions Deadline: October 2, 2023

c. Expert Witness Disclosure:

   1. The Parties' Anticipated Experts:

     (a) Plaintiffs anticipate retaining experts in the following areas: emergency medicine, hospital administration/nursing, forensic pathology, economist, jail administration, jail medicine, toxicology, any expert necessary for rebuttal and/or impeachment purposes. Plaintiffs may require other experts as well as the case unfolds and will also designate non retained experts.

     (b) County Defendants anticipate retaining experts in the following areas: jail administration and medicine, emergency medicine, forensic pathology, and economics as well as any additional experts necessary to rebut Plaintiffs' experts. County Defendants anticipate designating one or more of Mr. Newman's treating providers as non-retained experts.

     (c) SWMH anticipates retaining experts in the following areas: nursing, hospital administration, emergency medicine, toxicology, hepatology, internal medicine/hospitalist, pathology, gastroenterology and economics and reserve the right to endorse experts in different areas of

specialization based upon Plaintiff's affirmative experts and their respective opinions.

(d) Dr. Davidson anticipates retaining experts in the following areas: emergency medicine, toxicology, hepatology, internal medicine/hospitalist, forensic pathology, gastroenterology and economics. Additional areas of expertise may be identified during the course of discovery in the case. Dr. Davidson also anticipates endorsing any expert necessary to respond to any expert properly endorsed by Plaintiffs. He also anticipates that Mr. Newman's treating health care providers may be called as non-retained experts pursuant to F.R.C.P. 26(a)(2)(C).

2.    Plaintiffs proposal:

Each side shall be limited to a total of six experts per side. Plaintiffs are amenable to compromise here, but do think at least an initial limit to the number is required, which could of course be revisited if it were not sufficient. Plaintiffs' counsel understands the defendants may have some differing interests in some ways, but also believe the experts needed medically will largely overlap and fear that the case will simply be too expensive if each defendant gets separate experts on the same topics.

Defendants:

Defendants SWMH and Dr. Davidson assert that there are multiple defendants with differing interests and defending different allegations who are all represented by their own respective counsel. Each defendant and/or entity is entitled to due process in the defense of this matter and SWMH opposes the limitation of experts as to its own defense as discovery develops in this matter. Defendants SWMH and Dr. Davidson oppose limitations, particularly at this early stage in litigation, and oppose a "per side" limitation on defense experts where the claims are vastly different between the various defendants. These defendants agree to defend this case in a manner in which does not result in the presentation of needlessly cumulative evidence.

County Defendants agree with Defendants SWMH and Dr. Davidson that the number of Defendants and issues leads to some uncertainty regarding the number of experts that will be necessary to effectively defend the case. County Defendants currently anticipate the need for four experts with the goal of sharing at least some of those experts among all Defendants.

3.      Plaintiffs proposal:

Plaintiffs originally proposed a two date approach for experts with the initial disclosure deadline in June of 2023. Defendants below propose a staggered schedule of experts. Plaintiffs will agree to staggered deadlines, but propose the following deadlines for that approach:

Plaintiffs' experts: May 26, 2023
Defendants' experts: June 20, 2023
Rebuttal experts: July 21, 2023.

Plaintiffs contend that Defendants' proposal requires Plaintiffs' experts too early. The parties have started trying to schedule deposition and holding date, but it is clear that getting depositions completed for expert review will be difficult and Plaintiffs believe the later date is necessary to avoid costly supplements, and does not allow enough time between Defendants' experts and Plaintiffs' rebuttals.

4.      Defendants SWMH and Dr. Davidson propose a staggered deadline for expert endorsements with Plaintiffs' endorsements due May 5, 2023; Defendants' expert endorsements due June 16, 2023; and rebuttal endorsements due June 30, 2023. The staggered deadline is consistent with the burden of proof in a case alleging medical negligence where the claims, which must be supported by qualified expert testimony, will not be known until the time of endorsement. A staggered deadline allows defendant to appropriately respond to the allegations asserted by Plaintiffs' experts on all claims of negligence and the causal tie to damages. This proposal should allow for sufficient expert witness discovery to occur prior to the proposed discovery cut off of September 4, 2023, and the difficulties in scheduling experts with multi-party litigation. County Defendants do not object to this approach.

d.   Identification of Persons to be Deposed Apart from Experts:

| Name of Deponent | Date of Deposition | Time of Deposition | Expected Length of Deposition |
|---|---|---|---|
| Sheriff Nowlin | TBD | TBD | ____ hours |
| Undersheriff Lynda Carter | TBD | TBD | ____ hours |
| Randy Davidson, M.D. | TBD | TBD | ____ hours |
| Deputy Zachary Summers | TBD | TBD | ____ hours |
| Deputy Andrew Daulton | TBD | TBD | ____ hours |

| | | | |
|---|---|---|---|
| Det. Yvonne McClellan | TBD | TBD | ____ hours |
| Det. Tyson Cox | TBD | TBD | ____ hours |
| Robert Kurtzman, M.D. | TBD | TBD | ____ hours |
| Ofc. Charles Osborn | TBD | TBD | ____ hours |
| Deputy Daniel Ruiz | TBD | TBD | ____ hours |
| Deputy Daylan Guttridge | TBD | TBD | ____ hours |
| Deputy Bryce Durbin | TBD | TBD | ____ hours |
| Michael Arnall, MD | TBD | TBD | ____ hours |
| Kenzie Oliver, RN | TBD | TBD | ____ hours |
| Jennifer Gadis, RN | TBD | TBD | ____ hours |
| John Mathers, DO | TBD | TBD | ____ hours |
| EMTs and Paramedics who transferred Mr. Newman from MCDC to SMH | TBD | TBD | ____ hours |
| 30(b)(6) witness of BOCC | TBD | TBD | ____ Hours |
| 30(b)(6) witness of SMH | TBD | TBD | ____ Hours |
| Other health care providers at Southwest Memorial Hospital, currently unknown | TBD | TBD | 7 Hours |
| Other deputies at MCDC, currently unknown | TBA | TBA | 7 Hours |
| Officer Stephon Lobato | TBD | TBD | 3 Hours |
| Robert Salt | TBD | TBD | 3 Hours |
| Konami Mike | TBD | TBD | 3 Hours |
| Bryanne Watts-Lucero | TBA | TBA | 7 Hours |
| Jasmin Wilson | TBA | TBA | 7 Hours |
| Elisa Wilson | TBA | TBA | 7 Hours |
| Todd Fowler, MD | TBA | TBA | 2 Hours |

| Previous Employers of Kelroy Newman | TBA | TBA | ___ Hours |
|---|---|---|---|
| Other friends and family members of Kelroy Newman | TBA | TBA | ___ Hours |

## 10. DATES FOR FURTHER CONFERENCES

a.      Status conferences will be held in this case at the following dates and times:

_____

b.      A final pretrial conference will be held in this case on _____ at _____ o'clock ___.m.  A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

## 11. OTHER SCHEDULING ISSUES

a.      Identify the discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement:

Other than as stated herein, Counsel for the parties have no disagreement concerning discovery or scheduling issues at this time.

b.      The parties estimate that the jury trial will take ten (10) days.

d.      Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, CO 80903-3476; Wayne Aspinal U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, CO 81501-2520; or the U.S. Courthouse/Federal Building, La Plata County Courthouse, 1060 E. 2nd Avenue, Suite 150, Durango, CO 81301.

None

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's client.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C. COLO.LCivR. 7.1(a)

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13. AMENDMENTS TO SCHEDULING ORDER

The scheduling order may be altered or amended only upon a showing of good cause.

DATED this _____ day of _____ 2022.

BY THE COURT:

_____

U.S. Magistrate Judge Kristen Mix

APPROVED:

*s/ Anna Holland Edwards*
Anna Holland Edwards
Erica T. Grossman
John Holland
Dan Weiss
HOLLAND, HOLLAND EDWARDS & GROSSMAN, PC
1437 High Street
Denver, CO  80218
anna@hheglaw.com
erica@hheglaw.com
john@hheglaw.com
dan@hheglaw.com

*and*

*s/ Kevin D. Homiak*
Kevin Homiak
HOMIAK LAW LLC
1001 Bannock Street, Suite 238
Denver, CO 80204
kevin@homiaklaw.com
*Attorneys for Plaintiffs*

*s/ Ann Smith*
Ann Smith
VAUGHAN & DEMURO
111 South Tejon Street, Suite 545
Colorado Springs, CO 80903
asmith@vaughandemuro.com
*Attorneys for Defendants Montezuma*
*County, Sheriff Nowlin, Zachary*
*Summers, & Andrew Daulton*

*s/ Mark Collier*
Mark Collier
Matthew George
MESSNER REEVES LLP
1430 Wynkoop Street, Suite 300
Denver, CO  80202
mcollier@messner.com
mgeorge@messner.com
*Attorneys for Defendant Randy*
*Davidson, M.D.*

*s/ Amy E. Cook-Olson*
Amy E. Cook-Olson
Angela Lund Klein
KLEIN COOK OLSON, LLC
2130 Resort Drive, Unit E
Steamboat Springs, CO 80487
acookolson@kco-law.com
aklein@kco-law.com
*Attorneys for Defendant Southwest*
*Health System, Inc, d/b/a Southwest*
*Memorial Hospital*