**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 22-cv-1763**

J.W. a minor child, by and through next friend and mother, Elisa Wilson

     Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MONTEZUMA,
COLORADO a/k/a "Montezuma County";
SHERIFF STEVEN NOWLIN, individually and in his official capacity;
ZACHARY SUMMERS, individually;
ANDREW DAULTON, individually;
SOUTHWEST HEALTH SYSTEM, INC, d/b/a Southwest Memorial Hospital;
RANDY GENE DAVIDSON, MD, individually,

     Defendants.

---

**CIVIL RIGHTS COMPLAINT WITH REQUEST FOR TRIAL BY JURY**

---

Plaintiff, by and through her attorneys of HOLLAND, HOLLAND EDWARDS & GROSSMAN, LLC, complains against Defendants and request a trial by jury as follows:

### I.     INTRODUCTION

1. Kelroy Newman was a 30-year-old inmate at the Montezuma County Detention Center who was abandoned in a known medical crisis by involved Defendants, culminating in his death.

2. Kelroy Newman was arrested on July 17, 2021, by Cortez Police Department. He was taken to the Montezuma County Detention Center/Jail (hereinafter "MCDC" or "the jail"). Upon arrival there, he was found to have a very high blood alcohol level of .421 and facial and head injuries.

3. He was taken to Southwest Memorial Hospital where he was "cleared" to go to the jail, but no meaningful exam or testing was conducted, and he was there under a half hour.

4. Thereafter, he was kept at MCDC despite his repeated requests to go back to the hospital, persistent vomiting, and even though the jail recklessly has no medical staff on the weekend or ability to monitor alcohol withdrawal, withdrawal protocols, or deputies trained to monitor alcohol withdrawal and administer CPR.

5. He was also kept at MCDC despite his cellmate's repeated requests to staff to obtain medical care for him, the need for which was obvious to this lay cellmate.

6. Rather than provide any treatment, medical assessment, or perform the requisite gatekeeper functions and return him to the hospital, MCDC callously staff told Mr. Newman to "go lay down."

7. Having refused medical care and treatment in a known medical crisis for hours, MCDC staff found Mr. Newman unresponsive in his cell, but still alive at approximately 11:43.

8. MCDC Deputies tried to revive Mr. Newman but were reckless and negligent in the performance of CPR. The facility did not have the correct equipment available, the deputies were recklessly insufficiently trained (or not trained at all) with respect to alcohol withdrawal and CPR provision.

9. Mr. Newman died a preventable death in his cell at the age of 30.

## II.   JURISDICTION AND VENUE

10. The District of Colorado has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is a diversity of citizenship between the Plaintiff and Defendants, and the amount in controversy greatly exceeds the jurisdictional amount of $75,000. There is a complete diversity

of citizenship between the Plaintiff and the Defendants pursuant to 28 U.S.C. § 1332(a). The Court also has jurisdiction pursuant to 28 U.S.C. § 2201.

11. Plaintiff anticipates adding a federal claim to this matter as well by amendment under 42 U.S.C. §1983.

12. This case is instituted in the United States District Court for the District of Colorado pursuant to 28 U.S.C. §1391 as the judicial district in which all relevant events and omissions occurred and in which Defendants maintain offices and/or reside.

13. Pursuant to the Colorado Governmental Immunity Act (CGIA), sovereign immunity is waived for negligence in the operation of a jail and negligence in the operation of a hospital. See §24-10-106 C.R.S. Plaintiffs filed timely written notice of claims to the hospital and County related defendants, pursuant to § 24-10-109, C.R.S.

### III.  PARTIES

14. Kelroy Newman had one child, J.W., a minor child who is a resident of the State of New Mexico. Plaintiff brings suit through her mother and next friend, Elisa Wilson, who is also a resident of New Mexico.

15. The Defendant Board of County Commissioners of the County of Montezuma, Colorado a/k/a "Montezuma County" (hereinafter "BOCC") is a governmental entity chartered under the laws of the State of Colorado. Defendant BOCC represents, oversees, and sets policy for Montezuma County Colorado. Among other things, Montezuma County operates the Montezuma County Detention Center (hereinafter "MCDF" or "the jail"), located at 730 East Driscoll Street in Cortez, Colorado. Under COLO. REV. STAT. § 30-11-105, the BOCC is the proper party in an

3

action against Montezuma County. BOCC has statutory and constitutional obligations to assure adequate medical care and treatment.

16. At all times relevant hereto, Defendant Steven Nowlin was a resident of the State of Colorado and the Sheriff of Montezuma County, Colorado. Under the Governmental Immunity Act, Sheriff Nowlin is sued in his official capacities, only, as the Sheriff in charge of running the jail with statutory and constitutional obligations to assure proper medical care and medical equipment. Sheriff Nowlin is sued individually under C.R.S. 13-21-131.

17. Sheriff Nowlin is responsible for the herein alleged negligence in the operation of a jail and is vicariously liable for the negligence of all the involved jail staff.

18. At all times relevant hereto, Zachary Summers, was an employee of MCDC working as a deputy in the jail. He is a resident of Colorado and citizen of the United States of America acting within the scope and course of his employment and under color of state law.

19. At all times relevant hereto, Andrew Daulton, was an employee of MCDC working as a deputy in the jail. He is a resident of Colorado and citizen of the United States of America acting within the scope and course of his employment and under color of state law.

20. Southwest Health System, Inc, d/b/a Southwest Memorial Hospital, is a Colorado nonprofit corporation located at 1311 N. Mildred Road, Cortez, Colorado, 81321. It is vicariously liable for the actions of its employees and agents herein including the medical team who cared for and had a patient relationship with decedent.

21. Montezuma County Hospital District is a special hospital taxing entity for Montezuma County related to Southwest Health System Hospital in the State of Colorado located at 1 West Main Street, Suite #5, Cortez, Colorado 81321.

22. Randy Gene Davidson, MD, was the doctor who briefly saw Kelroy Newman prior to his incarceration. At all times relevant hereto had a physician-patient relationship with the decedent Kelroy Newman and was acting as an employee or agent of Southwest Health Systems and/or Montezuma County Hospital District or its related entities. Dr. Davidson is believed to be a resident of Colorado and a specialist in emergency medicine.

23. Southwest Health System, Inc. and the Montezuma County Hospital District are jointly referred to as "the hospital" throughout.

### IV.   STATEMENT OF FACTS

24. Plaintiff incorporates all of the foregoing allegations as if they were fully set out again here at this point.

25. Kelroy Newman was arrested on Saturday, July 17, 2021, by Cortez Police Department and booked into the Montezuma County Detention Center ("MCDC") around 10:00 a.m. that day.

26. Mr. Newman was a pre-trial detainee, as he had been accused but not yet adjudicated of two misdemeanor level charges.

27. He had visible injuries all over his face from a fight prior to being arrested, which included a swollen jaw and a black eye.

28. He was booked into the jail by Deputies Zachary Summers, Andrew Daulton, and other MCDC booking staff, where he was found to have an extremely high blood alcohol level of .421.

29. Because of his alcohol level and still worsening facial injuries, he was taken to Southwest Memorial Hospital to be cleared for jail.

5

30. The hospital staff and Dr. Davidson negligently and/or recklessly ignored Mr. Newman's very high alcohol levels and facial injuries, and completely failed to properly work him up for these obvious medical problems.

31. It was grossly negligent to discharge Mr. Newman to a jail with no medical staff and without having evaluated his alcohol consumption, withdrawal risk and other injuries.

32. On information and belief, the hospital and Dr. Davidson knew that the jail did not have medical staff on the weekends.

33. Mr. Newman was at the hospital for less than half an hour.

34. The Montezuma County Detention Center is not equipped to handle people with a high level of blood alcohol or who may be going through alcohol withdrawal.

35. MCDC only has one nurse on staff, who only works during the week and who was not on duty on Saturday or Sunday, the days that Mr. Newman was in the jail.

36. On information and belief, the jail has no alcohol withdrawal or "C.I.W.A." protocols in place and even if they do have such protocols, they cannot be utilized on the weekend without a medical staff member.

37. Instead, the Defendant Sheriff Nowlin has negligently chosen to rely on Deputies and other MCDC staff, none of whom are medical personnel, to supervise and monitor detainees who may be withdrawing from alcohol without any specific alcohol related withdrawal monitoring at all.

38. Mr. Newman had a very high blood alcohol level early in the day on the 17th. Despite being perceptively drunk at 10 in the morning, Mr. Newman was not slurring, stumbling, losing consciousness or otherwise acting acutely intoxicated the way one would expect with such

a high blood alcohol level. This obviously indicated a high tolerance for alcohol from regular consumption of alcohol and a correspondingly high risk for serious withdrawal medical problems.

39. It is well known that withdrawal from alcohol suddenly can cause seizures and death, among other serious medical issues.

40. The jail was required, therefore, to have medical workers to monitor for withdrawal symptoms and MCDC Deputies, including, but not limited to, Zachary Summers, Andrew Daulton, Daniel Ruiz, Daylan Guttridge, and Bryce Durbin, were obligated to regularly check on Mr. Newman to make sure his alcohol withdrawal did not become an acute emergency, and if it did, to get him to the hospital.

41. Mr. Newman was held in the booking area of the jail and put on an observation schedule that had no specific alcohol related observations requirements or other monitoring, care or treatment.

42. Mr. Newman was housed at the jail with no medical care for the next 24 hours during which time he vomited repeatedly.

43. Instead of being on any type of appropriate monitoring for alcohol withdrawal, Mr. Newman was put on a standard half hour rounding observation, which was not completed as required and which contained demonstrably false information, including repeatedly charting that he was sleeping and calm when he was vomiting and restless, and even that he was calmly sleeping at the time he was found unresponsive and experienced the botched resuscitation described below.

44. This is a small jail and Deputy Defendants knew that Mr. Newman was vomiting because they could hear him and because his cellmates told them.

45. Thus, these Deputies observed Mr. Newman as he endured the well-understood symptoms of life-threatening alcohol withdrawal during the roughly 24-hour period he was at the jail, from his booking around midday on July 17 to midday on July 18, when he was found unresponsive.

46. During this period Mr. Newman's cellmate, Robert Salt, observed Mr. Newman repeatedly getting up to wash his face and throw up.

47. Mr. Salt repeatedly banged on the door and pushed the call button to try and get MCDC staff to stop ignoring Mr. Newman's obviously serious medical crisis.

48. Mr. Newman was thus left to his own devices for the rest of July 17 and overnight into the morning of July 18.

49. During this period Mr. Newman repeatedly asked to go to the hospital.

50. When an alcoholic person is arrested and taken to jail, he or she is immediately and suddenly cut off from alcohol. Alcohol withdrawal can develop with its host of complications, leading up to, and including, death.

51. Jails are supposed to recognize and respond to these signs and symptoms by promptly screening incoming inmates for withdrawal and obtaining prompt and appropriate medical treatment for inmates experiencing or at risk for alcohol withdrawal.

52. With appropriate medical management, alcohol withdrawal symptoms can be safely managed to avoid the most dangerous symptoms. Jails and jail personnel may not deny medical care to people going through withdrawal or who are at risk of withdrawal.

53. The morning of July 18, Mr. Newman complained repeatedly to these Deputies and other MCDC staff about his symptoms of alcohol withdrawal and his worsening head pain.

54. Also, on the morning of July 18, Mr. Newman's facial injuries had significantly worsened.

55. Mr. Newman's cellmate believed him to be going through withdrawal, banged repeatedly on the door and told deputies that Mr. Newman needed to go back to the hospital.

56. When breakfast was brought to the cell that morning, Mr. Newman complained again about his serious and worsening symptoms to no avail.

57. During breakfast Mr. Newman told Deputy Summers he could hardly eat, his head hurt, he was vomiting, and he needed to go to the hospital.

58. Deputy Summers told Mr. Newman to lay back down, that he had already been to the hospital, and that he just needed to stay there and would be fine.

59. Deputy Summers responded by saying "we already took you," and slammed the door closed.

60. He was again told to just go lay down.

61. The jail thus again refused a send-out to the hospital, the only place he could get the medical care he obviously needed, especially given the lack of medical care in the jail on the weekend.

62. Shortly before noon on July 18, Mr. Salt got ready to go to lunch and kicked Mr. Newman's foot to let him know.

63. Mr. Salt go no response at all from Mr. Newman and called for help.

64. Deputy Summers and another deputy believed to be deputy Daulton arrived at the cell to find the long-neglected Mr. Newman unresponsive and not breathing.

9

65. Mr. Salt was then removed from the cell, and when he later complained to Deputies that they had ignored a man in an obvious medical crisis, he was put in the hole in retaliation for complaining about the abandonment of his cellmate.

66. The MCDC Deputies summoned by Mr. Salt to help the unresponsive Mr. Newman were clearly negligently untrained in basic first aid techniques.

67. They did not even bring functioning CPR equipment.

68. Deputies fumbled around in a negligently untrained, objectively unreasonable, and recklessly incompetent effort to revive Mr. Newman.

69. Mr. Newman was still alive and groaning when Deputy Summers first began assessing him.

70. Deputy Summers did not know whether to start chest compressions.

71. Once compressions started, they were negligently and recklessly inadequate. Deputies did not even switch off to relieve each other to be able complete the strenuous work of adequate chest compressions.

72. Deputy Summers repeatedly asked another Deputy believed to be Andrew Daulton to bring a breathing mask, acknowledging aloud that there was no point in compressions without providing oxygen to Mr. Newman's body.

73. Because there was no mask and the involved deputy defendants were unwilling or untrained to do mouth to mouth resuscitation, no breaths were given in between compressions, depriving Mr. Newman's brain and organs of oxygen as he was dying.

74. Lifesaving minutes passed while deputies looked for equipment and tried to figure out how to use it.

75. Even once the deputies had the mask, they negligently performed several cycles of breathing into it before they realized that the mask had not been opened to a functional position.

76. EMT personnel arrived and began CPR, but Mr. Newman was already in asystole. He was declared dead at 12:20 pm.

77. Because of the negligence of this hospital and its staff, and this jail and its staff, Mr. Newman died a preventable death related to alcohol withdrawal-related symptoms at the age of thirty.

78. Mr. Newman is survived by his daughter J.W., who suffers emotional distress and losses as a result of the loss of her father.

79. As a direct and proximate result of these Defendants' unlawful acts and omissions, Plaintiff has suffered damages, losses and injuries in an amount to be determined by the jury at trial. These damages include, but are not limited to funeral expenses, lost earnings and financial benefits she would have reasonably been expected to receive from her father had he lived, pain and suffering, upset, grief.

### V. FIRST CLAIM FOR RELIEF
**Negligence in the Operation of a Jail resulting in Wrongful Death**
**(Against Sheriff Nowlin, in his official capacity, and BOCC only)**

80. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set for the herein.

81. Pursuant to the Colorado Governmental Immunity Act, CO ST. § 24-10-106, ("CGIA") governmental immunity is waived for any action by a pre-trial detainee for injuries, which lie in tort or could lie in tort, resulting from the negligent operation of any correctional facility or jail.

82. At all times relevant hereto, Mr. Newman was incarcerated at MCDC based on allegations that had not yet been adjudicated, and thus was being held as a pre-trial detainee.

83. Defendants hereto are vicariously liable for the negligent acts and omissions by his agents and/or employees, including, but not limited to Zachary Summers, Daniel Ruiz, Andrew Daulton, Daylan Guttridge, Bryce Durbin, Vici Pierce, and Garet Talley, all of whom at all relevant times hereto were acting within the scope of their employment.

84. Plaintiff brings this claim only against the entities, and not against the Sheriff as an individual or other individuals in their individual capacity.

85. At all times relevant to this action, Mr. Newman was in the custody and care of MCDC staff.

86. The operation of a correctional facility for purposes of the CGIA includes adequate provision of medical and mental health care necessary for basic health.

87. Defendant Sheriff Nowlin, in his official capacity, had a duty to provide reasonable medical care to pre-trial detainees in his custody like Mr. Newman. This duty includes, but is not limited to the following:

- A duty to implement reasonable alcohol withdrawal or "C.I.W.A." policies and protocols;
- A duty to provide reasonable medical care to detainees who are suffering from alcohol withdrawal symptoms;
- A duty to staff medical workers on the weekend;
- A duty to reasonably train MCDC staff on how to provide first aid and CPR to detainees in medical crisis;
- A duty to reasonably provide and maintain functional first aid and CPR equipment; and
- A duty to timely transport a detainee in medical crisis who cannot receive the necessary medical care at MCDC, to a healthcare facility able to provide the higher acuity medical care they need to survive and maintain basic health and safety.

88. As alleged herein, Defendant Sheriff Nowlin, in his official capacity, breached these duties of care by the complained-of negligent acts and omissions, including, but not limited to the following:

- Failing to implement reasonable alcohol withdrawal or "C.I.W.A." policies and protocols;
- Failing to provide reasonable medical care to detainees who are suffering from alcohol withdrawal symptoms;
- Failing to staff medical workers on the weekend;
- Failing to reasonably train MCDC staff on how to provide first aid and CPR to detainees in medical crisis;
- Failing to reasonably provide and maintain functional first aid and CPR equipment; and
- Failing to timely transport a detainee in medical crisis who cannot receive the necessary medical care at MCDC, to a healthcare facility able to provide the higher acuity medical care they need to survive and maintain basic health and safety.

89. Through their actions and omissions, or those of their employees, Defendants breached their respective standards and duties of care and were negligent in failing to provide for the withdrawal symptoms monitoring and treatment, provision of health care, timely transfer to the hospital, and provision of competent CPR, causing Mr. Newman's death.

90. As a direct and proximate result of these Defendants' unlawful acts and omissions, Plaintiff has suffered damages, losses and injuries in an amount to be determined by the jury at trial. These damages include, *inter alia*, pain and suffering, upset, grief, loss of society and companionship, anger, depression, and all other purely non-economic damages as allowed under the Colorado Wrongful Death Act.

91. Plaintiff also has suffered and will continue to suffer economic and non-economic damages due to Defendants' negligent conduct toward Mr. Newman including, but not limited to, economic and non-economic damages for grief, loss of Mr. Newman as a parent, and emotional

distress. Plaintiff is therefore entitled to general and compensatory damages for such pain and suffering and emotional distress and to special damages in amounts to be ascertained in trial.

## VI. SECOND CLAIM FOR RELIEF
**Negligence in the Operation of a Hospital and Medical Negligence Causing Wrongful Death (Against Southwest Health System, Inc., d/b/a Southwest Memorial Hospital, Montezuma County Hospital District and Dr. Davidson)**

92. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

93. Pursuant to the Colorado Governmental Immunity Act, CO ST. § 24-10-106, ("CGIA") governmental immunity is waived for any action resulting from the negligent operation of a public hospital.

94. The hospital sued herein is partially a governmental agency and proper and timely notice of claims was given related to negligence in the operation of a public hospital. The hospital is also a non-profit as to whom no such notice is required, but was given.

95. Dr. Davidson was at all times relevant hereto an emergency medicine physician who had a physician patient relationship with, and provided negligent medical care and treatment, to Mr. Newman.

96. Dr. Davidson had a duty to Mr. Newman to properly and reasonably assess, diagnose, treat, and admit Mr. Newman to the hospital, but instead he violated this duty of care by failing to reasonably assess, diagnose, treat, or admit Mr. Newman, causing Mr. Newman's death.

97. Defendant Hospital and Hospital Special District are vicariously liable for the negligent, negligent acts and omissions by their nursing agents and/or employees, as alleged in this claim for relief and in the incorporated statement of facts.

98. Defendant Davidson, the Defendant Hospital, and the Defendant Hospital Special District, through nursing and other allied health care professional staff, and/or directly, all had duties of due care to provide or assure provision of reasonable medical, nursing or other health care to Mr. Newman by qualified caregivers.

99. All involved caregivers failed to fulfill their duty as nurses, doctors, and other health care workers to properly assess, diagnose, admit, and treat Mr. Newman, causing his death.

100. With respect to their care and treatment of Mr. Newman, Defendants each owed him a duty to exercise the degree of care, skill, caution, diligence, and foresight exercised by and expected of hospital, nursing, allied health professional personnel and physicians including national standards for emergency medicine physician specialists like Dr. Davidson.

101. Through their actions and omissions, or those of their employees, Defendants breached their respective standards and duties of care and were negligent in failing to properly assess, monitor, treat, advocate and care or provide for the admission, diagnosis and proper care and treatment of Mr. Newman by properly qualified caregivers as set forth herein in the incorporated statement of facts.

102. As a direct and proximate result of these Defendants' unlawful acts and omissions, Plaintiff has suffered damages, losses and injuries in an amount to be determined by the jury at trial. These damages include, *inter alia*, pain and suffering, upset, grief, loss of society and companionship, anger, depression, and all other purely non-economic damages as allowed under the Colorado Wrongful Death Act.

103. Plaintiff also has suffered and will continue to suffer economic and non-economic damages due to Defendants' negligent conduct toward Mr. Newman including, but not limited to,

economic and non-economic damages for grief, loss of Mr. Newman as a parent, and emotional distress. Plaintiff is therefore entitled to general and compensatory damages for such pain and suffering and emotional distress and to special damages in amounts to be ascertained in trial.

### VII. THIRD CLAIM FOR RELIEF
### Colo. Rev. Stat. § 13-21-131
### Cruel and Unusual Punishment and Deprivation of Due Process
### Violation of Colorado Constitution, Article 2, Sections 20 & 25
### (Against Defendants Sheriff Nowlin, Defendant Deputy Summers and Deputy Daulton)

104. Plaintiff incorporates by reference the foregoing paragraphs of this Amended Complaint as if set forth fully herein.

105. Plaintiff brings this claim against Defendants Sheriff Nowlin, individually, and Defendant Deputies Summers and Daulton in their respective individual capacities.

106. At all times relevant to this Amended Complaint, these Defendants were acting under the color of state law in their capacities as Montezuma County Sheriff Department Deputies, peace officers as defined by Colo. Rev. Stat. § 24-31-901(3).

107. Mr. Newman had a constitutional right under Article 2, Section 20, of the Colorado Constitution to be free from cruel and unusual punishment, including the right to receive objectively reasonable and/or non deliberately indifferent medical care, including CPR and withdrawal care, as a pretrial inmate.

108. Mr. Newman also had a constitutional right under Article 2, Section 25, of the Colorado Constitution to due process, including the right to receive objectively reasonable and/or non deliberately indifferent medical care, including CPR and withdrawal care, as a pretrial inmate.

109. Defendants to this claim were aware of the substantial risk of harm to the inmates at the jail by only providing medical care on the weekdays and having no alcohol withdrawal

protocols to assess an inmate like Mr. Newman as he began experiencing withdrawal. These Defendants were also aware of the substantial risk of harm to inmates at the jail by having staff under trained or untrained in the provision of reasonable CPR, and of not having adequate equipment to provide such lifesaving care.

110. Defendant Sheriff Nowlin had had the responsibility to oversee the jail, including by ensuring that employees received adequate supervision and training, that staffing and equipment was adequate to manage medical needs of inmates, did not harm the inmates, and had the power and authority to create and enforce policies, regulations, practices, and customs within the jail in these critical constitutional regards. Despite knowing of the risks of failing in these responsibilities, Defendant Sheriff Nowlin was deliberately indifferent and objectively unreasonable in the medical staffing of the jail, the medical equipment at the jail, the training at the jail for provision of CPR, and the development and implementation of alcohol related withdrawal protocols, assessments and monitoring.

111. Despite knowing of the obligation to provide competent staff and equipment and competent objectively reasonable assessments and CPR, all Defendants hereto violated those obligations causing the death of Mr. Newman.

112. As a direct and proximate result of these Defendants' unlawful acts and omissions, Plaintiff has suffered damages, losses and injuries in an amount to be determined by the jury at trial. These damages include, *inter alia*, pain and suffering, upset, grief, loss of society and companionship, anger, depression, and all other purely non-economic damages as allowed under the Colorado Wrongful Death Act.

113. Plaintiff also has suffered and will continue to suffer economic and non-economic damages due to Defendants' negligent conduct toward Mr. Newman including, but not limited to, economic and non-economic damages for grief, loss of Mr. Newman as a parent, and emotional distress. Plaintiff is therefore entitled to general and compensatory damages for such pain and suffering and emotional distress and to special damages in amounts to be ascertained in trial.

## VIII.  PRAYER FOR RELIEF

Plaintiff prays that this Court enter judgment for the Plaintiff and against each of the Defendants and enter the following relief:

(a) All appropriate relief at law and equity;

(b) Economic losses on all claims allowed by law;

(c) Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(d) Punitive damages on any claims allowed by law, including pursuant to the and upon suitable amendment with respect to health care providers;

(e) Attorneys' fees and costs associated with this action, including expert witness fees, on all claims allowed by law;

(f) Pre- and post-judgment interest at the highest lawful rate; and

(g) Any further relief that this Court deems just and proper.

**PLAINTIFF REQUESTS TRIAL BY JURY.**

Respectfully submitted this 15th day of July, 2022.

*/s/ Anna Holland Edwards*
Anna Holland Edwards

>John Holland
>Dan Weiss
>Holland, Holland Edwards & Grossman, LLC
>1437 High Street
>Denver, CO  80218
>303-860-1331
>anna@hheglaw.com
>*Attorneys for Plaintiff*

## CERTIFICATE OF REVIEW

This is to certify that undersigned counsel has conferred, pursuant to Colorado statutes, with person who have expertise in the areas of alleged negligence, including the medical and emergency medical negligence, and this person has reviewed the known facts, including such records, documents, and other materials as they have found to be relevant to the complaint allegations of negligent acts and omissions and have concluded that the filing of this complaint does not lack substantial justification and in fact is substantially meritorious within the meaning of C.R.S. Section 13-20-602 with violations of the standards of care involved by all of the defendants.

>*/s/ Anna Holland Edwards*
>Anna Holland Edwards