# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-1763-PAB-KAS

ESTATE OF KELROY NEWMAN, by and through
putative personal representative, Bryanne Watts-Lucero;
J.W., a minor child, by and through next friend and
mother, Elisa Wilson;

    Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MONTEZUMA, COLORADO;
SHERIFF STEVEN NOWLIN, individually and in his official capacity;
ZACHARY SUMMERS, individually;
SOUTHWEST HEALTH SYSTEM, INC, d/b/a Southwest Memorial Hospital;
RANDY GENE DAVIDSON, MD, individually,

    Defendants.

---

**PLAINTIFFS' RESPONSE TO DEFENDANT RANDY GENE DAVIDSON, M.D.
MOTION TO EXCLUDE UNQUALIFIED STANDARD OF CARE OPINIONS
PURSUANT TO F.R.E. 702**

---

Plaintiffs respond to Defendant Randy Gene Davidson, MD's Motion to Exclude Unqualified Standard of Care Opinions Pursuant to F.R.E. 702, [Doc. #110] as follows:

## I. INTRODUCTION AND LEGAL STANDARD

Defendant Davidson's motion gives the false impression that Plaintiffs have endorsed six experts to opine that he was negligent, some of whom are not doctors or not doctors in Dr. Davidson's "subspecialty." Defendants' Motion, p. 2. In reality, Plaintiffs have endorsed one

Board Certified Emergency Room doctor to opine on Dr. Davidson's standard of care.[1]

As this Court is aware, the admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. It is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area. Instead, the Court must "perform[] a two-step analysis." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After determining whether the expert is qualified, the Court must assess whether the specific proffered opinions are reliable. *See id.* To perform its gatekeeping role, the Court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003). The objective of *Daubert*'s gatekeeping requirement remains the same: to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579(1993). *See also*, *Estate of Grubbs v. Weld Cnty. Sheriff's Office*, Civil Action No. 16-cv-00714-PAB-STV, 2018 U.S. Dist. LEXIS 106775, at *8 (D. Colo. June 26, 2018).

---

[1] Despite Southwest Memorial Hospital's Answer, Doc. #23, ¶¶ 11 & 22, stating that Dr. Davidson is Board Certified in Emergency Medicine, and his C.V. which stated his Board Certifications were "grandfathered," his Board Certification actually lapsed in 2015; at the time he saw Mr. Newman, he was no longer board certified. See, **Ex. 1**, Defendant's Responses to Plaintiffs' Second Set of Discovery and C.V.

Recitations of factual information reviewed in an expert's report do not constitute expert opinions subject to review under Fed. R. Evid. 702. In fact, Fed. R. Evid. 702 requires that expert testimony be based on sufficient facts and data. Accordingly, expert reports often, if not always, include a recitation of the facts underlying the ultimate opinions.

As Defendant's Motion indicates, during conferral Plaintiffs voluntarily withdrew some contested paragraphs to try to make that clear and avoid more motions practice. Some of the opinions listed in the motion are actually already withdrawn. The remaining 'opinions' are simply not standard of care opinions about Dr. Davidson. Instead, many are factual statements that experts have included in their reports as part of the background for their opinion, or opinions about other defendants (for whom the challenged experts have the applicable expertise).

Facts are not converted into opinion by virtue of being included in an expert report, and "Rule 702 does not provide a mechanism to strike an expert's recitation of the facts they understood to exist." *Clifton v. State Farm Mut. Auto. Ins. Co.*, Civil Action No. 18-cv-01231-MSK-STV, 2021 U.S. Dist. LEXIS 54316, at *33-34 (D. Colo. Mar. 23, 2021). As Judge Krieger further held in *Clifton:*

> The cited portion consists of a single paragraph (and a comment), that appears to recite what Dr. Scott read in the accident report. It does not appear that Dr. Scott is offering any "opinions" with regard to this information. He recites it simply to identify the facts that he reviewed and relied upon. As such, this recitation is not subject to review under Rule 702. To the extent Dr. Scott's recitation of the facts as he understood them is inconsistent with evidence that is produced at trial, that discrepancy may affect the weight (or, in extreme cases, the outright admissibility) of the medical opinions that Dr. Scott does proffer. But Rule 702 does not provide a mechanism to strike an expert's recitation of the facts they understood to exist. Therefore, this challenge is denied.

*Id.*; *see also*, *Fitzgerald v. Catholic Health Initiatives Colo.*, Civil Action No. 21-cv-0006-WJM-KMT, 2022 U.S. Dist. LEXIS 165178, at *9 (D. Colo. Sep. 13, 2022) (denying motion to exclude, explaining "Dr. Hargens's anticipated testimony is merely recitation of facts underlying his opinion, not an expert opinion.").

## II. NONE OF THE CHALLENGED EXPERTS OFFER STANDARD OF CARE OPINIONS ABOUT DR. DAVIDSON

1. Mr. Caruso

David Caruso an expert in correctional practices and jail administration. *See* **Ex. 2**, CV. He has run jails, designed trainings, written manuals and lectured extensively on jail and prison management. He is very familiar with the medical issues that arise in jail and the policies and procedures that need to be in place.

In an attempt to reach agreement, Plaintiffs voluntarily withdrew the first paragraph listed by Defendant. Doc. #110, p. 7. The remaining disputed paragraphs are as follows:

- "Southwest Memorial Hospital staff failed to provide any documentation for further care for Mr. Newman by jail staff or fail medical staff upon his return to Montezuma County Detention Center." [**Ex. 3**, Caruso Report, ¶ 44]

- "It is my professional opinion…that the Montezuma County Detention Center has entered into an agreement or understanding with the local hospital for clearances and treatment, but allows the hospital to 'clear' inmates in a conclusory manner without sending any of the necessary recommendations to the jail, including frequency of checks, medications, and patient specific signs and symptoms to watch for which was an especially dangerous practice when combined with the lack of medical staff, training, and equipment at the jail on nights and weekends." [**Ex. 3**, ¶ 70]

Mr. Caruso does not offer standard of care opinions about Emergency Room physicians. These paragraphs do not express opinions that Dr. Davidson violated the standard of care. Mr. Caruso's opinions are aimed at the County Defendants' constitutional obligations to evaluate for and monitor withdrawal symptoms and changes in condition – obligations with which he is

4

extremely familiar through training and experience. The County must have a system to perform medical clearances for incarceration, and systems to house intoxicated, withdrawing, and injured inmates over the weekend. Delegating it to the emergency room without any plan for how to obtain or provide a medical monitoring plan did not meet correctional requirements.

Similarly, the County Defendants' Correctional Standards expert, Mr. Sweeney, rebuts Mr. Caruso's opinions about County liability. In doing so, Mr. Sweeney also provides statements about the hospital, the doctor and the importance of deputy reliance on the medical clearances and follow-up instructions in order to safely house inmates as follows:

> The non-medical staff appropriately relied on the decision-making of the qualified medical personnel at the hospital, who assessed and cleared Newman for incarceration. Without suggesting that any special or intensive monitoring of Newman was warranted, as captured in depositions, the area hospital initiated individualized medical directives for inmates, on numerous prior occasions, when deemed clinically necessary by trained and licensed medical staff…
>
> MCDC custody staff relied on the clinical decision making of trained and licensed hospital personnel who cleared Newman for incarceration…
>
> I will note that the implementation of a prescribed detox treatment regimen is a clinical determination, based on multifaceted, individual circumstances. The record demonstrates that the treating hospital physician was aware that Newman was being committed to the MCDC on Saturday morning following his discharge from the hospital.

**Ex. 4**, Sweeney Report, ¶¶ 8, 56, 58.

The use by Mr. Caruso of the words "Dr. Davidson' and "Southwest Memorial Hospital" does not transform his statements about what happened into a standard of care opinion against the doctor. As a correctional expert, Mr. Caruso properly gives opinions about medical clearances for incarceration and the duty of the County to obtain adequate clearances and instructions in order to safely manage and house intoxicated inmates.

5

2. Dr. Russel Kerbel, MD, MBA

Dr. Kerbel is a hospitalist and Board Certified Internist. Plaintiffs have never attempted to endorse this expert for Dr. Davidson's standard of care. Instead, he clearly opines on causation, symptoms and manifestation of alcohol withdrawal, and how Mr. Newman died. As Defendant's motion states, Dr. Kerbel already testified that he is not offering standard of care opinions as to Dr. Davidson. Doc. #110, p. 8. Plaintiffs have also confirmed this in conferral.

The 'opinion' Dr. Davidson takes issue with, is simply an undisputed factual description of the record:

- Dr. Davidson does not discuss Mr. Newman's alcohol intake, history, or withdrawal history in the medical record at the hospital. The discharge paperwork did not specify any monitoring Mr. Newman needed related to alcohol intoxication, withdrawal, or head injuries. [**Ex. 5**, Kerbel Report, ¶ VI(2)]

This factual "recitation is not subject to review under Rule 702." *Clifton*, U.S. Dist. LEXIS 54316, at *33-34. All Defendants concede these facts, *i.e.,* that Dr. Davidson's medical entry does not discuss "alcohol intake, history or withdrawal history" and that the discharge paperwork did not specify any monitoring needed for intoxication, withdrawal, or head injuries. *See, e.g.* Defendant Hospital's Motion for Summary Judgment, Doc. #104, SUMF 5-11, 14.

3. Dr. Peerwani, MDPA

Dr. Peerwani is a medical doctor specializing in forensic pathology. He is board certified in anatomic, clinical and forensic pathology. He has served as the Chief Medical Examiner for multiple counties, performed several thousand forensic examinations, many of which involved in-custody deaths as well as deaths due to drug and or alcohol use and misuse. Dr. Peerwani is endorsed to testify about forensics and Mr. Newman's cause of death. Dr. Peerwani is not offered to give standard of care opinions about Dr. Davidson. Plaintiffs' counsel have also confirmed this

6

in conferral.

Dr. Davidson moves to strike three the following three bulleted paragraphs from Dr. Peerwani's report, which he mischaracterizes as "standard of care opinions." Doc. #110, p. 9.

- Once again, there were no baseline studies performed by Dr. Davidson described previously. [**Ex. 6**, Peerwani Report, p. 4]

- Dr. Davidson did not perform antemortem blood alcohol test or and drug screens; hence there was no determination in the ER whether NEWMAN was in ethanol absorptive with rising blood alcohol level or whether he was in the degradation phase. [**Ex. 6**, p. 10]

These are not standard of care opinions. They are merely factual recitations of the reading of the record, they are uncontested, and in fact were listed as "undisputed facts" in the Hospital's Motion for Summary Judgment, Doc. #104, SUMF ¶¶ 15-16, 21.

- I agree with Dr. Kerbel that to a reasonable degree of medical certainty, NEWMAN would not have died had he been maintained in the hospital for monitored detox or if the deputies at the Detention Center had been trained to evaluate for alcohol withdraw or detox, or if they brought NEWMAN back to Southwest Memorial Hospital for treatment when he asked on the morning of 07-18-2021. Medically competent evaluation would more likely than not have revealed clinical signs of acute alcohol withdrawal and allowed for treatment. I disagree with Dr. Judge's testimony that it would not have mattered if he were admitted to the hospital and Dr. Bux's opinion that there is not enough information to form an opinion as to the cause of death." [**Ex. 6**, p. 13, ¶ 6]

This is also not a standard of care opinion; it instead relates to causation. Dr. Peerwani opines if Mr. Newman had been evaluated the morning of July 18, 2021, by a medically competent person (either because he had been maintained at the hospital, or if the deputies had brought him back to the hospital the morning of his death) that he would likely have survived because an exam would have revealed acute alcohol withdrawal and allowed for treatment. He does not opine that Dr. Davidson *should have* maintained him at the hospital, or that the deputies *should have* brought him back, which would be standard of care opinions. Instead, he opines that Mr. Newman would not have died had he been in a position to receive medical care for alcohol withdrawal before his

7

death.

4. Nurse Practitioner Lori Roscoe, DNP, APRN, ANP-C, CCHP-RN

NP Roscoe has extensive experience as a Nurse Practitioner with a Doctorate in Nursing. She has 27 years of experience in Correctional Health care. She is not offered here as a standard of care expert against Dr. Davidson. Rather, her testimony is offered in correctional medicine and concerns what type of intake screening and treatment planning must be done to manage inmates at the beginning of their incarceration, including what type of evaluation and monitoring must be done related to intoxication and withdrawal. Defendant's Motion lists two paragraphs that have been withdrawn, and there is no actual dispute requiring Court intervention regarding those paragraphs. Doc. #110, p. 6. The remaining disputed opinions or comments are:

- Dr. Davidson didn't think the jail employed any doctors or mid-level providers at that time. He didn't think the jail had a medical unit or a detox center and he knew that Southwest Memorial Hospital was where the jail brought people who needed care, including medical clearance for acceptance into the Detention Center, for the incarcerated individuals there. Thus, the nurses and providers at the SouthWest Memorial Hospital had responsibility for the safety of Mr. Newman, and all the incarcerated persons at the Montezuma County Detention Center. At a minimum, this included developing a treatment plan that considered the current and potential needs of the patient. [**Ex. 7**, Roscoe Report, p. 6].

- While the County has an arrangement to have initial clearances and orders done at the hospital, in 2021 the hospital was treating those as cursory and not providing the county with the information it needed to safely house intoxicated inmates without medical staff on the nights and weekend. The practice of having no meaningful assessment of intoxicated incarcerated persons for their risk of withdrawal deviated substantially from the applicable standard of care and put the lives and safety of alcohol dependent incarcerated individuals at serious risk of harm. [**Ex. 7**, pp. 10-11].

The beginning of the first paragraph is simply a recitation of facts, which leads into NP Roscoe's properly offered opinion that this medical clearance, and the County's own policies did not meet the applicable correctional requirements. Contrary to Dr. Davidson's argument that NP Roscoe is offering "opinions regarding the standard of care applicable to emergency medicine

8

physicians and whether that standard of care was met by Dr. Davidson in this case," NP Roscoe's opinions concern what medical clearances for incarceration (which can be done on site at jails or in hospitals) must include in order to safely house inmates in a jail.

This opinion is primarily aimed at the County's failure to obtain or provide meaningful medical clearances with treatment plans for likely withdrawal in a jail with no medical staff. Medical clearances can be performed at the jail by qualified personnel or at the hospital by qualified personnel, and in both settings qualified personnel can properly include Nurse Practitioners. Whether performed at the hospital or the jail, the people performing such exams have duties to the incarcerated patients. Lori Roscoe, having managed and worked in Correctional Medicine as a provider, and performing audits of jail medical policies and procedures for many years, is certainly qualified to opine on these duties and what recommendations and instructions must come from a medical clearance for incarceration in order for jail staff to safely house intoxicated, withdrawing, or injured inmates.

The second paragraph is also aimed at the County's unconstitutional practice of having no in-house medical care, no in-house ability to plan for weekend monitoring of acute conditions such as withdrawal, and having not obtained from the hospital a treatment plan for inmates at risk from evolving conditions, about which NP Roscoe is clearly qualified to render opinions.

As acknowledged by Montezuma County's corrections expert, Mr. Sweeney, The National Commission on Correctional Health Care's (NCCHC) standards shed light on the jail medicine standards of care applicable here. The NCCHC's medical clearance standard reads as follows:

> Medical clearance should happen as soon as the individual arrives at the facility. Reception personnel need to ensure that people who are unconscious, semiconscious, bleeding, mentally unstable, severely intoxicated, exhibiting symptoms of alcohol or drug withdrawal, or otherwise urgently in need of medical

> attention are referred immediately for care and a medical clearance into the facility.
>
> **This documented clinical assessment of medical, dental and/or mental status may come from on-site qualified health care professionals or may require sending the individual to the hospital emergency room**. If the patient is sent to the emergency room for a medical clearance, **it is imperative that reception personnel and the emergency room staff communicate** about the potential health concern so that the patient is examined appropriately. Admission to the facility should be predicated on written medical clearance from the hospital for the identified condition.

**Ex. 8**, NCCHC Receiving Screening, available at: https://www.ncchc.org/spotlight-on-the-standards/receiving-screening/ (emphasis supplied).

As this NCCHC standard makes clear, the jail's reception personnel have the duty of ensuring that people who are severely intoxicated or exhibiting symptoms of alcohol withdrawal are medically cleared into the facility, and that medical clearance can happen onsite or at a hospital. NP Roscoe's opinions concern not Dr. Davidson's standard of care, but the standard of care for jail medical clearances and withdrawal monitoring. NP Roscoe is amply qualified by training and experience to opine regarding the standards of care for jail policies, jail medical clearances, and associated jail treatment plans.

The last paragraph of NP Roscoe's report objected to by Dr. Davidson concerns MCDC deputies' failure to contact a provider regarding Mr. Newman's worsening signs and symptoms after he had been medically cleared and admitted to the Jail.

- If a provider had been called regarding Mr. Newman's ongoing and worsening signs and symptoms, more likely than not he would have been sent to the emergency department for further testing, diagnosis, and treatment. [**Ex. 7**, p. 10].

This paragraph does not relate to emergency medicine or Dr. Davidson in any way. Instead, it is an opinion based on many years of correctional medicine, including serving as an on-call

provider,[2] about the most likely outcome if deputies had consulted a provider about Mr. Newman's worsening condition and request to go to the hospital hours before dying.

   5. Craig Felty, RN, MBA, BSN, FACHE, LCP-C

Mr. Felty is an expert in emergency room nursing and hospital administration. He currently is the Vice President and Chief Nursing Officer of Hancock Health in Greenfield, Indiana. He has over 25 years in healthcare management experience in the Emergency Department with 12 years as a hospital executive, including four as a hospital CEO. He is Board Certified in Hospital Administration. Based on his "experience in Emergency Nursing, Emergency Department Management, and executive level responsibility over Emergency Departments at hospitals of all sizes, [he is] familiar with and qualified to address the applicable standards of care related to organizational and staff responsibilities in performing an emergency medical screening exam, ruling out an emergency medical condition, and effecting a safe patient discharge from the emergency department." **Ex. 10**, Felty Report, p. 1. Mr. Felty is endorsed as an expert on the Hospital's negligence through nursing and through its own failures to create reasonable systems, regarding medical screening exams and medical clearances for incarceration.

While it was selectively not quoted in Dr. Davidson's motion, the opinions listed by Defendants all come after an introductory paragraph wherein he makes clear that his opinions related to hospital and nursing negligence, not Dr. Davidson. The contested opinions that are bulleted below, are immediately preceded by "the standard of care was **breached by hospital**

---

[2] Notwithstanding the hyperbolic assertion that NP Roscoe would be "subject to felony prosecution" if she "were to diagnose a patient with alcohol use disorder or recommend treatment for that condition," Nurse Practitioners in Colorado have authority to diagnose, treat, and prescribe. Doc. #110, p. 14; *see* 3 Colo. Code Regs. 716-1, § 1.14(F), attached as **Ex. 9**.

11

**leadership** and **nursing staff** at Southwest Memorial Hospital in the following manners:"

- "Failure to provide Kelroy Newman with a comprehensive Medical Screening exam, including nursing assessment, to rule out an emergency medical condition by not assessing and appropriately treating his alcohol intake status, head and facial trauma, and history of substance abuse. This is evidenced by Drs. Fowler and Davidson's testimony that it is never their practice to screen for BAC or alcohol withdrawal or consider that when clearing for intoxication for release to jail. Considering that this is the practice of two of Southwest Memorial Hospital's ED Physicians, it is reasonable to opine that these practices are accepted and consistent with the screening and EMTALA practices of Southwest Memorial Hospital related to incarcerated patients being medically cleared for jail." [**Ex. 10**, p. 5]

- Such practice is evidence of a conscious disregard of the risk and safety of this subset of patients." [**Ex. 10**, p. 5]

- Failure to conduct a comprehensive medical screening exam as required by EMTALA placed Kelroy Newman in a dangerous situation when he was discharged to jail without treatment for his alcohol intoxication, head and facial trauma, and lack of assessment for potential alcohol withdrawal." [**Ex. 10**, p. 5]

- Failure to provide comprehensive individually tailored discharge instructions to Kelroy Newman and his correctional care givers regarding his conditions and injuries that would need to be assessed and monitored while he was incarcerated. These instructions should have included information to watch for in Mr. Newman related to his acute alcohol intoxication, head and facial trauma, and high potential for alcohol withdrawal…" [**Ex. 10**, p. 6]

Medical Screening Exams are part of a hospital's obligation under EMTALA and Plaintiffs' negligence claim asserted against the Hospital.[3] 42 CFR 489.24 (a)(1)(i); 42 USC §1395dd. Especially instructive here is the Hospital's own policy on EMTALA and Medical Screening Exams, which states that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ **Ex. 11**, EMTALA Policy, p. 4. Medical screening

---

[3] SMH has stamped its EMTALA policy "confidential." Pursuant to the Protective Order, Plaintiffs have redacted the portions of this motion discussing the specific contents of the policy, and filed a restricted, unredacted version as well.

exams frequently involve a doctor exam, and Plaintiffs endorsed Dr. Becker as an Emergency Room doctor expert related to violation of the standard of care by Dr. Davidson. To the extent any opinions involve whether Dr. Davidson's exam met the standard of care for an ER doctor, Mr. Felty relies on Dr. Becker.[4] **Ex. 12**, Felty Addendum; *see, e.g.*, *Willis v. Okla. Cty. Det. Ctr.*, No. CIV-18-323-D, 2022 U.S. Dist. LEXIS 69571, at *12 n.5 (W.D. Okla. Jan. 5, 2022).

Dr. Davidson performed the medical portion of the exam, but the hospital has a duty to set procedures and protocols to ensure an adequate screening exam is conducted – thus the hospital's policy on medical screening exams requires the following:



**Ex. 11**, p. 5, 6. Emphases supplied.

This policy clearly demonstrates that the Hospital itself has duties of administration, monitoring and management of medical screening exams. As Mr. Felty explains:

> Hospital Administrators, like me, have the primary responsibility to ensure that the organization is fully compliant with the EMTALA regulations, which has led me to have to educate, re-educate, and hold accountable many different disciplines of care givers, including Emergency Physicians, over my many years of

---

[4] Dr. Becker, who is Board Certified in Emergency Medicine, has opined that "Dr. Davidson's inadequate and unacceptably cursory exam of Mr. Newman" is most likely part of a "dangerous and degrading pattern of shoddy medical practice and willful neglected directed at Mr. Newman and other prisoner patients." Clearing those under arrest in such a manner, "especially in regards to alcohol intoxication and withdrawal" to go to a facility with such limited medical personnel, "creates an obvious and unreasonable risk of serious harm and death." **Ex. 13**, Becker Report, p. 7, Mr. Felty relies on Dr. Becker's opinion regarding Dr. Davison's negligence, which is the type of information and data experts Mr. Felty's field would reasonably rely on in forming an opinion.

administrative experience.

**Ex. 14**, Felty Rebuttal, p. 2.

The Hospital may not control doctor discretion, but it may tell doctors that they must perform a medical screening exam, ███████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████ The Hospital is sued for, and Craig Felty opines on the Hospital's failure to implement and enforce systems to fulfill its own duty to provide an adequate medical screening exam.

While Dr. Davidson criticizes Mr. Felty for not having the correct expertise to opine on the medical screening exam, when ███████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████ **Ex. 11**, p. 11. Craig Felty is an experienced hospital administrator, chief nursing officer and ER Nurse. His opinions expressed here are about hospital and the nursing negligence in providing an adequate screening exam. He is perfectly qualified to give those opinions and they do not need to be struck.

WHEREFORE, Plaintiffs request that this motion be denied.

Respectfully submitted this 26th day of September, 2023.

> */s/ Anna Holland Edwards*
> Anna Holland Edwards
> Erica Grossman
> Rachel Kennedy
> HOLLAND, HOLLAND EDWARDS & GROSSMAN, LLC
> 1437 High Street
> Denver, CO  80218
> *Attorneys for Plaintiffs*

14

# CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of September, 2023, the foregoing was filed using the CM/ECF system. I hereby certify I will send electronic notification of said filing to the following recipients.

Ann Smith
Gordan Vaughan
VAUGHAN & DEMURO
asmith@vaughandemuro.com
gvaughan@vaughandemuro.com
*Attorneys for County Related Defendants*

Amy Cook Olson
Angela Lund Klein
KLEIN COOK OLSON, LLC
acookolson@kco-law.com
aklein@kco-law.com
*Attorneys for Southwest Health Defendant*

Mark B. Collier
Matthew W. George
MESSNER REEVES, LLP
mcollier@messner.com
mgeorge@messner.com
*Attorney for Defendant Davidson*

                                            */s/ Brooke Thiele-LaForest*
                                            Brooke Thiele-LaForest, Paralegal