IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01763-PAB-KAS

ESTATE OF KELROY NEWMAN, by and through putative personal representative, Bryanne Watts-Lucero, and
J.W., a minor child, by and through next friend and mother, Elisa Wilson,

      Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MONTEZUMA, COLORADO,
SHERIFF STEVEN NOWLIN, individually and in his official capacity,
ZACHARY SUMMERS, individually,
SOUTHWEST HEALTH SYSTEM, INC, d/b/a Southwest Memorial Hospital, and
RANDY GENE DAVIDSON, MD, individually,

      Defendants.

_____

# ORDER

_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

    This matter is before the Court on Plaintiffs' **Motion for Leave to Amend Complaint** [#66] (the "Motion"). Responses in opposition to the Motion were filed by the County Defendants [#79],[1] Randy Gene Davidson, M.D. ("Dr. Davidson") [#83], and Southwest Health System, Inc. d/b/a Southwest Memorial Hospital ("SMH") [#90]. Plaintiffs filed Replies [#88, #89, #94] to each of the Responses. The Court has reviewed the briefs, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#66] is **GRANTED**.

_____

[1]   The County Defendants are the Board of County Commissioners of Montezuma County ("BOCC") and Sheriff Nowlin. *First Am. Compl.* [#7] ¶ 19.

## I.  Background

This action arises from the death of Kelroy Newman in the Montezuma County Detention Center ("MCDC") in 2021. As to the facts which give rise to the action, Mr. Newman was arrested by the Cortez Police Department on Saturday, July 17, 2021, at approximately 10:00 a.m., and was taken to MCDC. *Motion* [#66] at 1-2; *First Am. Compl.* [#7] ¶¶ 2, 28. Plaintiffs assert that MCDC found Mr. Newman to have a dangerously high and potentially fatal blood-alcohol concentration ("BAC") of 0.421% and visible injuries to his head and face. *Motion* [#66] at 2-3. No medical personnel were on site at MCDC,[2] so the arresting officer transported Mr. Newman to SMH to be "cleared" for formal booking into MCDC. *Id.* at 3. According to Plaintiffs, this was consistent with MCDC's "constitutional obligation to provide medical care to detainees in its custody," as well as its "formal or informal agreement" with SMH "that all MCDC medical clearances outside of the hours when a nurse is present at the jail must be conducted by" SMH "ER doctors and staff." *Id.*

Plaintiffs allege that no meaningful examination or screening of Mr. Newman was conducted at SMH by emergency room ("ER") physician Dr. Davidson, despite the fact he was told that Mr. Newman was intoxicated and was likely told of Mr. Newman's BAC of .421. *Motion* [#66] at 3. Dr. Davidson and SMH staff thus allegedly did not ask Mr. Newman about his drinking habits or previous alcohol withdrawals, did not order any tests or imaging studies, and Mr. Newman was "cleared" and released from the ER in less than half an hour. *Id.* This resulted in Mr. Newman's transfer back to MCDC, even though the

---

[2]   Medical personnel were not on duty weekends or evenings. *First Am. Compl.* [#7] ¶ 46.

"[h]ospital-related Defendants knew . . . that MCDC would not have any medical staff all that weekend to monitor or treat Mr. Newman for intoxication, withdrawal, or detox symptoms related to his extraordinarily high BAC, or his obvious head and facial injuries." *Id.* Once at MCDC, Mr. Newman was kept in a holding cell for more than 24 hours despite his declining medical condition. *Id.* at 3-4.

According to Plaintiffs, "MCDC recklessly had no medical staff on the weekend, no alcohol withdrawal protocols, no deputies properly trained in monitoring detainees experiencing alcohol withdrawal, and no deputies trained in how to properly administer CPR." *Motion* [#66] at 3-4. Despite Mr. Newman's requests to return to the hospital because of persistent vomiting and other symptoms, as well as repeated requests from his cellmate to obtain medical care for him, Plaintiffs allege that Mr. Newman received no treatment or medical assessment. *Id.* at 4. MCDC staff found Mr. Newman unresponsive in his cell, but still alive at approximately 11:43 a.m. on July 18, 2021. *Id.* Deputies tried to revive Mr. Newman but are alleged to have been reckless and negligent in the performance of CPR and in their attempts to resuscitate him. *Id.* Mr. Newman was pronounced dead in his cell at 12:20 p.m. on July 18, 2021. *Id.* Plaintiffs assert that Mr. Newman "died a preventable death from complications of alcohol toxicity and withdrawal at the age of 30." *Id.*

Plaintiffs, the estate of Mr. Newman and his minor child, brought suit against Defendants alleging: (1) a Fourteenth Amendment *Monell*[3] claim against the County Defendants; (2) negligence in operation of a jail resulting in wrongful death claim against

---

[3]  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

the County Defendants; (3) negligence in the operation of a hospital and medical negligence causing wrongful death claim against Defendants SMH and Dr. Davidson; and (4) cruel and unusual punishment and deprivation of due process pursuant to Colo. Rev. Stat. § 13-21-131 against Defendant Deputy Summers, a member of MCDC staff present at the time of the incident. *First Am. Compl.* [#7] ¶¶ 232-278.

## II.   Analysis

Plaintiffs seek leave to amend their Complaint to add three claims—an Emergency Medical Treatment and Labor Act ("EMTALA") claim against SMH, a § 1983 deliberate indifference claim against SMH and the County Defendants, and a § 1983 deliberate indifference claim against Dr. Davidson. *Motion* [#66] at 1-2; *see also proposed Second Am. Compl.* ("SAC") [#67-1].[4] The Motion was filed on April 7, 2023, after the January 31, 2023 deadline to amend pleadings. *Scheduling Order* [#43] at 15. Accordingly, the Motion is untimely except as to the EMTALA claim, for which Plaintiffs received an extension of the amendment deadline to April 8, 2023. *See Order* [#55] at 3.

As to the portion of the Motion [#66] that seeks amendment after the expiration of the deadline, Plaintiffs "must demonstrate (1) good cause for seeking modification [of the amendment deadline] under Fed. R. Civ. P. 16(b)(4); and (2) satisfaction of the Rule 15(a) standard." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (citation omitted); *see also* Fed. R. Civ. P. 16(b)(4) (stating that a party seeking to modify a Scheduling Order must show good cause and obtain the judge's consent). As to the portion of the Motion seeking to add the EMTALA claim, Plaintiffs need only satisfy

---

[4]  The SAC [#66-1] was filed as a restricted document. The redacted, public version of the SAC is filed at Dkt. #67-1.

the Rule 15(a) standard. The Court begins with the Rule 15(a) analysis, which impacts all three claims Plaintiffs seek to add.

## A.      Rule 15(a)

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." The Supreme Court has stated "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In other words, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.* This is consistent with the purpose of Rule 15 which is "to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). Whether to grant or deny leave to amend a complaint is within a court's discretion. *Foman*, 371 U.S. at 182. Refusing leave to amend is generally justified only on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

Defendants argue that the Motion should be denied under Rule 15(a)(2) because the amendment would be futile as to each claim. Additionally, the County Defendants argue that they would be unduly prejudiced by the amendment, and Dr. Davidson and SMH argue that the SAC does not meet the requirements of Fed. R. Civ. P. 8(a)(2).

### 1.    Futility

The Court first addresses the parties' futility arguments because they may be dispositive of whether the Court should permit the amendment. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson Cnty. Sch. Dist. v. Moody's Investor's Servs.*, 175 F.3d 848, 859 (10th Cir. 1999). In making this assessment, the Court must accept as true the allegations in the proposed amended complaint and construe the allegations in the light most favorable to the plaintiffs. *Bennett v. Wells Fargo Home Mortg.*, No. 16-cv-03185-CMA-KLM, 2017 WL 4675524, at *1 (D. Colo. Oct. 18, 2017). Ambiguities must be resolved in favor of the plaintiffs, and the plaintiffs must be given "the benefit of every reasonable inference drawn from the well-pleaded facts and allegations." *Id.* (internal quotation marks and citation omitted). While the Court believes that the issues addressed in the parties' futility analyses would be better addressed through full briefing on dispositive motions, the Court will nonetheless assess futility for purposes of the Motion [#66] because of the extensive briefing on the issue.

### a.    Section 1983 Claim Against the County Defendants

The County Defendants argue that the § 1983 claim in the proposed SAC would be futile because it relies on the non-delegable duty doctrine which has no applicability in this action. *Response* [#79] at 3.

It is well established that the Constitution's Eighth and Fourteenth Amendments guarantee pretrial detainees the right to medical care. *See Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). The government does not relieve itself of this duty by contracting

6

out jail medical care. *See de La Torre v. La Plata County*, 21-cv-01422-CMA-NRN, 2022 WL 1193471, at \*4 (D. Colo. Feb. 11, 2022) (citing *West v. Atkins*, 487 U.S. 42, 56 (1988)). The non-delegable duty doctrine comes into play in this circumstance, and "essentially holds that the government cannot avoid § 1983 liability by contracting out its constitutional duties to a third party." *Estate of Walter by & through Klodnicki v. Corr. Healthcare Cos., Inc.*, 323 F. Supp. 3d 1199, 1215 (D. Colo. 2018). While the Tenth Circuit has not yet adopted the non-delegable duty doctrine, the doctrine has been applied numerous times in this District as well as in other Circuits. *See, e.g.*, *id.* ("The Court is . . . persuaded by the decisions of many other courts that the [non-delegable duty] doctrine is correct."); *de La Torre*, 2022 WL 1193471, at \*4 ("Though the Tenth Circuit has not formally adopted the non-delegable duty doctrine, it is established in the District of Colorado and has been applied many times" and "has been adopted and applied by several other circuit courts.").

The County Defendants argue that the presence of a contract or formal agreement, "[t]ypically . . . between a private company providing health care services and the government entity or . . . between two counties," is a necessary component of the non-delegable duty doctrine. *Response* [#83] at 5. Here, the County Defendants assert that the § 1983 claim is based on a document—a   Memorandum of Understanding ("MOU")—produced by SMH that was signed by a former sheriff in 2010. *Response* [#79] at 5.[5] Aside from the question of whether the MOU was in effect at the time of the at-issue incident, the County Defendants assert the MOU "does not refer to pre-custody screenings or the care of people not yet in the custody of the Montezuma County Sheriff's

---

[5]   The relevant portion of the MOU is included in the restricted SAC [#67-1] at 23.

Office." *Id.* Accordingly, the County Defendants argue that no contract exists with SMH to conduct pre-custody jail screenings and, therefore, there has been no delegation of a duty to provide medical care. *Id.* at 5-6. The County Defendants further assert that "it is difficult to conceive of any such duty arising before an inmate is even in the custody of a governmental entity." *Id.* at 6. Accordingly, the County Defendants argue that the § 1983 claim against them based on the non-delegable duty doctrine is futile. *Id.*

The Court rejects the County Defendants' arguments for purposes of the Motion [#66]. First, while they question whether the MOU was in effect at the time of Mr. Newman's arrest and subsequent medical clearance at SMH, they do not affirmatively assert that it was *not* in place and the SAC [#67-1] avers that the MOU was in effect at the time of the incident. *Id.* ¶¶ 3, 36. As discussed earlier, the Court must accept the Plaintiffs' allegations on this issue as true at this juncture.

The Court also rejects for purposes of the Motion [#66] the County Defendants' argument that there was no delegation of duty because there was no contract with SMH to conduct pre-custody jail screenings, and that such duty does not arise before the inmate is even in custody. While it is disputed whether a contract was actually required, the Court finds that the County Defendants' arguments should be rejected for at least two reasons. First, as to the custody issue, the proposed SAC [#67-1] alleges that Mr. Newman was a pretrial detainee at the time of the incident and was taken to MCDC for booking but, because of his intoxication level, was sent to SMH for a pre-booking medical clearance as required by policy. *Id.* ¶¶ 29, 60. Thus, it could reasonably be construed from these allegations that Mr. Newman was in the County Defendants' custody at the

8

time of the incident.

Second, even if Mr. Newman was not in custody, however, the Court agrees with Plaintiff that the MOU can plausibly be construed to cover the at-issue incident. The MOU explicitly calls for use of SMH's ER for any "medical needs to [sic] serious to wait for clinic care" by the jail nurse. *SAC* [#67-1] ¶ 135. Further, MCDC policy requires intoxicated persons who have been arrested to be cleared prior to booking at the MCDC either by the on-duty jail nurse, or by SMH during evenings or weekends when no jail nurse is on duty. *See id.* ¶ 34. Plaintiffs allege that: (1) "alcohol intoxication is a sufficiently severe medical symptom to warrant the label emergency medical condition[,]" *id.* ¶ 42 (internal quotation marks and citation omitted); (2) "a Blood Alcohol Level of 0.4–0.5% . . .is potentially fatal and associated with a comatose state[;]" and (3) "a blood alcohol concentration of .0421 is an emergency medical condition that can result in death." *Id.* ¶¶ 42-44. These allegations plausibly infer that Mr. Newman had a medical need too serious to wait for a jail nurse to return to duty, and that the MOU required Mr. Newman's medical clearance at SMH's ER. For these reasons, the Court rejects the County Defendants' futility argument.

### b.    Section 1983 Claim Against Dr. Davidson

Dr. Davidson notes that Plaintiffs seek to hold him liable under 42 U.S.C. § 1983 on a theory that he was acting under color of state law when he performed the medical screening and displayed deliberate indifference to Mr. Newman's rights under the Fourteenth Amendment. *Response* [#83] at 6. According to Dr. Davidson, this claim is subject to dismissal, and is thus futile, for at least two reasons: (1) he was not acting

under color of state law when he performed the screening; and (2) Plaintiffs' allegations are insufficient to meet the deliberate indifference standard. *Id.*

### i.      Color of Law

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). "To constitute state action, the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible, and the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* (internal quotation marks and citation omitted).

In *West v. Atkins,* the Supreme Court held that a private physician employed by the state under a contractual arrangement to provide medical services through "clinics" each week at the prison acted under color of law when treating the petitioner's injuries. *Id.* at 55. The Court further held that the respondent physician was a state actor because, "[i]n the State's employ, respondent worked as a physician at the prison hospital fully vested with state authority to fulfill essential aspects of the duty placed on the State by the Eighth Amendment and state law, to provide essential medical care to those the State had incarcerated." *Id.* at 56-57. The fact that the state employed the physician through a contract "that did not generate the same benefits or obligations applicable to other 'state employees,'" or that the physician did not work exclusively for the prison, did not alter the analysis. *Id.* at 55-56. The Court made clear that "[i]t is the physician's function while

working for the State, not the amount of time he spends in performance of those duties or the fact that he may be employed by others to perform similar duties, that determines whether he is acting under color of state law." *Id.* at 56.

Similarly, the relationship between a physician and the state is not the sole determining factor in deciding whether the physician is a state actor. *See Anglin v. City of Aspen, Colorado*, 552 F. Supp. 2d 1229, 1243 (D. Colo. 2008). Instead, in deciding whether the physician is a state actor, the court must employ a "multi-factored, flexible analysis, tailored to the specific facts of each case." *Id.* This Court finds *Anglin v. City of Aspen, Colorado* instructive. There, the court found for purposes of summary judgment that a private physician who subcontracted with a medical group, AEM, to provide emergency room services, was a state actor when he telephonically ordered a detainee's sedation. *Id.* at 1244-45. AEM had a contract with the hospital to provide services, but the physician did not. *Id.* at 1245. In finding that the physician was a state actor, the court found that a contractual relationship was unnecessary. *Id.* at 1242. The court also found that in authorizing the physician to provide healthcare to the detainee, "the State delegated its constitutional duty to provide adequate medical care to those in custody[,]" and the detainee had no choice but to accept the treatment. *Id.* at 1244.

Here, the facts of the proposed SAC [#67-1], construed in the light most favorable to Plaintiffs, plausibly support a finding that Dr. Davidson was acting as a state actor when he medically cleared Mr. Newman, i.e., that under the narrow facts of this case, Dr. Davidson's actions were "fairly attributable to the state" and, thus, under color of state law. *West*, 487 U.S. at 49; *Anglin*, 552 F. Supp. 2d at 1246. Dr. Davidson performed

medical services for an alleged MCDC pretrial detainee in a situation where MCDC policies required such a screening in the absence of an available MCDC medical provider. Further, while Dr. Davidson did not have a direct contractual relationship to provide services to MCDC's detainees, *see Response* [#83] at 7, *Anglin* made clear that Dr. Davidson's affiliation as an ER physician with SMH, which had such a contractual relationship, was sufficient. *See* 552 F. Supp. 2d at 1244-45 ("Dr. Martinez was not simply a private physician working for a private hospital[;] [a]lthough he did not contract directly with the State to provide medical services, he did contract *indirectly* with the State— through AEM—to provide such services." (emphasis in original)). As such, the Court finds that Dr. Davidson knew or should have known of SMH's role, and by extension, the ER physicians' role, in providing medical clearances and other emergency services to MCDC detainees in the evenings and on weekends.

In performing such services, Dr. Davidson was "fully vested with state authority to fulfill essential aspects of the duty, placed on the State by the Eighth Amendment and state law, to provide essential medical care to [detainees]." *West*, 487 U.S. at 57.[6] The Court further finds, as in *Anglin*, that a contrary conclusion at this juncture "would effectively serve to insulate the State from any liability for constitutional harms flowing from" these situations. 552 F. Supp. 2d at 1246. Accordingly, the Court rejects the futility argument on the color of law issue.[7]

---

[6] The fact Dr. Davidson had to provide services for anyone who came into the ER, *see Response* [#83] at 7, does not change that analysis.

[7] In so doing, the Court finds that the unpublished decision, *Wilkins v. Chrisman*, 665 F. App'x 681 (10th Cir. 2016), relied on by Dr. Davidson, *see Response* [#83] at 7, is distinguishable. There, an inmate was in an accident while in a transport van and was taken to the ER. *Id.* at 682.

### ii.        Deliberate Indifference

Dr. Davidson also argues that Plaintiffs' proposed § 1983 claim is merely a negligence claim premised on an alleged failure to perform a complete evaluation in the emergency department and that the allegations do not support a claim for deliberate indifference under the Fourteenth Amendment. *Response* [#83] at 2, 9. In support, Dr. Davidson notes Plaintiffs' acknowledgment that Mr. Newman was coherent, conversational, and alert throughout his encounter at the ER and that "Mr. Newman did not demonstrate signs of acute alcohol withdrawal until after he arrived at MCDC[.]" *Id.* at 10. Dr. Davidson also notes that Plaintiffs "do not contend that [he] was ever made aware of [Mr. Newman's acute alcohol withdrawal symptoms]." *Id.* Finally, Dr. Davidson emphasizes that his only role was to determine if Mr. Newman could be brought to the jail; "he relied on MCDC staff to bring [Mr. Newman] back if there was a change in status." *Id.*

In analyzing pretrial detainees' deliberate indifference claims under the Fourteenth Amendment, the Tenth Circuit applies the same test as that for convicted prisoners' Eighth Amendment claims. *See Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018). Accordingly, Plaintiffs must plausibly allege deliberate indifference to Mr. Newman's medical needs, which standard has both an objective and a subjective component. *Id.*

---

The *Wilkins* court affirmed the district court's determination that the ER physician, who worked at a private medical center and treated the plaintiff, had insufficient contacts with the state to be a state actor. *Id.* at 684. The court so ruled in the absence of facts showing any connection between the physician or the medical center and the state regarding the inmate's treatment, i.e., the plaintiff did not show that the physician's conduct was in some way "chargeable to the State." *Id.* (internal quotation marks and citation omitted). That is far different than the instant case as explained above.

The objective component "turns on the seriousness of the [medical] need." *Id.* A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quotation omitted). "The subjective component is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'" *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).

Here, the Court finds for purposes of the Motion [#66] that Plaintiffs have plausibly alleged a deliberate indifference claim against Dr. Davidson. Construing the allegations in the light most favorable to Plaintiffs, the proposed SAC [#67-1] avers that Mr. Newman presented to Dr. Davidson with "obvious signs and symptoms of acute intoxication" and "obvious facial injuries." *Id.* ¶¶ 41, 51. Further, the SAC alleges that Dr. Davidson was "told about Mr. Newman's critically high BAC of .421[.]" *Id.* ¶ 41.[8] The SAC further alleges that Dr. Davidson knew that a BAC of .421 "is an emergency medical condition that can result in death." *Id.* ¶ 44. The Court finds Plaintiffs have plausibly alleged that Mr. Newman presented to Dr. Davidson with a sufficiently serious medical need to meet the objective prong.

As to the subjective prong, that Dr. Davidson knew of and disregarded an excessive risk to inmate health or safety, the SAC [#67-1] alleges that Dr. Davidson

---

[8]  While the SAC also avers that the officer who transported Mr. Newman to SMH could not specifically remember whether he told Dr. Davidson about Mr. Newman's BAC, the officer testified that he regularly informed the hospital of the BAC level when he presented intoxicated persons to the ER. *Id.* ¶ 37. Drawing all inferences in Plaintiffs' favor, the Court finds for purposes of the SAC that Dr. Davidson was aware of Mr. Newman's BAC level.

"recklessly ignored Mr. Newman's very high BAC and facial injuries, and completely failed to screen him," ask any questions "about the quantity and duration of alcohol abuse" or prior history of alcohol withdrawal, or treat him in any way. *Id.* ¶¶ 47-48; *see also id.* ¶¶ 49-54. The SAC further alleges that "any doctor" would have recognized the "obvious indicator[s]" that Mr. Newman was likely a chronic drinker, as demonstrated by his conscious state and communication ability despite his BAC level. *Id.* ¶ 45. And the SAC alleges that any doctor knows that abrupt cessation of alcohol heightens a chronic drinker's risk of seizures, delirium tremors, and other severe, life-threatening conditions. *Id.* ¶¶ 45-46. According to the SAC, despite this knowledge, Dr. Davidson failed to provide MCDC any discharge instructions to ensure that Mr. Newman was properly monitored and treated for alcohol withdrawal. *Id.* ¶ 55. The Court finds that the SAC plausibly alleges that Dr. Davidson knew of and disregarded an excessive risk to Mr. Newman's health or safety. Accordingly, the Court also finds that the subjective prong is met for purposes of the Motion [#66].

Based on the foregoing, the Court denies the futility argument as to deliberate indifference.

### c.    Section 1983 and EMTALA Claims Against SMH

### i.    Deliberate Indifference Under § 1983

In support of futility, SMH first argues that the proposed SAC [#67-1] does not plausibly allege its deliberate indifference. *Response* [#90] at 5. SMH also argues that that while physicians may be employed by hospitals, this legal relationship does not expose hospitals or other professional corporations to vicarious liability for their

physicians' alleged negligent acts. *Id.* at 6-7. Further, SMH argues that it cannot be held liable on a deliberate indifference claim for its employees' actions, and any claims against it based on "deliberately indifferent policies" fail in the absence of identified policies.[9] *Id.* at 8-9. Finally, SMH asserts that the MOU with MCDC does not render it a state actor for purposes of § 1983. *Id.* at 8.[10]

The Court rejects these arguments as to futility. First, Plaintiffs are not seeking to hold SMH vicariously liable for Dr. Davidson's conduct. Instead, Plaintiffs assert § 1983 liability under *Monell* against SMH "for maintaining deliberately indifferent policies, including customs and training, for provision of medical clearance exams to people being incarcerated." SAC [#67-1] ¶ 319. To establish an entity's liability under § 1983, a plaintiff must plausibly allege that "(1) the entity executed a policy or custom (2) that caused the plaintiff to suffer deprivation of constitutional or other federal rights." *Moss v. Kopp*, 559 F.3d 1155, 1168 (10th Cir. 2009); *see also Villalpando ex rel. Villalpando v. Denver Health & Hosp. Auth.*, 65 F. App'x 683, 687 (10th Cir. 2003) (holding that an entity like the defendant hospital "may be responsible for the unconstitutional act of an employee [under § 1983] if the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution") (internal quotation marks and citation omitted); *Raub v. Corr. Med. Servs., Inc.*, No. 06-13942, 2008 WL 160611, at *2 (E.D. Mich. Jan. 15, 2008) (noting, "a private corporation who has allegedly contracted with the

---

[9] SMH further argues that Plaintiffs will not be able to "cite to any such policy, training, or protocols" because "hospitals in Colorado cannot direct medical care." *Response* [#90] at 9.

[10] SMH's arguments as to the MOU's inapplicability are discussed in the next section.

state to perform the traditional state function of providing medical services to inmates[ ] can be held liable under § 1983 based on *Monell*" where a constitutional deprivation "occurs as a result of an entity's policy, custom, or practice").

Here, while SMH asserts that Plaintiffs fail to cite to any policies, the Court disagrees. The SAC [#67-1] alleges that SMH:

> has a widespread pattern and practice of conducting deliberately indifferent jail medical screenings for [MCDC] detainees . . . where SMH ER doctors and other staff provide the most cursory of "clearances," recklessly fail to obtain information about . . . detainees['] medical history, ignore obvious symptoms of serious medical emergencies, fail to order necessary tests, and fail to provide an adequate workup of a detainee's medical conditions before they send detainees to a jail the SMH Defendants know does not have any medical staff at all on nights and weekends.

*Id.* ¶ 323. Plaintiffs support this averment with detailed allegations of the lack of testing and failure to adequately evaluate Mr. Newman and other unidentified detainees at MCDC when they were sent to SMH for medical clearances. *See, e.g.*, *id.* ¶¶ 40-59, 159-61. Plaintiffs further assert that despite repeated notice to SMH of its constitutionally deficient policies and procedures "causing multiple deaths . . . , [it has] not changed [its] practices or established any mechanism to conduct medically appropriate screenings and discharges of inmates in [its] care." *See Reply* [#94] at 8.

Because Plaintiffs must be given "the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in [the] complaint[,]" *Bennett*, 2017 WL 4675524, at *1,[11] the Court finds for purposes of the Motion [#66] that the Plaintiff Estate has sufficiently alleged that policies caused a deprivation of Mr. Newman's constitutional rights and that SMH received notice that its policies would result in constitutional

---

[11] Internal quotation marks omitted.

violations. *See Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) ("The deliberate indifference standard may be satisfied when the [entity] has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm . . . . In most instances, notice can be established by proving the existence of a pattern of tortious conduct."). The Court also finds, for reasons discussed in Section II.A.1.a., above, that Plaintiffs have plausibly alleged that the County Defendants contractually delegated to SMH the duty to conduct detainee medical clearances and to provide urgent medical treatment in the absence of an on-duty jail nurse. Therefore, the Court rejects SMH's futility argument as to the deliberate indifference claim. *See Raub*, 2008 WL 160611 at *2.

### ii.    The EMTALA Claim

Finally, SMH argues that Plaintiffs do not assert a viable claim for a violation of EMTALA, 42 U.S.C. § 1395dd. *Response* [#90] at 9.

EMTALA requires hospitals with emergency departments to "provide for an appropriate medical screening examination within the capability of the hospital's emergency department to determine whether or not an emergency medical condition . . . exists" if "any individual . . . comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition[.]" 42 U.S.C. § 1395dd(a). Under EMTALA, an "emergency medical condition" includes the manifestation of "acute symptoms of sufficient severity . . such that the absence of immediate medical attention could reasonably be expected to result in . . . serious

jeopardy" to the individual's health, "serious impairment to bodily functions," or "serious dysfunction of any bodily organ or part[.]" 42 U.S.C. § 1395dd(e)(1)(A). Additionally, if "the hospital determines that the individual has an emergency medical condition, the hospital must provide either—(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or (B) for transfer of the individual to another medical facility[.]" 42 U.S.C. § 1395dd(b)(1).

Thus, "[u]nder EMTALA a participating hospital has two primary obligations"—to "conduct an initial medical examination to determine whether the patient is suffering from an emergency medical condition[,]" and, if such a condition is found, "to stabilize the patient before transporting him or her elsewhere." *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 796 (10th Cir. 2001). Any person who suffers personal harm as a direct result of a participating hospital's violation may bring a cause of action. 42 U.S.C. § 1395dd(d)(2).

SMH argues that Plaintiffs' EMTALA claim is futile and would be subject to dismissal because Plaintiffs (1) fail to allege that Mr. Newman arrived at the facility seeking treatment, and (2) admit that a medical screening examination was performed. *Response* [#90] at 10. Further, SMH argues that it is undisputed that Dr. Davidson did not diagnose an emergency medical condition. Absent diagnosis of such a condition, SMH asserts that the stabilization requisite of EMTALA is not invoked. *Id.* The Court rejects both arguments.

As to SMH's assertion that Mr. Newman did not seek treatment when he arrived at SMH, § 1395dd(a) of EMTALA states that a medical screening must occur if a request

is made "on the individual's behalf" for examination or treatment. Here, the proposed SAC [#67-1] avers that the arresting officer took Mr. Newman to SMH for a medical clearance based on Mr. Newman's intoxication. *Id.* ¶ 37. From this, one can reasonably infer that the officer requested an examination on Mr. Newman's behalf. While SMH argues that medical clearances do not invoke EMTALA, *see Response* [#90] at 10, it cites no authority for this argument. Further, in order to conduct a medical clearance, it appears obvious to the Court that an examination of the presenting patient must occur in regard to the medical condition, i.e., intoxication. Accordingly, the Court finds for purposes of the Motion [#66] that EMTALA was invoked when Mr. Newman was taken to SMH.

As to the argument that Plaintiffs are seeking to hold Dr. Davidson liable on a negligence theory for not diagnosing an emergency medical condition, *see Response* [#90] at 11, the Court agrees that EMTALA does not create a cause of action for malpractice or negligence. *Repp v. Anadarko Mun. Hosp.*, 43 F.3d 519, 522 (10th Cir. 1994). Moreover, a hospital does not necessarily violate EMTALA if the physician treating the patient fails to detect or misdiagnoses an emergency condition. *See Marshall v. East Carroll Parish Hosp. Serv. Dist.,* 134 F.3d 319, 322-323 (5th Cir. 1998) (citing cases). Nonetheless, EMTALA requires that an "*appropriate* medical screening examination" be conducted, 42 U.S.C. § 1395dd(a) (emphasis added), meaning that Dr. Davidson cannot defeat an EMTALA claim by simply asserting that he conducted a medical screening and did not diagnose an emergency medical condition. *See Response* [#90] at 11-13. In other words, even if an emergency medical condition is not found in a medical screening, a hospital can violate § 1395dd "by failing to detect the nature of the emergency condition

through inadequate screening procedures." *Collins v. DePaul Hosp.*, 963 F.2d 303, 308 (10th Cir. 1992) (citation and internal quotation marks omitted). This is "essentially a fact-based reasonableness inquiry." *Id.* (citation and internal quotation marks omitted).

Thus, the Court turns to whether Plaintiffs have plausibly alleged that Mr. Newman's medical screening was inappropriate. Courts have held that "[a] screening that is 'so cursory' that it is 'not designed to identify acute and severe symptoms that alert the physician of the need for immediate medical attention to prevent serious bodily injury' violates EMTALA." *Guzman v. Mem'l Hermann Hosp. Sys.*, 637 F. Supp. 2d 464, 483 (S.D. Tex. 2009) (quoting *Bryant v. Adventist Health System/West*, 289 F.3d 1162, 1166 n.3 (9th Cir. 2002)). The Court finds that the proposed SAC [#67-1] alleges numerous facts to support Plaintiffs' contention that the medical screening was inappropriate. *See id.* ¶ 339 (alleging that Dr. Davidson "conducted a recklessly inadequate jail medical 'clearance' process on Mr. Newman[;] [i]n so doing, Dr. Davidson recklessly ignored Mr. Newman's very high BAC, tachycardic resting heart rate, and obvious facial injuries; he failed to order any blood-alcohol or other testing for Mr. Newman; he failed to order IV fluids to correct electrolyte imbalances; and he spent only about ten minutes with Mr. Newman before 'clearing' him to return to MCDC on a Saturday night [when no medical staff was on duty] without detox orders or alcohol monitoring"); *see also id.* ¶¶ 47-55.

Finally, to the extent SMH argues that Plaintiffs did not allege that an EMTALA violation caused Mr. Newman's death, *see Response* [#90] at 13-14, the Court disagrees. *See* SAC [#67-1] ¶ 324 ("The acts and omissions of the SMH Defendants were the moving force in and a legal and proximate cause of Mr. Newman's death."), ¶ 326 (alleging that

"the deliberately indifferent policies, procedures, and customs" of SMH "were a moving force in Mr. Newman's death and associated pain and trauma").

Based on the foregoing, the Court rejects SMH's arguments that the new claims asserted against it would be futile.

### 2.    Undue Prejudice

The County Defendants argue that they would be unduly prejudiced by the amendment because discovery is well underway, and the parties have made various "strategic decisions" based on the claims as presented in the First Amended Complaint [#7]. *Response* [#79] at 6. They further argue that amendment of the Complaint would require additional discovery and, potentially, additional briefing. *Id.*

The Court acknowledges that Defendants will incur prejudice if the amendment is allowed, because the discovery cutoff has now expired, *see Minute Order* [#107], and Dr. Davidson has filed a Motion for Summary Judgment [#104] that is fully briefed. Nonetheless, the Court does not find *undue* prejudice. The amendment adding additional claims concerning the care Mr. Newman received preceding his death arises from the same subject matter and factual issues in the operative First Amended Complaint [#7]. Further, the amendment is based on the disclosure of the MOU and discovery revealing the relationship between SMH and MCDC regarding MCDC detainees' serious medical needs. This relationship was known to Defendants from the outset of this case; thus, there should be no surprise. Moreover, trial has not yet been set, and the Final Pretrial Conference in this case is not set until February 9, 2024. *Courtroom Minutes* [#42]. To the extent that additional discovery or briefing is needed, the parties may file a motion to

reopen discovery or, as to Dr. Davidson, to submit additional summary judgment briefing regarding the new claim against him. This will alleviate any prejudice to Defendants in terms of preparing their defense to the new claims. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006) (noting that "[c]ourts typically find prejudice only when the amendment unfairly affects the defendants[']" ability to prepare their defense).

### 3.    Rule 8(a)

Finally, Dr. Davidson argues that the SAC [#67-1] does not meet the requirements of Fed. R. Civ. P. 8(a), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Response* [#83] at 11. In support, Dr. Davidson argues that the proposed SAC [#67-1] is 62 pages long with 252 paragraphs in the Statement of Facts, contains "inflammatory and unsubstantiated" allegations, and "does not set forth a short and plain statement of the facts giving rise to" liability. *Response* [#83] at 12. Further, Dr. Davidson asserts that Defendants will be prejudiced if forced to respond to every allegation in the SAC consistent with the requirements of Rule 8(b), which requires the responding party to differentiate between aspects of an allegation that are admitted versus denied. *Id.* SMH adopts Dr. Davidson's arguments on this issue. *Response* [#90] at 14. The Court rejects these arguments for two reasons.

First, Rule 8(a) serves "to give opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint, and to apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant has a legal right to relief." *Monument Builders of Greater Kansas City, Inc. v. Am. Cemetery Ass'n*, 891 F.2d 1473, 1481 (10th Cir. 1989) (citation and internal quotation

marks omitted). Dr. Davidson and SMH do not dispute that the SAC gives them fair notice of the claims asserted against them.

Second, while the SAC is lengthy and fact-intensive, the Court finds for purposes of the Motion [#66] that it does not violate Rule 8. This is a complex case involving multiple Defendants, including individual and corporate health care professionals and institutions, as well as county-level governmental Defendants. It also involves multiple claims, including professional negligence, deliberate indifference under § 1983 against Dr. Davidson, *Monell* claims against SMH and the County, Colorado state statutory and constitutional claims, and a federal statutory claim under EMTALA. The Court agrees with Plaintiffs that the length and substance of the proposed SAC [#67-1] "is commensurate with the factual, medical, and legal complexity" of the case, and is within the bounds of modern pleading practice. *See Reply* [#89] at 10; *see also Monument Builders*, 891 F.2d at 1480 ("[W]hile the pleading standard does not vary, what constitutes adequate notice to enable a defendant to formulate a responsive pleading does change from case to case[;] [t]o provide adequate notice, a complaint in a complex, multi-party suit may require more information than a simple, single party case." (internal quotation marks and citation omitted)). Accordingly, the Court finds that the amendment does not violate Rule 8.

### 4.    Whether the Amendment is in the Interest of Justice

Finally, Plaintiffs have demonstrated that an amendment is in the interest of justice pursuant to Rule 15(a)(2). The Court finds that it is reasonable to allow Plaintiffs to amend to add new claims for which the factual basis was recently discovered, as discussed in

more detail in Section III.B., below. Therefore, the Court finds that the amendment should
be permitted under Rule 15(a).

## B.      Good Cause Under Rule 16(b)(4)

Finally, the Court must consider whether good cause exists to modify the
Scheduling Order's amendment deadline and permit amendment of the complaint to add
the § 1983 deliberate indifference claims against SMH and Dr. Davidson.[12] Rule 16(b)'s
good cause standard "does not focus on the bad faith of the movant, or the prejudice to
the opposing party[;] [r]ather, it focuses on the diligence of the party seeking leave to
modify the scheduling order to permit the proposed amendment." *Colo. Visionary Acad.
v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000) (quotation and citation omitted).
Thus, the movant must show "'the scheduling deadlines cannot be met despite [the
movant's] diligent efforts.'" *Gorsuch*, 771 F.3d at 1240 (quoting *Pumpco, Inc. v. Schenker
Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)). To prove diligence, the movant must
provide an adequate explanation for any delay. *Minter*, 451 F.3d at 1205 n.4. For
example, the good cause requirement may be satisfied if a plaintiff learns new information
through discovery. *Gorsuch*, 771 F.3d at 1240; *see also Pumpco*, 204 F.R.D. at 668-669
("The fact that a party first learns, through discovery or disclosures, information necessary
for the assertion of a claim after the deadline to amend established in the scheduling
order has expired constitutes good cause to extend that deadline.").

---

[12]   The good cause analysis under Rule 16(b)(4) is not applicable to the EMTALA claim because
Plaintiffs previously received an extension of the amendment deadline for that claim. *See Order*
[#55] at 3.

Dr. Davidson and SMH assert that the SAC contains no allegations against them about which Plaintiffs were unaware at the lawsuit's inception. *See Response* [#83] at 2-3; *Response* [#90] at 14.

In response, Plaintiffs argue that they "have been diligent in attempting to meet the court's deadlines, but simply did not have the Memorandum of Understanding between the County and [SMH], or deposition testimony, until well after the January 31st amendment deadline." *Reply* [#89] at 6. In support, Plaintiffs note that the MOU was not disclosed until February 27, 2023, and that various deputies, "who testified about their regular reliance on SMH for MCDC medical clearances for dangerously intoxicated detainees like Mr. Newman [ ] were not deposed until mid-February." *Id.* Additionally, Plaintiffs note that a mid-February deposition of Virginia Hernandez, MCDC's only nurse, revealed that "every jail medical clearance" for a detainee with BAC levels at or greater than .200% had to be performed at SMH because Nurse Hernandez was not qualified to perform them. *Id.*

The Court finds that the information revealed in discovery, including the MOU, plausibly supports adding § 1983 deliberate indifference claims against Dr. Davidson and SMH. To reiterate, "the State cannot, by choosing to delegate its constitutional duties to the professional judgment of others, thereby avoid all liability flowing from the attempted fulfillment of those duties under Section 1983." *Anglin*, 552 F. Supp. 2d at 1244. The MOU, along with the depositions taken by Plaintiffs, plausibly support allegations that MCDC delegated parts of its medical treatment of detainees, including medical clearances and other serious medical needs, to SMH and its physicians, at least on

evenings and weekends. Accordingly, the Court finds that Plaintiffs have shown good cause for the late filing of the § 1983 claims. *See Pumpco*, 204 F.R.D. at 668-669.

### III.   Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that Plaintiffs' Motion for Leave to Amend Complaint [#66] is **GRANTED**.

IT IS FURTHER **ORDERED** that by **November 17, 2023**, Plaintiffs shall file their redacted Second Amended Complaint on the record, deleting Defendant Andrew Daulton from the caption given that he was dismissed. *See Stipulation* [#96]; *Minute Order* [#142].

IT IS FURTHER **ORDERED** that by **November 17, 2023**, Plaintiff shall also file the unredacted Second Amended Complaint under restriction on the record, which shall be accompanied by a Motion to Restrict indicating why restriction of the unredacted Second Amend Complaint is necessary, as required by D.C.COLO.LCivR 7.2(c).

Dated:   November 13, 2023

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge