IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01763-PAB-KAS

ESTATE OF KELROY NEWMAN, by and through putative personal representative,
Bryanne Watts-Lucero, and
J.W., a minor child, by and through next friend and mother, Elisa Wilson,

      Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MONTEZUMA,
COLORADO,
SHERIFF STEVEN NOWLIN, individually and in his official capacity,
ZACHARY SUMMERS, individually,
SOUTHWEST HEALTH SYSTEM, INC, d/b/a Southwest Memorial Hospital, and
RANDY GENE DAVIDSON, MD, individually,

      Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

      This matter is before the Court on Plaintiffs' **Motion for Leave to Amend Complaint to Add Punitive Damages Remedy Under State Law Negligence Claim** [#112] (the "Motion"). Southwest Health System, Inc. d/b/a Southwest Memorial Hospital ("SMH") opposes the Motion [#128]. Plaintiffs filed a Reply [#134].[1] SMH sought leave to file a sur-reply brief, which the Court granted [#138, #143, #144]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons set forth below, the Motion [#112] is **GRANTED**.

_____

[1] A redacted, publicly accessible version of Plaintiffs' Reply Brief is filed at Dkt. # 133; an unredacted version is filed under Level 1 restriction, pursuant to D.C.COLO.LCivR 7.2, at Dkt. # 134.

## I. Background

This action arises from the death of Kelroy Newman in the Montezuma County Detention Center ("MCDC") in 2021. As to the facts which give rise to the action, Mr. Newman was arrested by the Cortez Police Department on Saturday, July 17, 2021, at approximately 10:00 a.m., and was taken to MCDC. *Motion* [#112] at 12; *Second Am. Compl.* [#148] ¶¶ 2, 28.[2] Plaintiffs assert that MCDC found Mr. Newman to have a dangerously high and potentially fatal blood-alcohol concentration ("BAC") of 0.421% and visible injuries to his head and face. *Motion* [#112] at 12. In 2021, MCDC did not employ healthcare staff on nights or weekends and there was no provider on call. *Id.* at 4. Medical clearances, among other things, were outsourced to SMH. *Id.* at 4-5. The arresting officer transported Mr. Newman to SMH to be "cleared" for formal booking into MCDC. *Id.* at 6.

Plaintiffs assert that during Newman's clearance examination SMH staff did not ask about Newman's drinking habits or withdrawal history and that the medical staff did not order any tests related to the condition that triggered the transport. *Id.* at 13. Newman was cleared for incarceration after approximately 10 minutes with Nurse Jennifer Gaddis and Dr. Randy Davidson. *Id.* Plaintiffs allege that Newman was discharged to medically untrained deputies without any guidance regarding Newman's head injury, alcohol intoxication, and withdrawal. *Id.* Plaintiffs argue that Newman was cleared for incarceration with no specific instructions for his monitoring. *Id.* Once at MCDC, Plaintiffs

---

[2]   A redacted, publicly accessible version of the Second Am. Compl. is filed at Dkt. # 148; an unredacted version is filed under Level 1 restriction, pursuant to D.C.COLO.LCivR 7.2, at Dkt. # 149.

assert Mr. Newman's medical condition declined and he died related to complications from alcohol withdrawal. *Id.* at 5, 14.

Plaintiffs, the estate of Mr. Newman and his minor child, assert the following claims: (1) a Fourteenth Amendment *Monell*[3] claim against the County Defendants[4]; (2) negligence in operation of a jail resulting in wrongful death claim against the County Defendants; (3) cruel and unusual punishment and deprivation of due process pursuant to Colo. Rev. Stat. § 13-21-131 against Defendant Deputy Zachary Summers, a member of MCDC staff present at the time of the incident; (4) a Fourteenth Amendment deliberate indifference claim against Defendant SMH and the County Defendants; (5) a Fourteenth Amendment deliberate indifference claim against Dr. Davidson; (6) medical negligence in the operation of a hospital and medical negligence causing wrongful death claim against Defendants SMH and Dr. Davidson; and (7) a claim of failure to provide appropriate medical screening and to provide required stabilization care and treatment pursuant to the Emergency Medical Treatment and Active Labor Act ("EMTALA") against Defendant SMH. *Second Am. Compl.* [#148] ¶¶ 277-371.[5] Claims one, three, four, five, and seven are brought by the Plaintiff Estate and claims two and six are brought by the minor child. *Id.*

---

[3] *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[4] The County Defendants are the Board of County Commissioners of Montezuma County ("BOCC") and Sheriff Nowlin. *Second Am. Compl.* [#148] ¶ 19.

[5] At the time this motion was filed, the operative complaint was the First Amended Complaint at Dkt. #7. Pursuant to the Court's November 13, 2023, Order [#145] on an earlier filed motion to amend, the current operative complaint is the Second Amended Complaint at Dkt. #148.

## II.  Analysis

The instant motion to amend seeks to add a remedy of exemplary damages to the state law claim of negligence against Defendant SMH. *Motion* [#112] at 1-2.

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." The Supreme Court has stated "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In other words, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.* This is consistent with the purpose of Rule 15 which is "to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). Whether to grant or deny leave to amend a complaint is within a court's discretion. *Foman*, 371 U.S. at 182. Refusing leave to amend is generally justified only on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

Under Colorado law exemplary damages may be awarded only where there is "fraud, malice, or willful and wanton conduct[.]" Colo. Rev. Stat. § 13-21-102(1)(a). The requested remedy of exemplary (punitive) damages may not be included in the initial complaint. Instead, per Colo. Rev. Stat. § 13–21–102(1.5)(a), such a request "may be allowed by amendment to the pleadings only after . . . the plaintiff establishes prima facie proof of a triable issue [on exemplary damages]." Although the moving party has the

4

burden of establishing a basis for adding the exemplary damages claim, it is a low burden relative to the burden of proof at trial. *Affordify, Inc. v. Medac, Inc.*, No. 19-cv-02082-CMA-NRN, 2020 WL 6290375, at *5 (D. Colo. Oct. 27, 2020) (describing the burden on a motion to amend pursuant to § 13-21-102 as "[an] admittedly low threshold"). At the motion to amend stage, "the Court is only concerned with whether the evidence, when viewed in the light most favorable to [the p]laintiffs, is sufficient to make out a *prima facie* case of willful and wanton behavior for the purpose of allowing [the p]laintiffs to amend their [c]omplaint to include exemplary damages, not whether such evidence is sufficient to defeat a motion for summary judgment or to result in a jury verdict in [the p]laintiffs' favor." *RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, No. 16-cv-1301-PAB-GPG, 2018 WL 3055772, at *4 (D. Colo. May 10, 2018) (citing *Am. Econ. Ins. Co. v. William Schoolcraft, M.D., P.C.,* No. 05–cv–01870–LTB–BNB, 2007 WL 160951, at *2 (D. Colo. Jan. 17, 2007)).

Plaintiffs assert they can make the necessary evidentiary showing that a triable issue exists as to willful and wanton conduct because SMH was conscious of its conduct, the existing conditions, and knew or should have known that injury would result. *Motion* [#112] at 4. Plaintiffs state there were no healthcare staff at MCDC on weekends, that the deputies working in MCDC had no training in monitoring inmates experiencing alcohol withdrawal, and deputies were provided with no tools to evaluate withdrawal. *Id.* at 4-5. Plaintiffs argue that SMH was "fully aware" of the limitations at MCDC and, when SMH agreed to take on the duties of essentially being MCDC's sole provider, that SMH "established a recklessly insufficient system for satisfying those duties." *Id.* at 5. Plaintiffs

5

argue SMH failed to train or inform its staff about their obligation to consider the needs of patients discharged to MCDC, and SMH failed to provide information needed to safely house intoxicated and withdrawing inmates without medical staff. *Id.* Plaintiffs state that SMH was on notice that its practices had caused deaths at MCDC, but that SMH did not change its approach. *Id.* at 5, 11.

In support of these arguments, Plaintiffs point to deposition testimony and discovery responses that demonstrate that SMH failed to educate or train its employees about MCDC's minimal or non-existent capabilities and resources to monitor inmates for withdrawal. *Id.* at 8 (citing Ex. 5 [#112-5] (*Bryce Durbin Depo.* at 35:1-36:10) (regarding MCDC's practice of sending detoxing inmates to SMH's emergency room because of limited means to handle in-house); Ex. 6 [#112-6] (*Daylan Guttridge Depo.* at 12:5-25, 30:3-21) (discussing limited means available at MCDC to treat inmates going through detox), Ex. 7 [#112-7] (*Daniel Ruiz Depo.* at 48:5-10) (discussing untrained deputy's "discretion" to determine what "signs and symptoms" of detox to look for); Ex. 9 [#112-9] (*County Response to Request for Admission No. 19*) (admitting lack of awareness "of any written requests by [SMH] relating to medical capabilities at the jail"); Ex. 15 [#112-15] (*Randy Gene Davidson, M.D. Depo.* at 50:17-53:20) (acknowledging lack of medical unit and detox center at MCDC and expressing unawareness as to whether MCDC has a mid-level provider or doctor on staff and general uncertainty as to "what goes on at the county jail"); Ex. 16 [#112-16] (*Todd Fowler, M.D.* at 36:12-39:8) (indicating lack of knowledge about any "training session on what the hospital's role is in medical clearances for [the]

6

jail"); Ex. 18 [#112-18][6] (*Prior Medical Screenings*) (generally lacking follow-up care instructions and information on what symptoms to monitor, except in one instance where SMH provider noted, "[r]eturn for any new or concerning medical symptoms[.]")).

Plaintiffs also assert SMH employees Nurse Gaddis, Dr. Fowler, and Dr. Davidson all testified that they were unaware of MCDC's limited medical capacity and were operating under an incorrect impression that their exams were limited in scope to whether the patient was experiencing an acute emergency medical condition at the time of evaluation. *Id.* at 5, 7-8 (citing Ex. 15 [#112-15] (*R. Davidson, M.D. Depo.* at 50:17-53:20, 77:8-23, 93:18-94:7, 112:18-113:15); Ex. 16 [#112-16] (*Fowler, M.D. Depo.* at 36:12-39:8, 47:14-52:13, 57:25-58:16 (believing that MCDC staff "would be well versed in alcohol and alcohol-related complications because . . . a significant number of their inmates arrive intoxicated")), 61:10-64:12, 67:15-21); Ex. 17 [#112-17] (*Jennifer Gaddis Depo.* at 66:10-67:19 (expressing lack of awareness that MCDC did not have any full-time medical providers in July 2021 or available medical providers on weekends)).

Plaintiffs also point to deposition testimony regarding SMH medical provider's practice of conducting jail detainee medical clearances in just three-to-ten minutes, an insufficient amount of time. *Id.* at 10 (citing to Ex. 15 [#112-15] (*R. Davidson, M.D. Depo.* at 68:23-69:3 (attesting that his "intoxication clearances" last "three to ten minutes"); Ex. 27 [#112-27] (*Osborn Depo.* at 29:15-30:7 (attesting that the "nursing portion of a medical clearance based on intoxication . . . takes about five minutes"). Plaintiffs further assert that "SMH was fully aware that the system it had set up was likely to result in serious

---

[6] Filed under Level 1 restriction at Dkt. # 114-4.

harm to patients, as several patients the hospital had perfunctorily cleared for incarceration were subsequently dying shortly thereafter in jail[.]" *Motion* [#112] at 11 (citing Ex. 16 [#112-16] (*T. Fowler, M.D. Depo.* at 64:18-65:8 (acknowledging that, prior to Mr. Newman's death, another inmate "came to [SMH's] ER, was cleared, left[,] came back, was cleared, went to jail, and died the next day[.]"); Ex. 28 [#112-28] at 5 (news article on the death of a MCDC inmate due to "[c]omplications of chronic alcohol abuse" prior to Mr. Newman's death).

SMH purportedly did not institute any discharge protocols that took into consideration MCDC's lack of medical monitoring or that facilitated information-sharing between SMH and MCDC regarding follow-up care. *Motion* [#112] at 9. Further, Plaintiffs contend that a "Prisoner Medical Clearance Report" form served as the only established communication path from SMH to MCDC, but that the form was "usually [sent to MCDC] without any medical content actually filled out." *Id.* (citing to Ex. 5 [#112-5] (*Bryce Durbin Depo.* at 9:5-10:8, 69:19-70:14); Ex. 17 [#112-17] (*J. Gaddis Depo.* at 63:6-65:13) (indicating an inability to recall an instance when the deponent directly communicated with someone at MCDC about a medically cleared patient)). In sum, Plaintiffs contend that the circumstances of SMH's failure to train and supervise rise to the level of willful and wanton conduct and, therefore, exemplary damages are appropriate. As such, Plaintiffs seek to amend their complaint to add a remedy of exemplary damages to the claim of negligence against Defendant SMH.

In opposition, Defendant SMH argues that exemplary damages are disfavored under Colorado law and Plaintiffs have not demonstrated a *prima facie* case of willful and

8

wanton conduct. *Response* [#128] at 4, 7. Additionally, SMH argues that Plaintiffs have failed to meet their burden of establishing a basis for exemplary damages because they have not presented any expert who opines that negligent nursing care was the "but for" cause of Mr. Newman's death. *Id.* at 2, 12-16. SMH further opposes Plaintiffs' Motion because "merely negligent" conduct "cannot serve as the basis for exemplary damages," and, to the extent Plaintiffs' request for exemplary damages is premised on medical negligence, they have "fail[ed] to submit any [expert witness testimony] to support medical negligence. *Id.* at 6-7, 12-16. SMH further argues that Plaintiffs' medical negligence claim cannot support exemplary damages against it because "[h]ospitals are statutorily prohibited from dictating medical care" and, thus, "only doctors can conduct medical clearances." *Id.* at 8. Finally, SMH argues that Plaintiffs cannot rely on other MCDC inmates' medical clearance reports and the deaths of other MCDC inmates because, it contends, "the Court has already rejected this type of evidence" when then-Magistrate Judge Kristen L. Mix ruled on a discovery dispute during a live deposition. *Id.* at 10-12.

First, the Court rejects Defendant's argument that denial of Plaintiffs' Motion is warranted because Plaintiffs have not demonstrated a *prima facie* case of willful and wanton conduct. At the motion to amend stage, Plaintiffs' burden of establishing a basis for an exemplary damages claim is relatively low in comparison to their burden of proof at trial. *Affordify, Inc.*, 2020 WL 6290375, at *5.

"In ascertaining whether plaintiff[s'] proposed amended complaint is likely to survive a motion to dismiss, the court must construe the complaint in the light most favorable to plaintiff[s], and the allegations in the complaint must be accepted as true."

*Bennett v. Wells Fargo Home Mortg.*, No. 16-cv-03185-CMA-KLM, 2017 WL 4675524, at *1 (D. Colo. Oct. 18, 2017) (alterations original, further citation omitted). Pursuant to the Colorado statute, "willful and wanton conduct" constitutes "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." Colo. Rev. Stat. § 13–21–102(1)(b).

Here, Plaintiffs have alleged that Defendant SMH was negligent in the operation of a hospital and that SMH's failure to train and supervise rises to the level of willful and wanton conduct. *See Proposed Third Amend. Compl.* [#114-1][7] at ¶ 349 (alleging that SMH "is vicariously liable for the negligent acts and omissions by their nursing agents and/or employees"), ¶¶ 350-52 (alleging that SMH had a duty "of due care to . . . ensure provision of reasonable medical, nursing or other health care to Mr. Newman" and "[a]ll involved caregivers failed to fulfill their duty . . . to properly assess, diagnose, admit, and treat Mr. Newman, causing his death"), ¶ 353 (SMH "breached [its] . . . standards and duties of care and [was] negligent in failing to . . . provide for the admission, diagnosis and proper care and treatment of Mr. Newman by properly qualified caregivers"); *see also Reply* [#134] at 3 (clarifying that the negligence claim against SMH concerns "Nurse Gaddis's failure to conduct a comprehensive assessment, and [SMH's] lack of policies and training on medical clearance for incarceration[.]"). In support of the amendment,

---

[7] While this proposed amended complaint is entitled, "Second Amended Civil Rights Complaint with Request for Trial by Jury," it is actually a proposed *Third* Amended Complaint. Pursuant to the Court's Order [#145] granting a different motion to amend to add a claim against SMH under the Emergency Medical Treatment and Labor Act and 42 U.S.C. § 1983 deliberate indifference claims against all SMH, the County, and Dr. Davidson, Plaintiffs filed a Second Amended Complaint on November 17, 2023 [#148].

Plaintiffs point to deposition testimony and other discovery that evinces SMH's failure to inform medical staff members of MCDC's limited medical capacity and SMH's failures to amend discharge protocols to provide MCDC staff with follow-up care instructions and to facilitate information-sharing between SMH and MCDC regarding follow-up care and symptoms of concern. *Motion* [#112] at 4-5, 7-9.

Second, the Court rejects SMH's argument that Plaintiffs have failed to meet their burden because they have not presented any expert opinion that the nurse's and/or SMH's negligence was the "but for" cause of Mr. Newman's death. None of the cases Defendant SMH relies on involve a court denying amendment because a plaintiff lacked an expert opinion that negligence was a "but for" cause of harm to a patient. *Williams v. Boyle*, 72 P.3d 392 (Colo. App. 2003) concerned a lower court's dismissal of various claims, including a medical malpractice claim, due to the plaintiff's failure to file a certificate of review. *Hunter v. SCL Health-Front Range, Inc.*, 514 P.3d 322 (Colo. App. 2022) concerned the reversal of a lower court's dismissal of claims upon finding a certificate of review's inadequacy. *Rocky Mountain Planned Parenthood, Inc. v. Wagner*, 467 P.3d 287 (Colo. 2020) concerned reversal of a summary judgment award to the defendant medical clinic where the defendant failed to demonstrate that no reasonable jury would conclude that its (in)actions were a substantial factor in causing the plaintiffs' losses. *Melville v. Southward*, 791 P.2d 383 (Colo. 1990) concerned reversal of a jury verdict where expert testimony was elicited from a medical professional who was not qualified as an expert in the subject area. Moreover, the Court could find no authority to support SMH's argument.

11

Further, in their Reply, Plaintiffs point to two expert opinions, one of which directly addresses this issue. *See Reply* [#134] at 10 (citing to Ex. 13, *Craig Felty Report* [#112-13] at 5-6 (opining that the "practices . . . exhibited by Southwest Memorial Hospital were reckless and put patients like Kelroy Newman at an obvious risk of serious harm or death")).

Finally, the Court rejects SMH's argument that Plaintiffs' medical negligence claim cannot support exemplary damages against it because Colorado law prohibits hospitals from dictating medical care and "only doctors can conduct medical clearances." *Response* [#128] at 8. While SMH is correct that Plaintiffs "cannot sue [SMH] for medical malpractice due to the corporate practice of medicine doctrine[,] . . . Colorado courts thus analyze claims for direct negligence against a hospital or other healthcare entity under the general elements of negligence." *Fahrenbruch by and through Darin Baehr of Pinnacle Bank v. Peetz*, No. 19-cv-02266-RBJ, 2021 WL 2550533, at *5 (D. Colo. June 22, 2021). The elements of negligence are: (1) the defendant owed a legal duty of care; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the defendant's breach caused that injury. *Vigil v. Franklin*, 103 P.3d 322, 325 (Colo. 2004).

In the Proposed Third Amended Complaint [#114-1], to support their sixth claim for negligence against SMH, Plaintiffs allege that SMH:

- "is vicariously liable for the negligent acts and omissions by their nursing agents and/or employees";

- "through nursing and other allied health care professional staff, and/or directly, . . .had duties of due care to provide or ensure provision of

12

reasonable medical, nursing or health care to Mr. Newman by qualified caregivers";

- "owed [Mr. Newman] a duty to exercise the degree of care, skill, caution, diligence, and foresight exercised by and expected of hospital, nursing, allied health professional personnel and physicians including national standards for emergency medicine physician specialists like Dr. Davidson"; and

- "[t]hrough their actions and omissions, and those of their employees, . . . [SMH] breached [its] respective standards and duties of care and were negligent in failing to properly . . . provide for the . . . proper care and treatment of Mr. Newman by properly qualified caregivers."

¶¶ 349-50, 352-53.

Further, in their Reply, Plaintiffs clarify that their medical negligence claim against SMH concerns "Nurse Gaddis's failure to conduct a comprehensive assessment, and [SMH's] lack of policies and training on medical clearance for incarceration" and "but for" Nurse Gaddis's failure, "Mr. Newman would not have been sent to jail with a potentially fatal .421 BAC, tachycardia, no follow-up instructions to deputies regarding withdrawal, and that he would not have died from complications of alcohol withdrawal the next day." *Reply* [#134] at 3. For these reasons, the Court rejects SMH's argument that exemplary damages against it are barred by the corporate practice medicine doctrine. For reasons already discussed, Plaintiffs have met their burden of establishing a *prima facie* case of willful and wanton conduct for purposes of adding a punitive damages remedy.

Finally, the Court disagrees with SMH's contention that Plaintiffs cannot rely on "medical clearance reports and the deaths of *other* prisoners medically cleared by the doctors at SWMH . . . [because] the Court in this case has already rejected this type of evidence." *Response* [#128] at 10 (emphasis in original). The specific issue before then-Magistrate Judge Kristen L. Mix concerned whether Plaintiffs' counsel was permitted to ask the non-party deponent, a SMH emergency room physician, questions about the care he provided to an MCDC inmate over 10 years ago. *See Response,* Ex. 4 [#128-4] (*Transcript of May 11, 2023, Discovery Dispute Proceedings* at 4:1-6:9). Plaintiffs' counsel argued that line of questioning was relevant to an asserted negligence claim against SMH. *See id.* at 8:4-10:11. Judge Mix's oral ruling "precluded [Plaintiffs' counsel] from asking questions relating to the medical record [of a non-party decedent who died in MCDC custody.]" *Id.* at 11:24-12:1. In so ruling, Judge Mix reasoned that "[t]he negligence claim relates to the specific conduct directed towards the plaintiff . . . . Negligence can't be proven by showing a pattern of practice. It has to be shown by a breach of a duty to an individual person." *Id.* at 11:8-13. Thus, Judge Mix concluded that the "[pattern of practice] evidence at this juncture to be [ir]relevant." *Id.* at 11:13-14.

The issue presented in Plaintiffs' Motion does not concern whether Plaintiffs may prove negligence by a pattern of practice. Plaintiffs, rather, rely on other medical clearances to argue that Defendant SMH was aware the system in place could result in serious harm to patients, which goes to whether the conduct was willful and wanton. *Motion* [#112] at 11; *Reply* [#133] at 9. In sum, Plaintiffs rely on the other deaths following medical clearance to argue that SMH was reckless despite being on notice that its medical

14

clearance policies and procedure purportedly caused multiple deaths. *Reply* [#133] at 9.[8] As Plaintiffs are not seeking to argue a pattern of practice, amendment is not futile on this ground.

### III.  Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that Plaintiffs' Motion for Leave to Amend Complaint to Add Punitive Damages Remedy Under State Law Negligence Claim [#112] is **GRANTED**.

IT IS FURTHER **ORDERED** that by **December 7, 2023**, Plaintiffs shall also file their redacted *Third* Amended Complaint[9] on the record.

IT IS FURTHER **ORDERED** that by **December 7, 2023**, Plaintiffs shall also file the unredacted *Third* Amended Complaint under restriction on the record, which shall be accompanied by a Motion to Restrict indicating why restriction of the unredacted Second Amend Complaint is necessary, as required by D.C.COLO.LCivR 7.2(c).

Dated:  November 30, 2023

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge

---

[8] Defendant SMH's Sur-reply [#144] concerns arguments raised in Plaintiffs' Reply [#133] regarding the Colorado Department of Health and Environment's licensing requirements. Those licensing requirements, however, are irrelevant to the Court's analysis.

[9] *See* note 7, above.