IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-01763-PAB-KAS

ESTATE OF KELROY NEWMAN, by and through putative personal representative, Bryanne Watts-Lucero, and
J.W., a minor child, by and through friend and mother, Elisa Wilson,

    Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MONTEZUMA, COLORADO,
SHERIFF STEVEN NOWLIN, individually and in his official capacity,
ZACHARY SUMMERS, individually,
SOUTHWEST HEALTH SYSTEM, INC, d/b/a/ Southwest Memorial Hospital, and
RANDY GENE DAVIDSON, MD, individually,

    Defendants.

---

**ORDER**

---

This matter comes before the Court on Defendant SWMH's Motion for Summary Judgment [Docket No. 104].[1] The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

This case concerns the death of Kelroy Newman on July 18, 2021 due to alcohol withdrawal while Mr. Newman was in pretrial detention at the Montezuma County

---

[1] On March 14, 2024, plaintiffs filed a Notice of Newly Disclosed Evidence in Support of Plaintiffs' Response to Defendant SWMH's Motion for Summary Judgment stating that evidence disclosed by defendant Southwest Health System, Inc. on March 8, 2024 provides additional support for Facts 3 and 5 asserted in plaintiffs' response to the motion for summary judgment. Docket No. 179 at 2. The Court did not rely on these facts to reach its determination on the motion and will not consider the additional evidence referenced by plaintiffs in the notice.

Detention Center ("MCDC") in Colorado.  Docket No. 41 at 1-2, ¶¶ 1, 6.  This action is brought by Mr. Newman's estate and his minor child, J.W., against the Board of County Commissioners of the County of Montezuma, Colorado, Sheriff Steven Nowlin, Deputy Zachary Summers, Randy Gene Davidson, M.D., and Southwest Medical System, Inc., doing business as Southwest Memorial Hospital ("the Hospital").[2]  *Id.* at 4-6, ¶¶ 14-17, 20, 23, 26.

The Hospital's summary judgment motion is directed at plaintiffs' First Amended Complaint, *see* Docket No. 104 at 1, which brought one claim against the Hospital, namely, claim three, alleging negligence in operation of a hospital and medical negligence causing wrongful death.  Docket No. 41 at 39-41, ¶¶ 255-66.  Plaintiffs have amended their complaint twice since the filing of the summary judgment motion.  Docket Nos. 149, 154.  Plaintiffs' Third Amended Complaint ("the complaint") asserts three claims against the Hospital: claim four— deliberate indifference in violation of the Fourteenth Amendment; claim six— medical negligence causing wrongful death; and claim seven— failure to provide an appropriate medical screening examination and to provide required stabilization care and treatment in violation of 42 U.S.C. § 1395dd. Docket No. 154 at 51-54, 56-61, ¶¶ 312-27, 344-72.  Claim six of the complaint does not materially differ from claim three of the First Amended Complaint.[3]  *Compare* Docket

---

[2] Defendant Andrew Daulton was dismissed from this action.  Docket No. 142.
[3] Claim six of the complaint differs from claim three of the First Amended Complaint in that plaintiffs seek punitive damages against the Hospital.  *Compare* Docket No. 41 at 39-41, ¶¶ 255-66, *with* Docket No. 154 at 58, ¶ 355; *see also* Docket No. 112 at 2 (seeking leave to amend the complaint for the purpose of adding a punitive damages remedy).  However, the Hospital does not seek summary judgment on the issue of damages.  Moreover, in the briefing regarding plaintiffs' motion to amend the complaint, no party argued that the proposed amendments to plaintiffs' complaint would impact the pending summary judgment motion, *see* Docket Nos. 112, 128, 134, and the

No. 41 at 39-41, ¶¶ 255-66, *with* Docket No. 154 at 56-58, ¶¶ 344-55.  Therefore, the Court will construe the Hospital's motion, which seeks summary judgment on claim three of plaintiffs' First Amended Complaint, *see* Docket No. 104 at 1, as seeking summary judgment on claim six of the complaint.

## II.  FACTS[4]

On July 17, 2021, the Cortez Police Department arrested Mr. Newman and took him to MCDC.  *Id.* at 3, ¶ 1.  Upon arrival, Mr. Newman underwent a blood alcohol test, which revealed that he had a blood alcohol concentration ("BAC") of 0.421.  *Id.*, ¶ 2.  Mr. Newman also had injuries to his head and face.  *Id.*, ¶ 3.  Because of Mr. Newman's high BAC and facial injuries, he was taken to the Hospital to be medically cleared for incarceration.  *Id.*, ¶ 4.  Mr. Newman was first seen by Nurse Jennifer Gaddis, an employee of the Hospital.[5]  Docket No. 115 at 7-8, 10, ¶¶ 13, 21; *see* Docket No. 115-

---

parties have not indicated that the Hospital's summary judgment motion has been superseded because plaintiffs amended their complaint.

[4] The following facts are undisputed unless otherwise noted.

[5] Plaintiffs, in their response, include a "statement of additional material facts." Docket No. 115 at 4-13.  The Court's practice standards permit a party opposing summary judgment to include in its response a statement of additional disputed or undisputed facts.  *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.v.  Plaintiffs' response does not state whether the additional material facts are disputed or undisputed.  However, the Hospital appears to treat plaintiffs' additional material facts as being allegedly undisputed because it denies Facts 9-12 and 17-20. Docket No. 127 at 1-2, ¶¶ 9-12, 17-20.  In replying to a party's statement of additional undisputed facts, the Court's practice standards require a party, with respect to each fact which the opposing party claims to be undisputed, to admit or deny that fact. Practice Standards, § III.F.3.b.vi; *see also* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact . . . , the court may . . . consider the fact undisputed").  The Hospital responded to only nine of plaintiffs' additional undisputed facts.  *See* Docket No. 127 at 1-2, ¶¶ 9-12, 17-20.  The Hospital's reply states that "[r]esponding to 9 pages of 'additional material facts' in this 10-page limit Reply is unnecessarily burdensome and would lead to additional motions practice (and cost) to exceed page limits and respond."  *Id.* at 3.  However, complying with the Court's practice standards is not "unnecessarily" burdensome; it is required.  Moreover, the

18 at 1.  Nurse Gaddis failed to conduct a nursing assessment of Mr. Newman's alcohol intoxication or potential for withdrawal.[6]  Docket No. 115 at 11, ¶ 22.  Nurse Gaddis failed to inquire about Mr. Newman's recent consumption of alcohol.[7]  *Id.*  Nurse Gaddis "charted" that Mr. Newman needed medical clearance for MCDC because of a facial injury, which was incorrect.[8]  *Id.*  No Hospital staff member asked about Mr. Newman's BAC, drinking habits, or withdrawal history, even though Mr. Newman smelled of alcohol.[9]  *Id.*, ¶ 24.

Mr. Newman was also seen by emergency room physician Dr. Davidson, a Hospital employee.  Docket No. 104 at 3, ¶¶ 5-6.  Dr. Davidson performed a physical examination and documented in his medical report that Mr. Newman "has no complaints.  Has bruising to his face and abrasions and states was jumped by 6 people 3 days ago.  States he is fine."  *Id.*, ¶¶ 8-9.  Dr. Davidson's report states that Mr. Newman "appears stable for incarceration at this time."  *Id.*, ¶ 11.  Dr. Davidson testified that he knew Mr. Newman was intoxicated and that the medical clearance exam was requested to determine whether Mr. Newman was safe for incarceration.  *Id.* at 4, ¶ 13.  Dr. Davidson signed the Sheriff's Office "prisoner medical clearance report," which

---

Hospital could have filed a motion to exceed the page limit for reply briefs, but chose not to do so.  Therefore, for those statements of additional undisputed facts that the Hospital failed to admit or deny, the Court will deem those facts to be admitted.  Accordingly, because the Hospital neither admitted nor denied plaintiffs' Facts 13 and 21, the Court deems them admitted.

[6] The Hospital did not respond to this fact.  For the reasons noted in footnote 5, the Court deems this fact to be admitted.

[7] The Hospital did not respond to this fact.  For the reasons noted in footnote 5, the Court deems this fact to be admitted.

[8] The Hospital did not respond to this fact.  For the reasons noted in footnote 5, the Court deems this fact to be admitted.

[9] The Hospital did not respond to this fact.  For the reasons noted in footnote 5, the Court deems this fact to be admitted.

stated, "I have examined the prisoner and find him acceptable for admission to the jail. I have no specific suggestions regarding the care of the prisoner for the condition for which I have examined him." *Id.*, ¶ 14.  Dr. Davidson did not document the BAC recorded at MCDC, 0.421, and did not order a blood alcohol test or other laboratory tests.  *Id.* at 3-4, ¶¶ 2, 15-16.  Dr. Davidson testified that, if anyone had told him that Mr. Newman's BAC was 0.421, it would not have changed his medical decision-making.[10]  *Id.* at 5, ¶ 18.  Dr. Davidson also testified that, if he had known or suspected that Mr. Newman was a chronic alcoholic or addicted to alcohol, it would not have changed his medical decision making.[11]  *Id.*, ¶ 19.  Even if Dr. Davidson had known that Mr.

---

[10] Plaintiffs "deny that Dr. Davidson can credibly testify that information he didn't know would not have changed his medical decision-making in clearing a patient for intoxication," but "[a]dmit Dr. Davidson so testified."  Docket No. 115 at 3, ¶ 18.  Plaintiffs do not cite any authority for their objection.  While courts do not resolve credibility issues in deciding summary judgment motions, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), the basis for plaintiffs' objection to this fact may be that Dr. Davidson is simply predicting what he would have done if presented with such information and for that reason his testimony is inadmissible speculation.  *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").  However, even assuming that plaintiffs object on this basis, the objection is not valid.  Dr. Davidson testified that he would not have changed his decision to discharge Mr. Newman if he had known Mr. Newman's BAC was 0.421 because the BAC "is a number that is not relevant to making that decision.  It's more how [the patient] presents."  Docket No. 104-3 at 3, 92:19-21.  Dr. Davidson also testified that he does not consider any specific BAC dangerous and that "you can't draw a direct correlation between [BAC] and whether somebody's going to go into withdrawal."  Docket No. 115-1 at 7, 10, 64:5-6, 82:20-22.  Therefore, the Court finds that Dr. Davidson's testimony that he would not have changed his decision to discharge Mr. Newman if he had known that Mr. Newman's BAC was 0.421 is not inadmissible speculation.  The Court deems this fact to be admitted.
[11] Plaintiffs "deny that Dr. Davidson can credibly testify that information he didn't know would not have changed his medical decision-making in clearing a patient for intoxication," but "[a]dmit that Dr. Davidson so testified."  Docket No. 115 at 3-4, ¶ 19.  Plaintiffs do not cite any authority for their objection.  However, even assuming, as above, that plaintiffs object on the basis that Dr. Davidson is simply predicting what he would have done if presented with such information and for that reason his testimony is

Newman had been seen one month earlier for a medical clearance for intoxication, this would not have changed his decision.[12]  *Id.*, ¶ 20.  Mr. Newman was discharged from the Hospital with a "Prisoner Medical Clearance Report" that had not been completed and did not include the reason he had been sent to the hospital.[13]  Docket No. 115 at 12, ¶ 27.  Mr. Newman was also discharged with instructions to return to the emergency

---

inadmissible speculation, the objection is not valid.  Although Dr. Davidson testified that he does "consider whether [the patient is] a chronic drinker," Docket No. 115-1 at 4, 45:18-19, Dr. Davidson stated that "there is no direct correlation" between a person's dependence on or addition to alcohol and the likelihood that the person will experience withdrawal.  Docket No. 104-3 at 3, 93:3.  Moreover, Dr. Davidson testified that the only circumstance in which he had stopped a medical clearance for potential withdrawal was when the patient was already exhibiting symptoms of withdrawal, Docket No. 115-1 at 10, 83:19-23, and testified that Mr. Newman did not display any signs of alcohol withdrawal or any other emergent condition when Dr. Davidson examined him.  Docket No. 104-3 at 4, 94:4-6, 96:2-3; *see also* Docket No. 115-1 at 5, 48:15-19 (testifying that if a patient is showing signs of alcohol withdrawal Dr. Davidson would treat the patient, but he would not treat a patient leaving from the emergency department "just because [he thinks] in the possibility of the future" the patient might go into withdrawal).  Therefore, the Court finds that Dr. Davidson's testimony that he would not have changed his decision to discharge Mr. Newman if he had known that Mr. Newman was a chronic alcoholic or addicted to alcohol is not inadmissible speculation.  The Court deems this fact to be admitted.

[12] Plaintiffs "deny that Dr. Davidson can credibly testify that information he didn't know would not have changed his medical decision-making in clearing a patient for intoxication," but "[a]dmit that Dr. Davidson so testified."  Docket No. 115 at 4, ¶ 20.  Once again, plaintiffs do not cite any authority for their objection.  However, even assuming, as above, that plaintiffs object on the basis that Dr. Davidson is simply predicting what he would have done if presented with such information and for that reason his testimony is inadmissible speculation, the objection is not valid.  As stated above, Dr. Davidson testified that, although he considers a patient's history of alcohol use, he would treat a patient for alcohol withdrawal only if the patient was showing symptoms of withdrawal when Dr. Davidson examined him and that Mr. Newman was not exhibiting symptoms of withdrawal when Dr. Davidson examined him.  For this reason, the Court finds that Dr. Davidson's testimony that he would not have changed his decision to discharge Mr. Newman if he had known that Mr. Newman had been seen one month earlier for a medical clearance for intoxication is not inadmissible speculation.  Accordingly, the Court deems this fact to be admitted.

[13] The Hospital did not respond to this fact.  For the reasons noted in footnote 5, the Court deems this fact to be admitted.

6

department "as needed."[14]  *Id.*  The Prisoner Medical Clearance Report did not contain specific instructions for monitoring Mr. Newman.[15]  *Id.*

After receiving medical clearance, Mr. Newman was transferred from the Hospital to MCDC and was placed in a holding cell.  Docket No. 104 at 5, ¶ 23.  The next morning, Mr. Newman experienced symptoms of acute alcohol withdrawal.[16]  Docket No. 115 at 12, ¶ 28.  Mr. Newman told Deputy Summers that his head hurt and that he wanted to see a doctor.[17]  *Id.*, ¶ 29.  Deputy Summers and another deputy decided to take Mr. Newman to the hospital later that day because there was no immediate urgency as the hospital had medically cleared him the night before and said that he was safe to be in jail.[18]  *Id.* at 13, ¶ 29.  Mr. Newman died hours later from complications from alcohol withdrawal.[19]  *Id.*, ¶ 30.

## III. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if,

---

[14] The Hospital did not respond to this fact.  For the reasons noted in footnote 5, the Court deems this fact to be admitted.

[15] The Hospital did not respond to this fact.  For the reasons noted in footnote 5, the Court deems this fact to be admitted.

[16] The Hospital did not respond to this fact.  For the reasons noted in footnote 5, the Court deems this fact to be admitted.

[17] The Hospital did not respond to this fact.  For the reasons noted in footnote 5, the Court deems this fact to be admitted.

[18] The Hospital did not respond to this fact.  For the reasons noted in footnote 4, the Court deems this fact admitted.

[19] The Hospital did not respond to this fact.  For the reasons noted in footnote 4, the Court deems this fact admitted.

under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## IV. ANALYSIS

Under Colorado law,[20] to "establish a claim for negligence by medical personnel, a plaintiff must allege the same elements as for any other negligence claim, i.e., that the defendant owed a legal duty to the plaintiff, that the defendant breached that duty, and that the breach of duty caused the harm that resulted in the alleged damages." *Carbajal v. St. Anthony Cent. Hosp.*, No. 12-cv-02257-REB-KLM, 2015 WL 3765895, at *9 (D. Colo. Apr. 7, 2015) (citing *Settle v. Basinger*, 411 P.3d 717, 726 (Colo. App. 2013)), *recommendation adopted,* 2015 WL 3896902 (D. Colo. Jun. 23, 2015).  A hospital may be sued for medical negligence based on a theory of vicarious liability for the acts of its employees, *see Kellner v. Schultz,* 937 F. Supp. 2d 1319, 1326-27 (D. Colo. 2013) (applying Colorado law), or a theory of direct liability for its own acts.  *See Fahrenbruch by and Through Darin Baehr of Pinnacle Bank v. Peetz*, No. 19-cv-02266-RBJ, 2021 WL 2550533, at *4-5 (D. Colo. Jun. 22, 2021) (applying Colorado law).  The Hospital argues that it is entitled to summary judgment on plaintiffs' negligence claim because plaintiffs cannot establish vicarious liability based on the actions of Dr. Davidson or Nurse Gaddis and cannot establish direct liability based on the Hospital's training policies and discharge protocols.  Docket No. 104 at 7-8; Docket No. 127 at 3-8.

### A.  Liability for Acts of Dr. Davidson

The Hospital argues that the corporate practice of medicine doctrine shields it from liability for Dr. Davidson's medical decisions.  Docket No. 104 at 8-11.  Plaintiffs do

---

[20] The parties appear to agree that Colorado law applies to the negligence claim in this case.  The Court will operate under the same premise.  *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

not appear to challenge this argument.  *See* Docket No. 115 at 13.  "The corporate practice of medicine doctrine is a common law principle that recognizes it is impossible for a fictional entity, a corporation, to perform medical actions or be licensed to practice medicine."  *Estate of Harper ex rel. Al-Hamim v. Denver Health and Hosp. Auth.*, 140 P.3d 273, 275 (Colo. App. 2006) (citation and quotations omitted).  Colorado courts have held that, based on this doctrine, hospitals and other corporations may not be held vicariously liable for the negligent acts of their physician employees.  *Id.*; *see also Kellner*, 937 F. Supp. 2d at 1326; *Blanco, Sr. v. HCA-Healthone, LLC*, No. 19-cv-00928-PAB-SKC, 2020 WL 5760452, at *4 (D. Colo. Sep. 28, 2020) (applying Colorado law). Based on the corporate practice of medicine doctrine, the Hospital cannot be held vicariously liable for medical negligence committed by Dr. Davidson.  The Court will therefore grant summary judgment in favor of the Hospital on plaintiffs' medical negligence claim against the Hospital insofar as the claim is based on the acts of Dr. Davidson.

### B.  Liability for Acts of Nurse Gaddis

"One of the *prima facie* elements a plaintiff must satisfy in a negligence case is that the breach of the standard of care was a proximate cause of the alleged injuries." *Quintana v. United States*, No. 06-cv-01342-REB-CBS, 2008 WL 731115, at *7 (D. Colo. Mar. 17, 2008) (applying Colorado law).  The Hospital argues that the "medical clearance examination performed by Dr. Davidson is what gives rise to Plaintiffs' medical causation theory-not the nursing care," and therefore plaintiffs lack prima facie evidence that the nursing care was a proximate cause of Mr. Newman's death.  Docket No. 104 at 16.

Plaintiffs claim that the standard of care required Nurse Gaddis to confirm the condition that triggered the need for Mr. Newman's medical clearance, take a social history, and document Mr. Newman's acute intoxication.  Docket No. 115 at 14.  Plaintiffs argue that Nurse Gaddis breached this standard of care because she "incorrectly charted" that Mr. Newman was brought in for medical clearance due to his facial injury rather than his 0.421 BAC, failed to inquire or record anything about Mr. Newman's recent consumption of alcohol, and failed to take a social history.  *Id.*  Plaintiffs claim that Dr. Davidson's medical decision making is "necessarily informed by the nurse gathering (or failing to gather) necessary information." *Id.* at 15.  Therefore, according to plaintiffs, "Nurse Gaddis's failure to perform a reasonable nursing assessment and collect crucial information about Mr. Newman's present medical condition and social history contributed to the decision to discharge him to the Jail without any follow-up care instructions, and was a proximate cause of his death." *Id.* at 15-16.  In other words, plaintiffs argue that Nurse Gaddis' failure to gather information about Mr. Newman's medical history and condition and to communicate that to Dr. Davidson is a but-for cause of Mr. Newman's death because, had Dr. Davidson known that information, Dr. Davidson would not have discharged Mr. Newman.

The Hospital responds that there is no evidence that Nurse Gaddis' failure to document Mr. Newman's BAC and alcohol history, "if corrected, would have changed Dr. Davidson's decision to medically discharge Mr. Newman.  To the contrary, he testified that even if he knew the actual number (.421) of the [BAC] or if he knew Mr. Newman's alcohol history that this would not have changed his decision to discharge Mr. Newman to the jail."  Docket No. 104 at 15.  Plaintiffs, however, maintain that the

11

Hospital "cannot get out based solely on Dr. Davidson's self-serving testimony that having additional information about Mr. Newman would not have made a difference or changed his decision-making." Docket No. 115 at 15.

However, as the Court noted earlier, *see supra* notes 10-12, Dr. Davidson's testimony is not "self-serving." Rather than being based on speculation about what he would have done had he known the information about Mr. Newman, he testified that such information was not relevant to the medical examinations that he conducted of persons similar to Mr. Newman and was not relevant to his examination of Mr. Newman. *See* Docket No. 104-3 at 3, 92:19-21, 93:3; Docket No. 115-1 at 4, 5, 7, 10, 45:18-19, 48:15-19, 64:5-6, 82:20-22, 83:19-23. As a result, Dr. Davidson testified that, even if he had known of Mr. Newman's BAC or known the other facts that plaintiffs rely upon, it would not have changed his decision to discharge Mr. Newman. Docket No. 104 at 5, ¶¶ 18-20. Plaintiffs fail to create a genuine issue of material fact about these issues. As a result, plaintiffs have failed to show that any breach of the standard of care by Nurse Gaddis was a proximate cause of plaintiffs' injuries. *Quintana*, 2008 WL 731115, at *7. The Court will therefore grant summary judgment to the Hospital on this aspect of plaintiffs' negligence claim.

### C.  The Hospital's Training and Discharge Protocols

Plaintiffs claim that, in addition to being vicariously liable for the acts of Nurse Gaddis, the Hospital is "directly liable for its own negligent training, policies and protocols." *Id.* at 13. Plaintiffs claim that the Hospital has a duty to "establish[ ] appropriate procedures and protocol for its employees to properly treat patients" and to "establish[ ] appropriate procedures and protocols for the medical clearance of inmates

and systems for communicating with the jail to which patients are being discharged." *Id.* at 16.  Plaintiffs argue that the Hospital was directly negligent, as opposed to vicariously negligent, because it "fail[ed] to train its staff about medical clearances for incarceration and discharging patients to jail" and "took no steps to develop discharge protocols for incarcerated patients that took into consideration the lack of any medical monitoring at the jail." *Id.* at 16-17.  The Hospital responds that it is entitled to summary judgment on plaintiffs' negligence claim insofar as it is premised on direct negligence by the Hospital because plaintiffs "fail[ ] to cite to any legal duty that gives rise to a claim against the hospital" and lack required expert witness testimony.[21]  Docket No. 127 at 3, 7.

Plaintiffs cite *Pediatric Neurosurgery, P.C. v. Russell*, 44 P.3d 1063, 1067 (Colo. 2002), for the proposition that a hospital has "the duty of establishing appropriate procedures and protocol for its employees to properly treat patients."  Docket No. 115 at 16.  However, *Russell* is distinguishable because the plaintiffs there alleged negligence based on vicarious, not direct, liability.[22]  *Russell*, 44 P.3d at 1066.  Plaintiffs cite no other source of law indicating the existence of this duty.  Similarly, plaintiffs cite no legal support for their argument that the Hospital had the duty to "establish[ ] appropriate

---

[21] The Hospital also argues that plaintiffs' claim fails because "hospitals are legally prohibited from dictating medical care."  Docket No. 127 at 4.  Because the Court finds that plaintiffs have failed to raise a genuine dispute of fact as to whether the Hospital had a duty to establish procedures and protocol for its employees to properly treat patients, establish procedures and protocols for the medical clearance of inmates, or establish systems for communicating with the jail to which patients are discharged, and as to whether the Hospital breached those duties, the Court will not address this argument.

[22] Moreover, *Russell* was legislatively overruled.  *See Harper*, 140 P.3d at 276 ("In 2003 the General Assembly legislatively overruled *Russell* . . . to reinstate the corporate practice of medicine doctrine to the extend *Russell* had created an exception to it.").

procedures and protocols for the medical clearance of inmates and systems for communicating with the jail to which patients are being discharged." Docket No. 115 at 16. Thus, plaintiffs have failed to raise a disputed issue of material fact as to the first element of their negligence claim: that the Hospital owed a legal duty to plaintiffs. *See Carbajal*, 2015 WL 3765895, at *9; *see also Methodist Hosp. v. German*, 369 S.W. 3d 333, 350 (Tex. App. 2011) (dismissing plaintiff's negligence claim against hospital based on the failure to train nurses because plaintiff failed to produce evidence of the hospital's duty to train).

Moreover, even if plaintiffs had established that the Hospital had the alleged legal duties, plaintiffs have failed to cite expert testimony concerning the applicable standard of care. Expert testimony is required to establish the standard of care where the standard of care is not within the common knowledge of the ordinary juror. *See Fahrenbruch*, 2021 WL 2550533, at *7 (requiring expert testimony to establish standard of care for plaintiff's claim that hospital was directly liable for negligent maintenance of anesthesia devices). However, plaintiffs have cited no expert testimony concerning the standard of care for training staff about medical clearances for incarceration or developing discharge protocols and systems for communicating with the jail. Accordingly, plaintiffs have not raised a genuine issue of disputed fact as to whether the Hospital breached a duty of care by not training its staff about medical clearances for incarceration and discharging patients to jail and by not taking steps to develop discharge protocols for incarcerated patients that consider the lack of medical monitoring at the jail. Therefore, the Court will grant summary judgment on plaintiffs'

medical negligence claim against the Hospital insofar as it is based on the Hospital's failure to adopt policies and procedures.

Plaintiffs do not argue that there is any other basis for their claim for medical negligence against the Hospital.  Therefore, the Court will grant summary judgment on this claim.

## V. CONCLUSION

Therefore, it is

**ORDERED** that Defendant SWMH's Motion for Summary Judgment [Docket No. 104] is **GRANTED**.  It is further

**ORDERED** that plaintiffs' sixth cause of action against the Hospital is **DISMISSED with prejudice**.

DATED March 27, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge