IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-01763-PAB-KAS

ESTATE OF KELROY NEWMAN, by and through putative personal representative,
Bryanne Watts-Lucero, and
J.W., a minor child, by and through friend and mother, Elisa Wilson,

      Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MONTEZUMA,
COLORADO,
SHERIFF STEVEN NOWLIN, individually and in his official capacity,
ZACHARY SUMMERS, individually,
SOUTHWEST HEALTH SYSTEM, INC, d/b/a/ Southwest Memorial Hospital, and
RANDY GENE DAVIDSON, MD, individually,

      Defendants.

---

## ORDER

---

      This matter comes before the Court on Defendant Randy Gene Davidson, M.D.'s

Motion to Strike Plaintiffs' Expert Endorsement of Nizam Peerwani, MDPA Pursuant to

F.R.E. 702 and F.R.E. 403 [Docket No. 108], Defendant SWMH's Motion to Preclude

Irrelevant and Unreliable Expert Opinions Pursuant to F.R.E. 702 [Docket No. 109], and

Defendant Randy Gene Davidson, M.D.'s Motion to Exclude Unqualified Standard of

Care Opinions Pursuant to F.R.E. 702 [Docket No. 110].

## I.      BACKGROUND

      This case concerns the death of Kelroy Newman on July 18, 2021 while Mr.

Newman was in pretrial detention at the Montezuma County Detention Center ("MCDC")

in Colorado.  Docket No. 108 at 2; Docket No. 120 at 2; Docket No. 109 at 2.  This

action is brought by Mr. Newman's estate and his minor child, J.W., against the Board of County Commissioners of Montezuma County, Colorado ("Board of County Commissioners"), Montezuma County Sheriff Steven Nowlin, Montezuma County Sheriff's Deputy Zachary Summers, Randy Gene Davidson, M.D. ("Dr. Davidson"), and Southwest Medical System, Inc., doing business as Southwest Memorial Hospital ("the Hospital").[1]  Docket No. 154 at 4-6, ¶¶ 14-18, 20-24.

Mr. Newman was arrested by the Cortez Police Department on July 17, 2021. Docket No. 120 at 2; *see also* Docket No. 181 at 3.  After his arrest, Mr. Newman was taken to the Hospital to be medically cleared for incarceration at MCDC because he was intoxicated and had facial injuries.  Docket No. 120 at 2; *see also* Docket No. 109 at 2; Docket No. 181 at 3.  At the Hospital, Dr. Davidson, an emergency room physician, conducted a medical screening of Mr. Newman and cleared him for incarceration. Docket No. 109 at 2; Docket No. 110 at 2; Docket No. 120 at 2.  Mr. Newman died at MCDC the following day.  Docket No. 108 at 2; Docket No. 120 at 2.

Plaintiffs' Third Amended Complaint[2] ("the complaint") asserts two claims against Dr. Davidson: claim five— deliberate indifference in violation of the Fourteenth

---

[1] Defendant Andrew Daulton was dismissed from this action.  Docket No. 142.

[2] The motions to exclude expert opinions filed by Dr. Davidson and the Hospital are directed at plaintiffs' First Amended Complaint, *see* Docket No. 109 at 7; Docket No. 110 at 2, which brought one claim against the Hospital and Dr. Davidson, namely, claim three, alleging negligence in operation of a hospital and medical negligence causing wrongful death.  Docket No. 41 at 39-41, ¶¶ 255-66.  Plaintiffs have amended their complaint twice since Dr. Davidson and the Hospital filed the motions to exclude expert opinions.  Docket Nos. 149, 154.  However, in the briefing regarding plaintiffs' motion to amend the complaint, no party argued that the proposed amendments to plaintiffs' complaint would impact the pending motions to exclude expert testimony, *see* Docket Nos. 112, 128, 134, and the parties have not indicated that the motions to exclude expert testimony have been superseded because plaintiffs amended their complaint.

Amendment; and claim six— medical negligence causing wrongful death.  Docket No. 154 at 54-58, ¶¶ 328-355.  The complaint asserts three claims against the Hospital: claim four— deliberate indifference in violation of the Fourteenth Amendment, brought pursuant to 42 U.S.C. § 1983; claim six— medical negligence causing wrongful death; and claim seven— failure to provide an appropriate medical screening examination and to provide required stabilization care and treatment in violation of the Emergency Medical Treatment and Labor Act ("EMTALA"),[3] 42 U.S.C. § 1395dd.  *Id.* at 51-54, 56-61, ¶¶ 312-27, 344-72.  On March 27, 2023, the Court granted summary judgment in favor of the Hospital on claim six.  Docket No. 181 at 15.

Dr. Davidson filed a motion to strike plaintiffs' endorsement of Nizam Peerwani, M.D., Docket No. 108, and a motion to exclude emergency medicine standard of care opinions by Dr. Peerwani, Craig Felty, RN, Lori Roscoe, DNP,[4] and David A. Caruso on the grounds that they are unqualified to make them.[5]  Docket No. 110.  The Hospital filed a motion to exclude opinions of Mr. Felty, Ms. Roscoe, and Mr. Caruso on the basis that they are irrelevant and unreliable.  Docket No. 109.

---

[3] EMTALA requires every hospital with an emergency department to "provide for an appropriate medical screening examination" of any individual who comes to the emergency department if "a request is made on the individual's behalf for examination or treatment for a medical condition."  42 U.S.C. § 1395dd(a).  If the hospital determines that the individual has an emergency medical condition, the hospital "must provide— (A) either within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or (B) for transfer of the individual to another medical facility."  42 U.S.C. § 1395dd(b)(1).

[4] Doctor of Nursing Practice.

[5] Dr. Davidson's motion to exclude unqualified standard of care opinions asks the Court to exclude an opinion by Russell B. Kerbel, M.D., Docket No. 110 at 8-9, but Dr. Davidson's reply withdraws this request.  Docket No. 131 at 2 n.1.

## II.    DR. DAVIDSON'S MOTION TO STRIKE ENDORSEMENT OF DR. PEERWANI

Dr. Davidson moves to strike the endorsement of Dr. Peerwani as a rebuttal expert.  Docket No. 108 at 2.  Dr. Davidson bases his motion on three grounds: (1) plaintiffs' endorsement of Dr. Peerwani violates the scheduling order; (2) Dr. Peerwani's testimony would violate Federal Rule of Evidence 403 because it would be duplicative of other expert testimony proffered by plaintiffs; and (3) plaintiffs' endorsement of Dr. Peerwani was untimely.  *Id.* at 5-8.

### A.  Scheduling Order Violation

The scheduling order entered by Magistrate Judge Kristen Mix on December 2, 2022 limits each party group[6] to "one retained expert per area of expertise."  Docket No. 43 at 17.  Plaintiffs endorsed Russel B. Kerbel, M.D., a hospitalist and internist, to opine on Mr. Newman's cause of death.  Docket No. 108-1 at 5; Docket No. 120 at 3.  Dr. Davidson endorsed Robert C. Bux, M.D., a forensic pathologist; Bryan S. Judge, M.D., a toxicologist and emergency medicine physician; and Adam Z. Barkin, M.D., an emergency physician, to opine on Mr. Newman's cause of death.  Docket No. 108-3 at 2-4; Docket No. 120-3 at 3, 10-14; Docket No. 120-4 at 1, 3, 5.  The Hospital endorsed Noah T. Kaufman, M.D., an emergency medicine physician, to opine on Mr. Newman's cause of death.  Docket No. 120-5 at 16.  The Board of County Commissioners and Sheriff Nowlin endorsed Susan M. Tiona, M.D., a family medicine practitioner, and Stephen Thornton, M.D., an emergency physician, toxicologist, and addiction medicine physician, to opine on Mr. Newman's cause of death.  Docket No. 120-8 at 2, 12-13,

---

[6] The scheduling order indicates that plaintiffs are a "party group."  Docket No. 43 at 17.

4

¶¶ 32-34; Docket No. 120-7 at 1, 5-7, ¶¶ 2-4.  Plaintiffs endorsed Dr. Peerwani, a forensic pathologist, as a rebuttal expert to opine on Mr. Newman's cause of death. Docket No. 108-7 at 1.

Dr. Davidson claims that, in the scheduling order, plaintiffs indicated that they would endorse a forensic pathologist to opine on the cause of Mr. Newman's death, but instead endorsed Dr. Kerbel, a hospitalist and internist.  Docket No. 108 at 5-6.  After Dr. Davidson endorsed Dr. Bux to offer opinions on the cause of death, plaintiffs submitted a supplemental report from Dr. Kerbel rebutting Dr. Bux's opinion, Docket No. 108-6, which Dr. Davidson claims closed "the loop on causation."  Docket No. 108 at 6. Finally, Dr. Davidson argues Dr. Peerwani's report is duplicative of Dr. Kerbel's report. *Id.* at 5-7.  Thus, Dr. Davidson appears to argue that, given plaintiffs' endorsement of Dr. Kerbel and filing of a supplemental report by Dr. Kerbel in response to Dr. Bux's report, plaintiffs did not need to endorse Dr. Peerwani as a rebuttal expert.  However, Dr. Davidson does not explain how the series of actions by plaintiffs that he describes— plaintiffs' initial indication that they would endorse a forensic pathologist, plaintiffs' endorsement of Dr. Kerbel, the submission of Dr. Kerbel's supplemental report, and the endorsement of Dr. Peerwani as a rebuttal expert—violates the scheduling order.

The Court rejects Dr. Davidson's argument that plaintiffs' endorsement of Dr. Peerwani as a rebuttal expert violates the scheduling order.  First, the fact that plaintiffs at one time anticipated endorsing a forensic pathologist, but instead endorsed an internist and hospitalist, does not violate the scheduling order.  As plaintiffs note, they merely needed to disclose an expert whose testimony would make out a prima facie case that alcohol withdrawal caused Mr. Newman's death.  Docket No. 120 at 6.

Endorsing Dr. Kerbel satisfied this requirement.  Second, Dr. Davidson confuses Judge Mix's order limiting each party group to one expert per *area of expertise* with a limitation of one expert per *subject matter*.  As an internist and hospitalist, Dr. Kerbel has a different area of expertise than Dr. Peerwani, who is a forensic pathologist.  *See* Docket No. 108-1 at 5; Docket No. 108-7 at 1.  Thus, plaintiffs' endorsement of Dr. Peerwani does not violate the portion of the scheduling order limiting plaintiffs to one expert per area of expertise.  Third, Dr. Davidson endorsed Dr. Bux, a forensic pathologist, to opine on the cause of Mr. Newman's death.  Docket No. 108-3 at 2-4.  It is appropriate and permissible for plaintiffs to endorse their own forensic pathologist to rebut Dr. Bux's opinion.  The fact that Dr. Kerbel and Dr. Peerwani may share the opinion that Mr. Newman died of alcohol withdrawal does not equate with their opinions being duplicative since each has a different area of expertise.  Accordingly, the Court finds that plaintiffs did not violate the scheduling order by endorsing Dr. Peerwani as a rebuttal expert.

### B. Cumulativeness of Dr. Peerwani's Testimony

Dr. Davidson argues that the Court should "strike Dr. Peerwani's report as cumulative" pursuant to Federal Rule of Evidence 403.  Docket No. 108 at 8.  Under Rule 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Dr. Davidson claims that, because both Dr. Peerwani and Dr. Kerbel "are endorsed to opine that Mr. Newman likely exhibited signs of alcohol withdrawal while incarcerated, that his death was due to acute alcohol withdrawal, and that the autopsy report authored by the Montezuma County coroner was inaccurate and/or incomplete," Dr. Peerwani's opinions are cumulative of Dr. Kerbel's opinions.  Docket No. 108 at 6-7.

According to Dr. Davidson, "Plaintiffs were required to endorse an expert to meet their burden of proof on causation and chose Dr. Kerbel to meet this burden. They cannot be allowed an additional duplicative expert." *Id.* at 7. However, as discussed above, the scheduling order limited plaintiffs to endorsing one expert per *area of expertise*, not one expert per *subject matter*. *See* Docket No. 43 at 17. Dr. Davidson cites no authority indicating that, under Rule 403, a party may not endorse experts with different areas of expertise to testify on the same subject matter, such as the cause of death, particularly where one expert was endorsed as a rebuttal expert. The Court finds that Dr. Davidson's argument that Dr. Peerwani's opinions will be cumulative of those offered by Dr. Kerbel is not a sufficient basis to strike the endorsement of Dr. Peerwani.

### C.  Timeliness of Disclosure of Dr. Peerwani's Report

On June 12, 2023, Judge Mix set an August 4, 2023 deadline to disclose rebuttal experts. Docket No. 98 at 2. On August 1, 2023, plaintiffs' counsel sent an email to Dr. Davidson's counsel stating that plaintiffs would file their expert rebuttal disclosures on Friday, August 4, 2023, with the exception of Dr. Peerwani's report, which plaintiffs would disclose by the end of the day on Monday, August 7, 2023. Docket No. 108-4. Plaintiffs disclosed Dr. Peerwani's CV, testimony history, and fee schedule on August 4, 2023, and disclosed Dr. Peerwani's expert report on August 7, 2023. Docket No. 108 at 5; Docket No. 120 at 13. Plaintiffs did not file a motion to extend the deadline to disclose rebuttal experts.

Dr. Davidson argues that the "violation of the Court's schedule should result in Dr. Peerwani's exclusion at trial." Docket No. 108 at 8. Federal Rule of Civil Procedure 37 states that, if "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply

7

evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The Tenth Circuit outlined four factors in *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir. 1999), that courts should consider in determining whether a Rule 26 violation is substantially justified or harmless: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  *Woodworker's Supply*, 170 F.3d at 993.  The Tenth Circuit has held that the "decision to exclude evidence is a drastic sanction."  *Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997) (citation omitted).

Dr. Davidson fails to address the *Woodworkers Supply* factors.  Dr. Davidson "acknowledges that the one-day delay did not cause prejudice," Docket No. 132 at 6, and does not argue that the delay was willful or in bad faith.[7]  Furthermore, trial has not yet been set in this case.  Therefore, the Court finds that the *Woodworker's Supply* factors weigh against excluding Dr. Peerwani's testimony.  *See Woodworker's Supply,* 170 F.3d at 993; *see also McAdoo v. ITT Educ. Servs., Inc.,* No. 10-cv-01727-LTB-KLM, 2011 WL 2198568, at *2 n.2 (D. Colo. June 6, 2011) (holding that, although the significance of Fed. R. Civ. P. 26 errors is ordinarily assessed using the *Woodworker's*

---

[7] Dr. Davidson notes that, on June 12, 2023, the Court warned the parties that they may not informally agree to the amendment of deadlines in a scheduling order after plaintiffs attempted to do so.  Docket No. 108 at 3; *see* Docket No. 98 at 1.  As a result, Dr. Davidson characterizes plaintiffs' delay in disclosing Dr. Peerwani's report as a "repeated violation of the Court's schedule."  Docket No. 108 at 8.  However, Dr. Davidson stops short of arguing that the untimely disclosure of the report was willful or in bad faith.  Given Dr. Davidson's delay in sending the autopsy slides to Dr. Peerwani, this is understandable.

*Supply* factors, "Defendant's lack of prejudice clearly weighs against striking the expert and obviates the necessity to balance the remaining factors").  The Court finds that the one-day delay in disclosing Dr. Peerwani's report is not a sufficient basis to strike the endorsement of Dr. Peerwani.  *See McAdoo,* 2011 WL 2198568, at *2 (declining to strike expert where defendant received plaintiff's expert disclosures one business day after they were due and defendant did not assert that prejudice resulted from the delay).  The Court will deny Dr. Davidson's motion to strike the endorsement of Dr. Peerwani.

### III.    DR. DAVIDSON'S MOTION TO EXCLUDE UNQUALIFIED STANDARD OF CARE OPINIONS OF DR. PEERWANI, MR. FELTY, MS. ROSCOE, AND MR. CARUSO

Dr. Davidson moves to exclude "emergency medicine standard of care" opinions by Dr. Peerwani, Mr. Felty, Ms. Roscoe, and Mr. Caruso.  Docket No. 110 at 1-2.  Plaintiffs bring a negligence claim against Dr. Davidson under Colorado state law.  Docket No. 154 at 56-58, ¶¶ 344-355.  One element of this claim is that Dr. Davidson breached the standard of care when treating Mr. Newman.  *See Carbajal v. St. Anthony Cent. Hosp.,* No. 12-cv-02257-REB-KLM, 2015 WL 3765895, at *9 (D. Colo. Apr. 7, 2015) (citing *Settle v. Basinger,* 411 P.3d 717, 726 (Colo. App. 2013)*), recommendation adopted,* 2015 WL 3896902 (D. Colo. Jun. 23, 2015) (stating that the elements of a medical negligence claim are "that the defendant owed a legal duty to the plaintiff, that the defendant breached that duty, and that the breach of duty caused the harm that resulted in the alleged damages").  Dr. Davidson argues that, under Colorado law,[8] only a licensed physician who is familiar with the emergency medicine standard of care may offer opinions regarding the standard of care applicable to emergency medicine

---

[8] Plaintiffs do not dispute that Colo. Rev. Stat. § 13-64-401 applies to this case.

physicians and whether Dr. Davidson met that standard of care when treating Mr.
Newman.  Docket No. 110 at 4, 10-12.  Therefore, Dr. Davidson argues that Mr. Felty,
Ms. Roscoe, and Mr. Caruso may not offer emergency medicine standard of care
opinions because they are not physicians and that Dr. Peerwani may not offer such an
opinion because he "has no familiarity with the emergency medicine standard of care."
*Id.* at 10-12.

Dr. Davidson styles the motion to exclude "emergency medicine standard of
care" opinions by Dr. Peerwani, Mr. Felty, Ms. Roscoe, and Mr. Caruso as a motion
pursuant to Federal Rule of Evidence 702, *see id.* at 1, but the admissibility of the
opinions that Dr. Davidson challenges does not turn on whether the opinions of Dr.
Peerwani, Mr. Felty, Ms. Roscoe, and Mr. Caruso satisfy Rule 702.  While Federal Rule
of Evidence 702 governs the admissibility of expert testimony in diversity cases, *Sims v.
Great Am. Life Ins. Co.*, 469 F.3d 870, 883 (10th Cir. 2006), a witness's competency to
testify regarding a substantive issue, such as the medical standard of care, is dictated
by state law.  *See McDowell v. Brown*, 392 F.3d 1283, 1295 (11th Cir. 2004); *see also*
Fed. R. Evid. 601 ("in a civil case, state law governs the witness's competency
regarding a claim or defense for which state law supplies the rule of decision.").  Under
Colorado law:

> No person shall be qualified to testify as an expert witness concerning
> issues of negligence in any medical malpractice action or proceeding
> against a physician unless he not only is a licensed physician but can
> demonstrate by competent evidence that, as a result of training, education,
> knowledge, and experience in the evaluation, diagnosis, and treatment of
> the disease or injury which is the subject matter of the action or proceeding
> against the physician defendant, he was substantially familiar with
> applicable standards of care and practice as they relate to the act or
> omission which is the subject of the claim on the date of the incident.  The
> court shall not permit an expert in one medical subspecialty to testify against

a physician in another medical subspecialty unless, in addition to such a showing of substantial familiarity, there is a showing that the standards of care and practice in the two fields are similar.

Colo. Rev. Stat. § 13-64-401.

### A. Opinions of Dr. Peerwani

Dr. Davidson argues that, although Dr. Peerwani is a physician, he may not opine on the emergency medicine standard of care because he does not have familiarity with the emergency medicine standard of care.  Docket No. 110 at 12.  Dr. Davidson seeks to exclude three opinions of Dr. Peerwani on this basis:

- [T]here were no baseline studies performed by Dr. Davidson.
- Dr. Davidson did not perform antemortem blood alcohol test or and drug screens; hence, there was no determination in the ER whether NEWMAN was in ethanol absorptive with rising blood alcohol level or whether he was in the degradation phase.
- I agree with Dr. Kerbel that to a reasonable degree of medical certainty, NEWMAN would not have died had he been maintained in the hospital for monitored detox or if the deputies at [MCDC] had been trained to evaluate for alcohol withdrawal or detox, or if they brought NEWMAN back at [the Hospital] for treatment when he asked on the morning of 07-18-2021. Medically competent evaluation would more likely than not have revealed clinical signs of acute alcohol withdrawal and allowed for treatment.  I disagree with Dr. Judge [sic] testimony that it would not have mattered if he were admitted to the hospital and Dr. Bux's opinion that there is not enough information to form an opinion as to the cause of death.

*Id.* at 9, 12; *see* Docket No. 108-7 at 4, 10, 13, ¶ 6.

Plaintiffs argue that Dr. Peerwani's first and second "opinions," that Dr. Davidson did not perform baseline studies or antemortem blood alcohol test or drug screens, are not standard of care opinions, but rather are "merely factual recitations of the reading of the record."  Docket No. 122-1 at 7.  Dr. Davidson responds that "the statements about what testing should have been performed in the emergency department [and] what that testing would have showed . . . convey clear criticisms of Dr. Davidson's conduct as an

emergency medicine physician." Docket No. 131 at 3. The Court agrees with plaintiffs. Dr. Peerwani's statements concerning baseline studies, drug screens, and an antemortem blood alcohol test are factual statements based on Dr. Peerwani's reading of the records of Mr. Newman's hospital visit, not opinions concerning the emergency medicine standard of care. Therefore, the Court will not exclude Dr. Peerwani's first and second statements since they are not opinions and not statements about the standard of care.

Plaintiffs argue that Dr. Peerwani's third opinion, that Mr. Newman would not have died had he been maintained in the Hospital, had the deputies at MCDC been trained to evaluate for alcohol withdrawal or detox, or had he been brought back to the Hospital for treatment, "is also not a standard of care opinion; it instead relates to causation." Docket No. 122-1 at 7. Plaintiffs state that Dr. Peerwani "does not opine that Dr. Davidson *should have* maintained him at the hospital, or that the deputies *should have* brought him back, which would be standard of care opinions. Instead, he opines that Mr. Newman would not have died had he been in a position to receive medical care for alcohol withdrawal before his death." *Id.* at 7-8. Dr. Davidson argues that Dr. Peerwani's statements about "whether the emergency physician's evaluation was 'medically competent' . . . convey clear criticisms of Dr. Davidson's conduct as an emergency medicine physician." Docket No. 131 at 3. The Court agrees. Although Dr. Peerwani does not opine on whether Dr. Davidson's evaluation was medically competent, that is implied. Moreover, Dr. Peerwani, who is not an emergency physician, is not qualified to opine on what a "medically competent evaluation," *see* Docket No. 108-7 at 13, ¶ 6, consists of. Therefore, other than the sentence about a

"medically competent evaluation," the Court finds that Dr. Peerwani's third opinion is not an emergency medicine standard of care opinion and Dr. Peerwani is not required to be qualified to opine on the emergency medicine standard of care in order to testify about it.  The Court will not exclude Dr. Peerwani's third opinion except as noted.

### B.  Opinions of Mr. Felty

Mr. Felty is a registered nurse and an expert in emergency room nursing and hospital administration.  Docket No. 124-1 at 4; Docket No. 110-1 at 1.  Plaintiffs retained Mr. Felty to "review the actions, policies, procedures, and practices of [the Hospital], by and through its clinical and administrative staff, as well as the conduct of Nurse Gaddis, to evaluate the care rendered to Kelroy Newman and the systems utilized by the hospital to clear intoxicated inmates for incarceration."  Docket No. 110-1 at 1.

Dr. Davidson argues that Mr. Felty is not qualified to opine on the emergency medicine standard of care because he is not a physician.  Docket No. 110 at 4-5, 10-11.  Mr. Felty's report states that "the standard of care was breached by hospital leadership and nursing staff" at the Hospital and enumerates the ways in which he believes the standard of care was breached.  Docket No. 110-1 at 5-6.  Dr. Davidson asks the Court to exclude four of Mr. Felty's opinions:

- Failure to provide Kelroy Newman with a comprehensive Medical Screening exam, including nursing assessment, to rule out an emergency medical condition by not assessing and appropriately treating his alcohol intake status, head and facial trauma, and history of substance abuse. This is evidenced by Drs. Fowler and Davidson's testimony that it is never their practice to screen for BAC or alcohol withdrawal or consider that when clearing for intoxication for release to jail.  Considering that this is the practice of two of [the Hospital's] ED Physicians, it is reasonable to opine that these practices are accepted and consistent with the screening and EMTALA practices of [the Hospital] related to incarcerated patients being medically cleared for jail.

13

- Such practice is evidence of a conscious disregard of the risk and safety of this subset of patients.
- Failure to conduct a comprehensive medical screening exam as required by EMTALA placed Kelroy Newman in a dangerous situation when he was discharged to jail without treatment for his alcohol intoxication, head and facial trauma, and lack of assessment for potential alcohol withdrawal.
- Failure to provide comprehensive individually tailored discharge instructions to Kelroy Newman and his correctional care givers regarding his conditions and injuries that would need to be assessed and monitored while he was incarcerated.  These instructions should have included information to watch for in Mr. Newman related to his acute alcohol intoxication, head and facial trauma, and high potential for alcohol withdrawal . . .

Docket No. 110 at 5; *see* Docket No. 110-1 at 5-6.

Dr. Davidson argues that Mr. Felty's opinions regarding Dr. Davidson's pre-incarceration medical screening of Mr. Newman must be excluded because "only a physician can offer standard of care opinions against a licensed physician" and Mr. Felty therefore "lack[s] the required credentials."  Docket No. 110 at 10-11.  Plaintiffs do not claim that Mr. Felty is qualified to opine on the standard of care for an emergency room doctor.[9]  Instead, they argue that Mr. Felty's opinions are offered against the Hospital, not Dr. Davidson.[10]  Docket No. 122-1 at 11.  Plaintiffs argue that "Medical Screening Exams are part of a hospital's obligation under EMTALA" and, although Dr. Davidson "performed the medical portion of the exam," the Hospital nevertheless "has a duty to set procedures and protocols to ensure an adequate screening exam is conducted."  *Id.* at 12-13; *see* 42 U.S.C. § 1395dd(a) ("In the case of a hospital that has

---

[9] Plaintiffs state that they endorsed a different expert, Dr. Becker, as an emergency room doctor expert to opine on the violation of the emergency medicine standard of care by Dr. Davidson.  Docket No. 122-1 at 13.

[10] In his trial testimony, Mr. Felty should make this limitation on his testimony clear.

a hospital emergency department, if any individual . . . comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination. . . to determine whether or not an emergency medical condition . . . exists.").

Dr. Davidson responds that "a review of [Mr. Felty's] opinions demonstrates that he is actually criticizing Dr. Davidson's medical clearance examination."  Docket No. 131 at 4.  While he concedes that "Mr. Felty can criticize hospital policies and can testify that there was an EMTALA breach," Dr. Davidson maintains that Mr. Felty "cannot opine on the ultimate question of whether Dr. Davidson performed a reasonable medical examination or whether he should have acted differently under the circumstances." *Id.* at 5.

Mr. Felty's first opinion states that the Hospital leadership and nursing staff failed to "provide Kelroy Newman with a comprehensive Medical Screening exam, including nursing assessment," which Mr. Felty believes is "accepted and consistent with the screening and EMTALA practices of [the Hospital] related to incarcerated patients being medically cleared for jail," as evidenced by testimony from two physicians, including Dr. Davidson.  Docket No. 110-1 at 5.  Thus, Mr. Felty's first opinion discusses the Hospital's practice.  Mr. Felty cites the testimony of Dr. Davidson in order to establish the Hospital's practice, *see id.*, but this citation is a fact, not an opinion regarding Dr. Davidson's standard of care.  Although Mr. Felty states that the examination that Mr. Newman received at the Hospital was not comprehensive, this criticism does not convert the opinion into an opinion that Dr. Davidson breached the standard of care in

his treatment of Mr. Newman in the emergency room.  Rather, Mr. Felty's opinion is that Mr. Newman was not provided a "comprehensive Medical Screening exam" and that, based on physician testimony, failing to screen patients for BAC or alcohol withdrawal was accepted and consistent with the Hospital's practices.  This opinion goes to plaintiffs' EMTALA and § 1983 claims against the Hospital, not plaintiffs' negligence claim against Dr. Davidson.[11]  Because the opinion does not offer an opinion regarding Dr. Davidson's standard of care and because Dr. Davidson concedes that Mr. Felty is qualified to opine on hospital policy, the Court will not exclude this opinion.

Mr. Felty's second opinion states that "[s]uch practice is evidence of a conscious disregard of the risk and safety of this subset of patients."  *Id.*  "Such practice" refers to the Hospital's practice not to provide incarcerated patients with a comprehensive medical screening exam.  The Court will not exclude Mr. Felty's second opinion for the same reason it declined to exclude the first one—Mr. Felty's opinions about screening examinations performed at the Hospital are offered against the Hospital, not Dr. Davidson.

Mr. Felty's third opinion, describing an alleged failure to "conduct a comprehensive medical screening exam as required by EMTALA," *id.*, is also an opinion offered against the Hospital, not Dr. Davidson, since Mr. Felty opines that EMTALA requires hospitals to provide medical screening exams.  *See* 42 U.S.C. § 1395dd(a). The Court will decline to exclude this opinion.

---

[11] This interpretation is supported by Mr. Felty's capitalization of "Medical Screening exam."  *See* Docket No. 110-1 at 5.  Earlier in the report, Mr. Felty defined "Medical Screening Exam" by describing the assessments that hospitals are required to offer emergency room patients under EMTALA.  *See id.* at 4 n.3 (quoting an "EMTALA Quick Sheet" produced by the Healthcare Compliance Association).

Mr. Felty's fourth opinion concerns the failure to "provide comprehensive individually tailored discharge instructions to Kelroy Newman and his correctional care givers."  Docket No. 110-1 at 6.  Like the other three opinions, Mr. Felty describes this failure in the context of what hospital leadership and nursing staff at the Hospital were required to do, not in terms of how Dr. Davidson breached his standard of care.  *Id.* at 5. Therefore, the Court will decline to exclude this opinion.

### C.  <u>Opinions of Ms. Roscoe</u>

Ms. Roscoe is an Advanced Practice Registered Nurse and a certified Adult Nurse Practitioner with experience in correctional healthcare.  Docket No. 110-4 at 1. Plaintiffs retained Ms. Roscoe to render opinions regarding the care and treatment of Mr. Newman while he was incarcerated at MCDC.  *Id.*

Dr. Davidson argues that Ms. Roscoe is not qualified to opine on the emergency medicine standard of care, but is nevertheless "endorsed to offer the following opinions regarding or implicating Dr. Davidson's pre-incarceration medical screening and medical causation."  Docket No. 110 at 5-7, 10-11.  Dr. Davidson asks the Court to exclude three[12] opinions of Ms. Roscoe:

- Dr. Davidson didn't think the jail employed any doctors or mid-level providers at that time. He didn't think the jail had a medical unit or a detox center and he knew that [the Hospital] was where the jail brought people who needed care, including medical clearance for acceptance into the Detection Center, for the incarcerated individuals there.  Thus, the nurses and providers at [the Hospital] had responsibility for the safety of Mr. Newman, and all the incarcerated persons at the [MCDC].  At a minimum, this included developing a treatment plan that considered the current and potential needs of the patient.[13]

---

[12] Dr. Davidson's motion seeks to exclude five opinions of Ms. Roscoe.  Docket No. 110 at 6-7.  However, plaintiffs have withdrawn two of these opinions.  *Id.* at 6 nn. 2-3.

[13] Plaintiffs have withdrawn the last sentence of this opinion.  Docket No. 110 at 7 n.4; Docket No. 124-1 at 11 n.8.  The Court has omitted the withdrawn sentence.

- If a provider had been called regarding Mr. Newman's ongoing and worsening signs and symptoms, more likely than not he would have been sent to the emergency department for further testing, diagnosis, and treatment.
- While the County has an arrangement to have initial clearances and orders done at the hospital, in 2021 the hospital was treating those as cursory and not providing the county with the information it needed to safely house intoxicated inmates without medical staff on the nights and weekends.  The practice of having no meaningful assessment of intoxicated incarcerated persons for their risk of withdrawal deviated substantially from the applicable standard of care and put the lives and safety of alcohol dependent incarcerated individuals at serious risk of harm.

*Id.* at 6-7; *see* Docket No. 110-4 at 6-7, 10-11.

Like Mr. Felty, Ms. Roscoe is not a licensed physician.  Dr. Davidson argues that Ms. Roscoe's opinions must be excluded because she is not a physician and is unqualified to offer standard of care opinions against a physician.  Docket No. 110 at 10-11.  Plaintiffs respond that Ms. Roscoe "is not offered here as a standard of care expert against Dr. Davidson.  Rather, her testimony is offered in correctional medicine and concerns what type of intake screening and treatment planning must be done to manage inmates at the beginning of their incarceration, including what type of evaluation and monitoring must be done related to intoxication and withdrawal."  Docket No. 122-1 at 8.

The initial portion of Ms. Roscoe's first opinion states that "Dr. Davidson didn't think the jail employed any doctors or mid-level providers at that time.  He didn't think the jail had a medical unit or a detox center and he knew that [the Hospital] was where the jail brought people who needed care, including medical clearance for acceptance into the Detention Center, for the incarcerated individuals there."  Docket No. 110-4 at 6-7.  Plaintiffs claim that this is a factual recitation, which characterization Dr. Davidson does not contest.  The second portion of this opinion states that the "providers at [the

Hospital] had responsibility for the safety of Mr. Newman, and all the incarcerated persons at the [MCDC].  At a minimum, this included developing a treatment plan that considered the current and potential needs of the patient."  *Id.*  Plaintiffs argue that this opinion "concern[s] what medical clearances for incarceration (which can be done on site at jails or in hospitals) must include in order to safely house inmates in a jail," not the emergency medicine standard of care.  Docket No. 122-1 at 9.  Dr. Davidson responds that the "fact that non-physicians may perform medical clearance examinations in other situations is irrelevant because the examination in this case was performed by an emergency medicine physician."  Docket No. 131 at 3-4.  The Court finds that Ms. Roscoe's opinion that "providers" at the Hospital were responsible for developing a treatment plan for Mr. Newman is an opinion on the standard of care required of Dr. Davidson when he treated Mr. Newman.  The Court will exclude this opinion, as it relates to providers such as Dr. Davidson, because Ms. Roscoe is not a physician and is therefore unqualified to provide this testimony under Colorado law. *See* Colo. Rev. Stat. § 13-64-401.

Plaintiffs argue that Ms. Roscoe's second opinion should not be excluded because the opinion "concerns MCDC deputies' failure to contact a provider regarding Mr. Newman's worsening signs and symptoms" and "does not relate to emergency medicine or Dr. Davidson in any way."  Docket No. 122-1 at 10.  The Court agrees.  Ms. Roscoe's opinion that, "[i]f a provider had been called regarding Mr. Newman's ongoing and worsening signs and symptoms, more likely than not he would have been sent to the emergency department," Docket No. 110-4 at 10, is an opinion about what would have happened if MCDC authorities had contacted a medical provider on the morning

19

that Mr. Newman died, not an opinion as to the emergency medicine standard of care.[14] Therefore, the Court will not exclude this opinion.

Plaintiffs argue that Ms. Roscoe's third opinion is "aimed at the County's unconstitutional practice of having no in-house medical care, no in-house ability to plan for weekend monitoring of acute conditions such as withdrawal, and having not obtained from the hospital a treatment plan for inmates at risk from evolving conditions, about which NP Roscoe is clearly qualified to render opinions."  Docket No. 122-1 at 9. However, Ms. Roscoe opines that the Hospital treated initial clearances as "cursory" and that it did not "provid[e] the county with the information it needed," and that there was "no meaningful assessment of intoxicated incarcerated persons," but does not opine that Board of County Commissioners knew or should have known about these alleged deficiencies.  *See* Docket No. 110-4 at 10.  Dr. Davidson argues that "Ms. Roscoe cannot comment on Dr. Davidson's examination of Mr. Newman and allowing the opinion that there was 'no meaningful assessment' of Mr. Newman is therefore improper."  Docket No. 131 at 4.  It is not clear from Ms. Roscoe's report, and plaintiffs do not explain, whether Ms. Roscoe's opinion that the "practice of having no meaningful assessment of intoxicated incarcerated persons for their risk of withdrawal deviated substantially from the applicable standard of care" refers to the standard of care of physicians conducting clearances at the Hospital.  *See* Docket No. 110-4 at 10. However, when read in context, it appears that Ms. Roscoe's opinion that "the practice of having no meaningful assessment of intoxicated incarcerated persons for their risk of withdrawal deviated substantially from the applicable standard of care" is an opinion that

---

[14] Ms. Roscoe should make that time period clear in her testimony.

the persons, including Dr. Davidson, conducting the assessments of intoxicated incarcerated individuals deviated from the emergency medicine standard of care.  The Court will therefore exclude this opinion on the basis that Ms. Roscoe is not a physician and is therefore unqualified to provide this testimony under Colorado law.  *See* Colo. Rev. Stat. § 13-64-401.

### D.  Opinions of Mr. Caruso

Mr. Caruso is a consultant concerning correctional and jail issues.  Docket No. 110-6 at 2, ¶ 1.  Plaintiffs state that he is an "expert in correctional practices and jail administration."  Docket No. 122-1 at 4.  Mr. Caruso does not claim to have medical training.  Dr. Davidson argues that Mr. Caruso is not qualified to opine on the emergency medicine standard of care and causation.  Docket No. 110 at 7-8, 10-11. Dr. Davidson asks the Court to exclude two[15] opinions of Mr. Caruso:

- Hospital staff failed to provide any documentation for further care for Mr. Newman by jail staff or fail [sic] medical staff upon his return to [MCDC].
- It is my professional opinion . . . that the [MCDC] has entered into an agreement or understanding with the local hospital for clearances and treatment, but allows the hospital to "clear" inmates in a conclusory manner without sending any of the necessary recommendations to the jail, including frequency of checks, medications, and patient specific signs and symptoms to watch for which was an especially dangerous practice when combined with the lack of medical staff, training, and equipment at the jail on nights and weekends.

*Id.* at 8; *see* Docket No. 110-6 at 10, 15, ¶¶ 44, 70.

Dr. Davidson argues that, because only physicians may offer standard of care opinions against other physicians, Mr. Caruso's opinions regarding Dr. Davidson's pre-incarceration medical screening of Mr. Newman must be excluded.  Docket No. 110 at

---

[15] Dr. Davidson's motion seeks to exclude three opinions of Mr. Caruso.  Docket No. 110 at 7-8.  However, plaintiffs have withdrawn one of these opinions.  *Id.* at 8 n.5.

10-11.  Dr. Davidson further argues that "Mr. Caruso's statements that these examinations are performed in a 'conclusory' manner and that 'necessary recommendations' are not provided to the jail directly implicate the emergency medicine standard of care."  Docket No. 131 at 2.  Plaintiffs respond that Mr. Caruso does not offer standard of care opinions about emergency room physicians.  Docket No. 122-1 at 4.  They claim that Mr. Caruso "properly gives opinions about medical clearances for incarceration and the duty of the County to obtain adequate clearances and instructions in order to safely manage and house intoxicated inmates."  *Id.* at 5.

The first opinion of Mr. Caruso is not an expert opinion, but a factual recitation. The Court will not exclude it, provided that it is relevant to one of his opinions.  As to the second opinion, the Court finds that Mr. Caruso can property testify about the existence of an agreement between the Hospital and MCDC regarding clearances, but the remainder of his opinion exceeds his qualifications under Rule 702 based on his lack of medical training.  *See* Fed. R. Evid. 702 (allowing expert testimony by a witness who is "qualified as an expert by knowledge, skill, experience, training, or education"); *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022) (holding that the Court has "an important gatekeeping function with regard to the admissibility of expert opinions," which includes determining whether experts are qualified under Rule 702).  Therefore, such opinions will be excluded.

## IV.  THE HOSPITAL'S MOTION TO EXCLUDE OPINIONS OF MR. FELTY, MS. ROSCOE, AND MR. CARUSO

### A.  The Hospital's Arguments Concerning Negligence Claim

The Hospital argues that the expert opinions of Mr. Felty, Ms. Roscoe, and Mr. Caruso are irrelevant and unreliable insofar as those opinions are contrary to the

corporate practice of medicine doctrine.  Docket No. 109 at 7-8.  The Hospital claims

that, because the corporate practice of medicine shields hospitals from vicarious liability

for the negligent acts of their physician employees, *see Kellner v. Schultz,* 937 F. Supp.

2d 1319, 1326 (D. Colo. 2013) (applying Colorado law), the expert opinions "criticizing

the hospital as related to Dr. Davidson's medical screening exam are irrelevant and

unreliable."  Docket No. 109 at 7.  On March 27, 2023, the Court granted summary

judgment in favor of the Hospital on plaintiffs' state law negligence claim.  Docket No.

181 at 15.  Therefore, the Hospital's argument that the expert opinions of Mr. Felty, Ms.

Roscoe, and Mr. Caruso are irrelevant and unreliable because the Hospital is shielded

from vicarious liability for Dr. Davidson's negligence is moot.

 The Hospital asks the Court to exclude the opinions of Mr. Caruso on the basis

that he is unqualified to opine on the hospital or nursing standard of care, which renders

his opinions on this subject unreliable and irrelevant to plaintiffs' negligence claim.

Docket No. 109 at 9-10.  Because the Court granted summary judgment in the

Hospital's favor on plaintiffs' state law negligence claim, Docket No. 181 at 15, this

argument is also moot.

 The Hospital argues that the Court should exclude expert opinions of Mr. Felty,

Ms. Roscoe, and Mr. Caruso that nurses practice medicine because such opinions are

contrary to the Medical Practice Act, Colo. Rev. Stat. § 12-240-107.  Docket No. 109 at

8-9.  Because the conduct of nurses is relevant to plaintiffs' remaining claims against

the Hospital under § 1983 and EMTALA, *see* Docket No. 154 at 51-54, 58-61, ¶¶ 312-

327, 356-372, this argument is not moot.  The Court will discuss below the Hospital's

argument concerning the Medical Practice Act as it pertains to the opinions of Mr. Felty, Ms. Roscoe, and Mr. Caruso.

### B.  The Hospital's Arguments Concerning the Medical Practice Act

The Hospital claims that Mr. Felty, Ms. Roscoe, and Mr. Caruso are "endorsed to offer opinions that nurses practice medicine which is contrary to the Medical Practice [A]ct."  Docket No. 109 at 3-5.  The only portion of the Medical Practice Act cited by the Hospital, sub-section (1)(a), states that the "practice of medicine" means:

> Holding out one's self to the public within this state as being able to diagnose, treat, prescribe for, palliate, or prevent any human disease; ailment; pain; injury; deformity; physical condition; or behavioral, mental health, or substance use disorder, whether by the use of drugs, surgery, manipulation, electricity, telemedicine, the interpretation of tests, including primary diagnosis of pathology specimens, images, or photographs, or any physical, mechanical, or other means whatsoever.

Colo. Rev. Stat. § 12-240-107(1)(a).  The Hospital identifies multiple opinions of Mr. Felty, Ms. Roscoe, and Mr. Caruso that it argues should be excluded, *see* Docket No. 109 at 3-5, but it does not explain why those opinions are contrary to sub-section (1)(a) of the Medical Practice Act.  Instead, the Hospital merely claims that, "[s]ince the Medical Practice Act prohibits registered nurses from practicing medicine the expert opinions of Nurse Felty, Nurse Practitioner Roscoe and David Caruso to the contrary are irrelevant and unreliable."  *Id.* at 9.  It is not sufficient for the Hospital to identify opinions it wishes the Court to exclude and cite a sub-section of the Medical Practice Act without explaining why those opinions contravene the cited sub-section of the statute.  *See Elide Fire USA, Corp. v. Auto Fire Guard, LLC*, No. 21-cv-00943-WJM-KLM, 2022 WL 18777076, at *3 (D. Colo. Nov. 17, 2022) (holding that a court "is not required to consider arguments inadequately presented") (citing *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007)); *United States v. Wooten*, 377 F.3d 1134, 1145

(10th Cir. 2004) ("The court will not consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.") (citation omitted); *Ensey v. Ozzie's Pipeline Padder, Inc.*, 2010 WL 11523525, at *2 n.3 (D.N.M. Apr. 29, 2010) ("While it is certainly the Court's job to research carefully the legal issues properly presented by the parties, it is not the Court's function to do counsel's work for them"); *Flores v. Astrue*, 246 F. App'x 540, 543 (10th Cir. 2007) (unpublished) (declining to reach the merits of an argument when the party failed to cite any authority and "expect[ed] the court to do its research").  The Court will deny the Hospital's motion.

## V.    CONCLUSION

Therefore, it is

**ORDERED** that Defendant Randy Gene Davidson, M.D.'s Motion to Strike Plaintiffs' Expert Endorsement of Nizam Peerwani, MDPA Pursuant to F.R.E. 702 and F.R.E. 403 [Docket No. 108] is **DENIED**.  It is further

**ORDERED** that Defendant SWMH's Motion to Preclude Irrelevant and Unreliable Expert Opinions Pursuant to F.R.E. 702 [Docket No. 109] is **DENIED**.  It is further

**ORDERED** that Defendant Randy Gene Davidson, M.D.'s Motion to Exclude Unqualified Standard of Care Opinions Pursuant to F.R.E. 702 [Docket No. 110] is **GRANTED in part** and **DENIED in part**.

DATED August 28, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge