IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-01763-PAB-KAS

ESTATE OF KELROY NEWMAN, by and through putative personal representative, Bryanne Watts-Lucero, and
J.W., a minor child, by and through friend and mother, Elisa Wilson,

    Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MONTEZUMA, COLORADO, and
SHERIFF STEVEN NOWLIN, individually and in his official capacity,
ZACHARY SUMMERS, individually,
SOUTHWEST HEALTH SYSTEM, INC, d/b/a/ Southwest Memorial Hospital, and
RANDY GENE DAVIDSON, MD, individually,

    Defendants.

## ORDER

This matter comes before the Court on County Defendants' Motion for Summary Judgment [Docket No. 198]. Defendants Board of County Commissioners of Montezuma County, Colorado (the "BOCC"), Sheriff Steven Nowlin, and Deputy Zachary Summers seek summary judgment pursuant to Federal Rule of Civil Procedure 56(a) as to four counts in plaintiffs' third amended complaint. Docket No. 198 at 2. Specifically, the BOCC and Sheriff Nowlin seek summary judgment on the first count, which asserts a *Monell* claim for deliberate indifference under 42 U.S.C. § 1983; the second count, which alleges negligence in the operation of a jail resulting in wrongful death; and the fourth count, which alleges deliberate indifference under 42 U.S.C.

§ 1983.[1]  *Id.*  Deputy Summers seeks summary judgment on the third count, which is brought pursuant to Colo. Rev. Stat. § 13-21-131 and alleges cruel and unusual punishment in violation of Article 2 of the Colorado Constitution.  *Id.*

Plaintiffs are the estate of Kelroy Newman, by and through his mother, Bryanne Watts-Lucero, and J.W., a minor child, by and through her mother, Elisa Wilson.  Docket No. 154 at 4, ¶¶ 14-15.  Plaintiffs filed a response, Docket No. 210, and defendants filed a reply.  Docket No. 219.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[2]

On Saturday, July 17, 2021, a Cortez, Colorado police officer arrested Kelroy Newman and took him to the Montezuma County Detention Center ("MCDC"), Docket No. 198 at 3, ¶¶ 8-9, which is run by the Montezuma County Sheriff's Office.[3]  Mr. Newman was administered a breathalyzer test, which showed that he had a blood alcohol content ("BAC") of 0.421%.  *Id.*, ¶ 9.[4]  Pursuant to MCDC policy, a BAC over 0.2% is considered a potentially emergent condition that requires the person be medically cleared by Southwest Memorial Hospital ("SWMH") before incarceration.  Docket No. 210 at 5, ¶ 6.  The arresting officer took Mr. Newman to SWMH for medical

---

[1] The BOCC, Sheriff Nowlin, and Deputy Zachary Summers refer to themselves collectively as "County Defendants" in the motion for summary judgment.  Docket No. 198 at 1.  In the third amended complaint, plaintiffs use the term "County Defendants" to refer to the BOCC and Sheriff Nowlin.  Docket No. 154 at 5, ¶ 19.  For the sake of clarity, the Court will not use the phrase "County Defendants" and will specify each individual party associated with a given claim.

[2] The following facts are undisputed unless otherwise indicated.

[3] Defendants support these asserted facts by citing to the third amended complaint, rather than to the evidentiary record.  Docket No. 198 at 3, ¶¶ 8-9.  Plaintiffs do not dispute these facts.  Docket No. 210 at 2, ¶¶ 8-9.  The Court deems these facts admitted.

[4] Defendants support this asserted fact by citing to the third amended complaint, rather than to the evidentiary record.  Docket No. 198 at 3, ¶ 9.  Plaintiffs do not dispute this fact.  Docket No. 210 at 2, ¶ 9.  The Court deems this fact admitted.

clearance.  Docket No. 198 at 3, ¶ 10.  The Sheriff's Office and SWMH have a memorandum of understanding ("MOU") regarding the use of the hospital's walk-in clinic for non-emergent medical issues and about certain billing and information-sharing practices.  *Id.* at 7, ¶ 31.[5]

At SWMH, Dr. Randy Davidson examined Mr. Newman.  *Id.* at 3-4, ¶ 11.  Dr. Davidson signed a clearance form.  *Id.*  On the form, Dr. Davidson "checked a disposition indicating that Newman was acceptable for admission to jail, with 'no specific suggestions regarding the care of this prisoner for the condition' for which he had been examined."  *Id.*

The arresting officer returned Mr. Newman to MCDC, where Deputy Summers began the booking process.  *Id.* at 4, ¶ 12.[6]  When Mr. Newman seemed agitated and nonresponsive to questions, Deputy Summers decided not to continue the booking process.  *Id.*  He asked if Mr. Newman wanted to lie down and finish the booking process later, and Mr. Newman agreed.  *Id.*

Based on his intoxication level, Mr. Newman was placed on a list to be checked at thirty-minute intervals.  *Id.*, ¶ 13.[7]  Deputies use a wand system to document checks

---

[5] Plaintiffs dispute whether the MOU solely relates to billing and non-emergent medical issues.  Docket No. 210 at 4, ¶ 31.  This is non-responsive to the asserted fact.  The Court deems this fact admitted.

[6] Plaintiffs partially dispute this fact, stating that Mr. Newman was not "uncooperative."  Docket No. 210 at 2, ¶ 12.  Since the asserted fact does not state that Mr. Newman was uncooperative, this is nonresponsive.  The Court deems this fact admitted.

[7] Plaintiffs dispute whether the checks actually occurred at thirty-minute intervals.  Docket No. 210 at 2, ¶ 13.  This is nonresponsive to the fact asserted that Mr. Newman was on a list for these checks.  The Court deems this fact admitted.

on inmates. *Id.*, ¶ 14.[8] Deputies have a wand or fob they activate outside of a cell to automatically log a check. *Id.* The logs from the wand system show that, on the morning of Mr. Newman's death, deputies checked on Mr. Newman at 3:27 a.m., 6:15 a.m., 7:01 a.m., 9:20 a.m., and 10:59 a.m. Docket No. 210 at 13, ¶ 31.[9]

At 7:41 a.m., Deputy Summers spoke with Mr. Newman, who complained of a headache and said he wanted to go back to the hospital. Docket No. 198 at 4, ¶ 16. Deputy Summers told Mr. Newman that he had already been to the hospital. *Id.* at 4-5, ¶ 16. Deputy Summers then spoke with his supervisor, Deputy Jarrod Jewell, and the two agreed that deputies would take Mr. Newman back to the hospital at the shift change. *Id.* at 5, ¶ 17.[10] Deputy Summers did not feel that Mr. Newman looked sick, though Deputy Summers thought the bruises on Mr. Newman's face were more apparent. *Id.* Deputy Summers did not observe Mr. Newman experiencing any signs of withdrawal, such as sweating, vomiting, shakes or tremors, difficulty conversing, or indications of hallucinations. *Id.*, ¶ 18.[11]

At 11:43 a.m., Deputy Summers went to deliver Mr. Newman's lunch tray and noticed that Mr. Newman was unresponsive. *Id.* at 5, ¶ 20. When Deputy Summers

---

[8] Plaintiffs admit the existence of the wand system, but deny there is any evidence that the wand system was not working at the time of Mr. Newman's death. Docket No. 210 at 2, ¶ 14. The Court deems this fact admitted.

[9] Defendants "[a]dmit there is a dispute to the extent this statement is intended to mean that the times on the log automatically generated by wands used by the deputies . . . were the only times checks were done." Docket No. 219 at 7, ¶ 31. This is nonresponsive. The Court deems this fact admitted.

[10] Plaintiffs neither admit nor deny the asserted fact. Docket No. 210 at 3, ¶ 17. The Court deems this fact admitted. *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.iv.

[11] Plaintiffs admit that this statement reflects Deputy Summers's testimony, but deny that his checks were sufficient to evaluate Mr. Newman's condition. Docket No. 210 at 3, ¶ 18. This is nonresponsive. The Court deems this fact admitted.

could not rouse Mr. Newman, he called for a medical emergency. *Id.*, ¶¶ 20-21. Other deputies responded and initiated lifesaving measures, *id.*, ¶ 20, although they had trouble locating certain equipment. Docket No. 210 at 15, ¶ 43. An ambulance transported Mr. Newman to SWMH, where he was pronounced dead at 12:20 p.m. Docket No. 198 at 5, ¶ 22.

Inmates are very frequently booked into MCDC drunk and with high blood alcohol levels. Docket No. 210 at 5, ¶ 5.[12] Sheriff Nowlin and county employees are all aware that intoxication and withdrawal from alcohol can be dangerous and life-threatening. *Id.* at 4-5, ¶ 1.[13] Deputy Summers knew that a high BAC over 0.2% puts detainees at risk of complications from alcohol withdrawal. *Id.* at 8-9, ¶ 13. In 2021, MCDC had no policy, procedure, or protocol, such as a Clinical Institute Withdrawal Assessment for Alcohol ("CIWA") assessment tool, in place to monitor someone's withdrawal medical conditions other than deputy observations which were not, by policy, to include medical assessments. *Id.* at 5, ¶ 8.[14] MCDC had a nurse on staff during weekdays, but not during evenings and weekends. Docket No. 198 at 2, ¶¶ 2-3. When the nurse was not on duty, MCDC staff could call the nurse or call the emergency room if they had medical questions. *Id.*, ¶ 3. Sheriff Nowlin stated that "[t]here's no formal training" on what to

---

[12] Defendants respond that they "[a]dmit that detainees are frequently intoxicated with ranging levels of intoxication. The Jail requires that detainees with BAC levels of .200 or over on intake be taken for medical clearance." Docket No. 219 at 3, ¶ 5. This is nonresponsive. The Court deems this fact admitted.

[13] Defendants respond that they "[a]dmit the testimony is as represented." Docket No. 219 at 2, ¶ 1. This is nonresponsive. The Court deems this fact admitted.

[14] Defendants state that they "[a]dmit the Jail did not have a CIWA protocol in 2021," but do not otherwise address the asserted fact. Docket No. 219 at 3, ¶ 8. The Court deems this fact admitted.

look for or what symptoms to ask inmates about to evaluate withdrawal.  Docket No. 210 at 11, ¶ 25.

Deputies determine on their own whether to elevate a visual check to a verbal check.  *Id.* at 12, ¶ 30.  While policies required welfare checks to be every 30 minutes, checks for Mr. Newman were logged with times between varying from 9 minutes to as long as 3 hours 29 minutes.  *Id.* at 13, ¶ 31.[15]

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."

---

[15] Defendants dispute that the wand-recorded times were the only checks that jail deputies performed.  Docket No. 219 at 7, ¶ 31.  But defendants do not identify any evidence that the wands were not working on the day in question or provide any explanation for why the log did not reflect other checks.  The Court deems this fact admitted.

6

*Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

## III.  ANALYSIS

### A.  Claim Against Deputy Zachary Summers under Colo. Rev. Stat. § 13-21-131

Plaintiffs bring a claim against Deputy Summers under Colo. Rev. Stat. § 13-21-131 for cruel and unusual punishment and deprivation of due process in violation of the Colorado Constitution, Article 2, Sections 20 and 25.  Docket No. 154 at 49-51.  Defendants argue that Deputy Summers did not violate Mr. Newman's constitutional rights.  Docket No. 198 at 10-13, 18-19.  Defendants also argue that, even if Deputy Summers did commit a violation under Colo. Rev. Stat. § 13-21-131, the statute's abrogation of qualified immunity is unconstitutionally vague and, in any event, does not foreclose a public official's "good faith" defense under Colorado's common law.  *Id.* at 16-18.  Plaintiffs respond that Deputy Summers did act with deliberate indifference and

7

that recent state court rulings demonstrate that Deputy Summers's immunity argument is without merit.  Docket No. 210 at 22-24, 26-29.

As a preliminary matter, defendants state that there is limited case law interpreting Colo. Rev. Stat. § 13-21-131 and that the Court should look to federal law on Section 1983 claims as guidance.  Docket No. 198 at 18.  Plaintiffs do not respond regarding this point, but they exclusively cite federal law in support of their argument that Deputy Summers violated Mr. Newman's rights.  Docket No. 210 at 22-24.  In *Woodall v. Godfrey*, 553 P.3d 249 (Colo. App. 2024), the Colorado Court of Appeals held that:

> While this is the first time we have addressed an excessive force claim brought under section 13-21-131, we are not without guidance.  Section 13-21-131 is similar to 42 U.S.C. § 1983, which authorizes a private right of action against a person "who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  In addition, the Fourth Amendment of the United States Constitution is almost identical to article II, section 7 of the Colorado Constitution.  Accordingly, we may look to cases analyzing § 1983 claims for excessive force as persuasive authority.

*Id.* at 256 (internal citations and quotations omitted).  Based on *Woodall*, the Court will consider Section 1983 case law in analyzing whether the undisputed facts show that Deputy Summers was deliberately indifferent to Mr. Newman's serious medical need.  The Section 1983 analysis involves a two-part inquiry for assessing whether an officer has shown deliberate indifference to a pretrial detainee's serious medical need.  *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1029 (10th Cir. 2020).

The first prong of the test is an objective inquiry considering whether "the harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause of the Eighth Amendment."  *Id.* (citations omitted).  "A

medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal quotations omitted) (quoting *Sealock v. Colo.*, 218 F.2d 1205, 1209 (10th Cir. 2000)). Defendants do not contest, at least for the purposes of this motion, that this claim satisfies the objective prong of the analysis. Docket No. 198 at 11-12.

The second prong of the test is a subjective inquiry that requires that "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and *he must also draw the inference*." *Quintana*, 973 F.3d at 1029 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. But our precedent effectively cabins this exception by requiring that such risks present themselves as obvious to the so-called reasonable man." *Id.* (internal citations and quotations omitted).

In the context of alcohol or drug withdrawal, "characteristics common to intoxicated individuals do not present an obvious risk." *Id.* (quoting *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009) (internal quotations and alternation omitted)). In *Quintana*, the Tenth Circuit held that "frequent vomiting alone would not present an obvious risk of severe or dangerous withdrawal." *Id.* But, the court held, vomiting blood would constitute an obvious risk. *Id.* at 1029-30.

Deputy Summers knew that Mr. Newman's BAC was 0.421% on Saturday, July 17th. Docket No. 210 at 8, ¶ 13. He knew that the arresting officer took Mr. Newman to SWMH. *Id.* He knew from his conversation with Mr. Newman at 7:41 a.m. on Sunday,

9

July 18th that Mr. Newman's head hurt.  Docket No. 198 at 4-5, ¶ 16.  But Deputy Summers did not observe Mr. Newman experiencing any signs of withdrawal, such as sweating, vomiting, shakes or tremors, difficulty conversing, or indications of hallucinations.  *Id. at 5*, ¶ 18.  Plaintiffs argue that Mr. Newman's headache, when combined with his facial injuries and his intoxication level the day before, provided Deputy Summers with knowledge of a substantial risk of serious harm.  Docket No. 210 at 22-23.  The Court finds, however, that a headache is a "characteristic[ ] common to intoxicated individuals" and does not present an "obvious risk."  *See Quintana*, 973 F.3d at 1029.  Mr. Newman's facial injuries also provided a possible, non-serious, cause for the headache.  The Court therefore finds that Mr. Newman's symptoms, as seen or known by Deputy Summers, would not suggest an "obvious" risk to a reasonable person sufficient to satisfy the subjective prong of the deliberate indifference analysis.  Nor is there any evidence that Deputy Summers otherwise drew an inference that Mr. Newman faced a substantial risk of serious harm.[16]  The Court will grant summary judgment to Deputy Summers on the third count of the third amended complaint.

### B. *Monell* Claim Against Sheriff Nowlin and the BOCC Regarding MCDC Policies

Defendants argue that the BOCC and Sheriff Nowlin are entitled to summary judgment on the Section 1983 claim that plaintiffs bring pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Docket No. 198 at 8-15.  Defendants argue that

---

[16] To the extent that plaintiffs argue that Deputy Summers was deliberately indifferent in his "gatekeeping" role, the Court finds he fulfilled his gatekeeper role by relaying Mr. Newman's request for medical attention to his supervisor, Deputy Jewell. *Mata v. Saiz*, 427 F.3d 745, 759 (10th Cir. 2005) (holding that a prison nurse fulfilled her gatekeeper duty by reporting an inmate's symptoms to a nurse practitioner in accordance with the prison protocol).

plaintiffs have not identified an underlying constitutional violation, *id.* at 10-13, a constitutionally deficient policy, *id.* at 13, or a pattern or practice of similar violations. *Id.* at 13-15.

To the extent that plaintiffs bring a *Monell* claim based on a "failure to train" theory, the Court agrees with defendants that plaintiffs have not identified an underlying constitutional violation. A "failure-to-train claim may not be maintained without a showing of a constitutional violation by the allegedly un-, under-, or improperly-trained officer." *Crowson v. Washington Cnty.*, 983 F.3d 1166, 1187 (10th Cir. 2020). Since the Court will grant summary judgment and dismiss the claim that Deputy Summers violated Mr. Newman's constitutional rights, there are no remaining allegations of a constitutional violation by an individual officer. Therefore, the Court will grant summary judgment to defendants on plaintiffs' *Monell* claim to the extent it includes a failure-to-train theory.

However, in certain circumstances, a *Monell* claim is not dependent on a constitutional violation by an individual officer. This is true where the municipal policy at issue spreads responsibility across multiple officers. *Id.* at 1192. In these so-called "systemic failure" claims, "the policies may be unconstitutional precisely because they fail to ensure that any single officer is positioned to prevent the constitutional violation. Where the sum of multiple officers' actions taken pursuant to municipal policy results in a constitutional violation, the municipality may be directly liable." *Id.* at 1191-92.

For a claim under this theory, a plaintiff must show: "(1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Id.* at 1184 (citation omitted). Defendants argue, without any citation to the record, that MCDC had policies and

training for both the medical clearances of detainees and for ongoing monitoring of detainees. Docket No. 198 at 13. Defendants further argue that there was no pattern or practice of similar constitutional violations, and that the alleged violation at issue in this case was not of an obvious or highly predictable nature such that defendants should have been on notice of the problem even without a prior incident. *Id.* at 13-15.

Plaintiffs respond that defendants had a policy of using "medically untrained deputies to monitor intoxicated and withdrawing inmates it frequently housed." Docket No. 210 at 20. Plaintiffs further assert that:

> the County gave medically untrained deputies unfettered discretion in determining whether an inmate needed medical attention, while providing no written guidance on what types of monitoring should be done or what symptoms to look for. The County's training was also deliberately indifferent – no training at all really – on signs and symptoms of alcohol withdrawal, and what conditions required escalation to a nurse or doctor or hospital to evaluate.

*Id.* Additionally, plaintiffs argue that Sheriff Nowlin and the BOCC had no protocols on what deputies should look for during welfare checks or when they should contact the nurse. *Id.* at 20-21. Defendants reply that the plaintiffs rely only on generalities to identify policies and customs and that plaintiffs' theory would have the effect of "transforming small county jails into fully-staffed medical withdrawal facilities." Docket No. 219 at 9-10.

The Court will first consider whether there is an official policy or custom at issue. An official policy or custom includes:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to

12

>adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (citation omitted).  Here, Sheriff Nowlin and the BOCC had at least two policies or customs involving intoxicated inmates.  First, it had a policy of requiring a medical clearance before booking a prisoner with a BAC over 0.2% into MCDC.  Docket No. 210 at 5, ¶ 6.  Second, it had a policy or custom of placing intoxicated inmates on a list for welfare checks every 30 minutes.  Docket No. 198 at 4, ¶ 13.  Plaintiffs argue that Sheriff Nowlin and the BOCC also had a policy or custom of not training deputies about alcohol withdrawal symptoms and not staffing MCDC with medically trained personnel.  Docket No. 210 at 20-21.  Even if the Court assumes plaintiffs are right about this third "policy or custom," the question then becomes whether Sheriff Nowlin or the BOCC acted with deliberate indifference in adopting these policies.

Plaintiffs must demonstrate that the municipality maintained the policies or customs at issue with deliberate indifference to a "known or obvious risk of violation" to a detainee's constitutional rights.  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)).  "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."  *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).  Plaintiffs can prove notice either by showing that there was a pattern of prior incidents or by showing that the risk was highly predictable or plainly obvious.  *Waller*, 932 F.3d at 1284.

In *Quintana*, the Tenth Circuit held that a municipality could be on notice of constitutional deficiencies based on three recent withdrawal-related deaths of inmates and a study from the Department of Justice criticizing the jail's medical protocols. 973 F.3d at 1034. In *Burke v. Regalado*, 935 F.3d 960, 1000 (10th Cir. 2019), the Tenth Circuit held that a reasonable jury could find deliberate indifference when municipal officials did not implement any changes despite four different reports from external auditors criticizing the jail's medical practices.

Here, plaintiffs do not identify any reports criticizing MCDC practices that would have alerted officials to any constitutional deficiencies. Plaintiffs do point to the deaths of four other intoxicated inmates at the jail. *See* Docket No. 210 at 16-18, ¶¶ 47-50. Only one of these deaths, however, involved an inmate who had previously been medically screened at SWMH, *id.* at 17, ¶ 48, and one prior incident, "even if it was a constitutional violation sufficiently similar to put officials on notice of a problem," does not describe a pattern of violations. *Waller*, 932 F.3d at 1287 (quoting *Coffey v. McKinley Cnty.*, 504 F. App'x 715, 719 (10th Cir. 2012)).

Plaintiffs also fail to show that Mr. Newman's death was a highly predictable or plainly obvious consequence of Sheriff Nowlin and the BOCC's policies. For this form of single-incident deliberate indifference claim, plaintiffs must show that "(i) the municipality's policymakers know to a moral certainty that their employees will confront a given situation; (ii) the situation presents the employee with a difficult choice of the sort that training or supervision will make less difficult; and (iii) the wrong choice will frequently cause the deprivation of a citizen's constitutional rights." *Stella v. Davis Cnty.*, 2024 WL 4764694, at *9 (10th Cir. Nov. 13, 2024) (unpublished) (quoting *Valdez*

14

*v. Macdonald*, 66 F.4th 796, 817 (10th Cir. 2023)).  Given that highly intoxicated prisoners are screened for emergency medical conditions by an emergency-room doctor before booking into MCDC, plaintiffs do not explain why county officials would know to a moral certainty that their employees would encounter difficult decisions related to withdrawal symptoms such that officials needed to provide additional training or staffing.

The Court finds that plaintiffs have failed to show that Sheriff Nowlin and the BOCC acted with deliberate indifference in adopting jail policies.  The Court will grant defendants' motion for summary judgment on the first count of the third amended complaint.

### C. *Monell* Claim Against Sherrif Nowlin and the BOCC Regarding Medical Clearances at SWMH

Plaintiffs bring a claim against the BOCC and Sheriff Nowlin alleging that they are "non delegably liable for SWMH's unconstitutional policies, customs, and practices." Docket No. 154 at 51-54.  The complaint does not specify whether plaintiffs bring this claim against Sheriff Nowlin in his official capacity or his individual capacity.  *See id.* But the claim makes no mention of Sheriff Nowlin's personal involvement in Mr. Newman having to go to SWMH for a medical clearance, so the Court will treat the claim as being brought against Sheriff Nowlin in his official capacity.[17]  "An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009

---

[17] If the claim were against Sheriff Nowlin in his individual capacity, the Court would grant summary judgment on the claim.  *See Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006) ("for liability to arise under [Section] 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established.").

(10th Cir. 1998) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).  The Court will therefore treat this claim as a *Monell* claim.  As discussed already, the first element of a *Monell* claim requires that the plaintiff identify an official policy or custom.  *Crowson*, 983 F.3d at 1184.

An officer from the Cortez Police Department arrested Mr. Newman.  Docket No. 198 at 3, ¶ 8.  That officer took Mr. Newman to MCDC, *id.*, ¶ 9, and then, because MCDC required a medical clearance to book an individual with a BAC above 0.2% into the jail, took Mr. Newman to SWMH.  Docket No. 210 at 5-6, ¶ 10.

As discussed in the previous section of this order, plaintiffs must show that defendants acted with deliberate indifference in adopting or maintaining the policy at issue.  *See Connick*, 563 U.S. at 61 (citation omitted).  In order to demonstrate deliberate indifference, plaintiffs must, among other things, show that the municipality knew of the risk of a constitutional violation either because of a pattern of prior incidents or because the risk was highly predictable.  *Waller*, 932 F.3d at 1284.  Plaintiffs have identified only one prior instance of an intoxicated detainee dying at MCDC after being medically cleared by SWMH, Docket No. 210 at 17, ¶ 48, which is insufficient to provide notice to the municipality.  *Waller*, 932 F.3d at 1287.  Nor have plaintiffs shown that the risk was highly predictable even without a prior pattern of incidents.  The Court finds that no reasonable juror could find that defendants were deliberately indifferent regarding the sufficiency of SWMH's medical clearances.  The Court will therefore grant defendants' motion for summary judgment on the fourth count of the third amended complaint.

### D. <u>Negligence Claim Against Sheriff Nowlin and the BOCC</u>

Defendants seek summary judgment on the state law negligence claim that plaintiffs bring against the BOCC and Sheriff Nowlin. Docket No. 198 at 19-20. Defendants argue that they are entitled to summary judgment because there is no evidence that the defendants breached any duty to Mr. Newman and no evidence that any breach caused Mr. Newman's death. *Id.* at 20.

In order to establish a prima facie case for negligence under Colorado law, a plaintiff must show that 1) defendants owed plaintiff a legal duty of care, 2) defendants breached that duty, and 3) the defendants' breach caused the plaintiff to suffer an injury. *Ryder v. Mitchell*, 54 P.3d 885, 889 (Colo. 2002). As with the other claims addressed in this order, defendants, as the parties moving for summary judgment, have the burden to show that "there is no genuine dispute as to any material fact" and that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although defendants state that whether a defendant owes a legal duty to a plaintiff is a question of law to be decided by a court, Docket No. 198 at 19 (citing *Davenport v. Cmty. Corr. of the Pikes Peak Region, Inc.*, 962 P.2d 963, 966 (Colo. 1998)), they do not brief the issue of what duty they owed to Mr. Newman. In the absence of briefing from defendants on the scope of the duty, the Court will not address the issue. *See United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.").[18] Since defendants have not called into question plaintiffs' prima facie

---

[18] The Restatement (Second) of Torts states that "[o]ne who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other." Restatement (Second) of Torts § 314A(4) (Am. L. Inst. 1965). The phrase

17

case on their negligence claim, the Court will deny defendants' motion for summary judgment on this claim.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the County Defendants' Motion for Summary Judgment [Docket No. 198] is **GRANTED in part and DENIED in part**. It is further

**ORDERED** that the third count of the Third Amended Complaint [Docket No. 154], as alleged as Deputy Zachary Summers, is **DISMISSED with prejudice**. It is further

**ORDERED** that defendant Deputy Zachary Summers is **DISMISSED** from this case. It is further

**ORDERED** that the first count of the Third Amended Complaint [Docket No. 154], as alleged against the Board of County Commissioners and Sheriff Nowlin, is **DISMISSED with prejudice**. It is further

---

"similar duty" refers to another subsection of the same section, which states that a "common carrier is under a duty to its passengers to take reasonable action (a) to protect them against unreasonable risk of physical harm, and (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others." *Id.* § 314A(1). *See also Ulibarri v. City & Cnty. of Denver*, 742 F. Supp. 2d 1192, 1226 (D. Colo. 2010) ("I conclude that Colorado courts would recognize that the Jail owes the duties described by Plaintiffs to its inmates in the operation of the facility. The 'due care' required in the execution of that duty would be performance in a manner 'in accordance with the knowledge and skill ordinarily possessed by [other] practitioners under similar circumstances.'").

18

**ORDERED** that the fourth count of the Third Amended Complaint [Docket No. 154], as alleged against the Board of County Commissioners and Sheriff Nowlin, is **DISMISSED with prejudice**.

DATED March 28, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge